UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                 :

SHADY GROVE ORTHOPEDIC         :
ASSOCIATES, P.A. and              :
SONIA E. GALVEZ,               :    **ECF CASE**
on behalf of themselves and all others  :
similarly situated,                :    CV 06 1842 (NG) (KAM)
                                 :
            Plaintiffs,        :
                                 :
     vs.                        :
                                 :
ALLSTATE INSURANCE COMPANY,   :
                                 :
            Defendant.       :
                                 :
------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALLSTATE INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Dated: New York, New York
       September 1, 2006

Of Counsel:

     Andrew T. Hahn, Esq. (AH-6283)
     James S. Yu, Esq. (JY-9734)

SEYFARTH SHAW LLP
1270 Avenue of the Americas, Suite 2500
New York, New York 10020-1801
(212) 218-5500

Attorneys for Defendant Allstate Insurance Company

1

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................ 1

PROCEDURAL POSTURE ................................................................................... 3

ARGUMENT .......................................................................................................... 4

   I.     PLAINTIFFS' INCLUSION OF CERTAIN EXHIBITS IS IMPROPER OR
         IRRELEVANT. ..................................................................................... 4

   II.    PLAINTIFFS' ANALYSES OF C.P.L.R. § 901(b) IS FATALLY FLAWED. ...... 6

        A.   The "Unless Clause" Does Not Apply. ........................................... 6

        B.   Section 901(b) Is A Substantive Provision And Applies In Federal
            Litigation. ....................................................................................... 7

            1.   Plaintiffs Cannot Avoid Leider and the Erie Doctrine. ................... 7

            2.   Wesley, Oot, and Peters Do Not Support Plaintiffs' Position. ........ 9

   III.   PLAINTIFFS FAIL TO ADDRESS THE STANDING ISSUE. ........................... 12

   IV.   PLAINTIFFS FAIL TO STATE CLAIMS SOUNDING IN CONTRACT .......... 15

        A.   Plaintiffs Fail To Identify the Contract Term That Was Breached. ........... 15

        B.   The Liberal Notice Pleading Standard Cannot Salvage A Deficient
            Contract Claim. ............................................................................. 16

        C.   Plaintiffs Cannot Extend the Statute of Limitations Period. ...................... 17

   V.    THE CONFLICT OF INTEREST BETWEEN GALVEZ AND
         SHADY GROVE UNDERSCORES WHY THE CLASS ACTION
         ALLEGATIONS MUST BE DISMISSED. ......................................................... 18

CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

Americorp Fin., Inc. v. St. Joseph's Hospital Health Center,
180 F. Supp. 2d 387 (N.D.N.Y. 2001) ..........................................................................5, 16

Angel Music, Inc. v. ABC Sports, Inc.,
112 F.R.D. 70 (S.D.N.Y. 1986) ..........................................................................18

Aaron Ferer & Sons, Ltd. V. Chase Manhattan Bank,
731 F.2d 1121, (2d Cir. 1984)..........................................................................15

Board of Education of Topeka High School v. Climatemp. Inc.,
No. 79 C 4989, 1981 WL 2033 (N.D. Ill. Feb. 20, 1981)....................................20

City of N.Y. v. Beretta USA Corp.,
228 F.R.D. 134 (E.D.N.Y. 2005) ..........................................................................13

Clark v. McDonald's Corp.,
213 F.R.D. 198 (D.N.J. 2003)..........................................................................20

Erie Railroad Co. v. Tompkins
304 U.S. 64 (1938)..........................................................................2, 8, 9

Gasperini v. Center For Humanities,
518 U.S. 415 (1996)..........................................................................9

Guaranty Trust Co. v. York,
326 U.S. 99 (1945)..........................................................................8

Leider v. Ralfe,
387 F. Supp. 2d 283 (S.D.N.Y. 2005)..........................................................................passim

Lewis v. NFL,
146 F.R.D. 5 (D.D.C. 1992)..........................................................................19

Makarova v. United States,
201 F.3d 110 (2d Cir. 2000)..........................................................................13

Miller v. Motorola, Inc.,
76 F.R.D. 516 (N.D. Ill. 1977)..........................................................................20

In re NASDAQ Market-Makers Antitrust Litig.,
169 F.R.D. 493 (S.D.N.Y. 1996)..........................................................................19

In re Oot,
    112 B.R. 497 (Bankr. N.D.N.Y. 1989), ........................................................................11

Ortiz v. Fibreboard Corp.,
    527 U.S. 815 (1999)........................................................................................................20

Parker v. Time Warner Entertainment Co.,
    331 F.3d 13 (2d Cir. 2003)............................................................................................20

In re Peters,
    90 B.R. 588 (Bankr. N.D.N.Y. 1988) ...........................................................................11

Posner v. Minnessota Mining & Manufacturing Co.,
    713 F. Supp. 562 (E.D.N.Y. 1989) ...............................................................................16

Reinisch v. New York Stock Exchange,
    52 F.R.D. 561 (S.D.N.Y. 1971) ....................................................................................20

Rowe v. Morgan Stanley Dean Witter,
    191 F.R.D. 398 (D.N.J. 1999)......................................................................................20

Simon v. Eastern Kentucky Welfare Rights Organization.,
    426 U.S. 26 (1976).........................................................................................................18

Stewart Org., Inc. v. Ricoh Corp.,
    487 U.S. 22 (1988)...........................................................................................................8

Sweet v. Pfizer,
    232 F.R.D. 360, 370 (C.D. Cal. 2005) ..........................................................................19

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002).......................................................................................................16

Tedesco v. Mishkin,
    689 F. Supp. 1327 (S.D.N.Y. 1988)..............................................................................19

Warth v. Seldin,
    422 U.S. 490 (1975).......................................................................................................18

Weissman v. Dow Corning Corp.,
    892 F. Supp. 510 (S.D.N.Y. 1995) ...............................................................................17

Wesley v. John Mullins & Sons, Inc.,
    444 F. Supp. 117 (E.D.N.Y. 1978) .....................................................................2, 9, 10, 11

**STATE CASES**

ABC Radio Network, Inc. v. State of N.Y. Dep't of Taxation And Finance,
    294 A.D.2d 213 (1st Dep't 2002) ...................................................................17

Adams v. Government Employees Insurance Co.,
    52 A.D.2d 118, 383 N.Y.S.2d 319 (1st Dep't 1976), ...........................................7

Cady v. Aetna Life & Casualty Insurance Co.,
    61 N.Y.2d 594, 475 N.Y.S.2d 362 (1984) ..........................................................7

Capoccia v. Brognano,
    135 A.D.2d 1010, 522 N.Y.S.2d 733 (3d Dep't 1987).......................................14

Cranofacial Pain Mgmt. v. New York Cent. Mutual Fire Insurance Co.,
    186 Misc. 2d 309, 718 N.Y.S.2d 130 (Civ. Ct. Queens Co. 2000)....................14

Crowhorn v. Nationwide Mutual Insurance Co.,
    836 A.2d 558 (Del. Super. Ct. 2003) .............................................................4, 5

Fowler v. American Lawyer Media, Inc.,
    306 A.D.2d 113, 761 N.Y.S.2d 176 (1st Dep't 2003) .......................................15

Petro, Inc. v. Serio,
    9 Misc. 3d 805, 804 N.Y.S.2d 598 (Sup. Ct. N.Y. County 2005) .....................14

Staten Island Hosp. v. Liberty Mutual Insurance Co.,
    122 Misc. 2d 523, 471 N.Y.S.2d 506 (Dist. Ct. Nassau Co. 1984) .....................7

Sutton Associates v. Lexis-Nexis,
    196 Misc. 2d 30, 761 N.Y.S.2d 800 (Sup. Ct. Nassau Co. 2003)......................17

**UNREPORTED CASES**

Crowhorn v. Nationwide Mutual Ins. Co., No. Civ. A. 00C-06-010 WLW,
    2001 WL 695542 (Del. Super. Ct. Apr. 26, 2001)...............................................5

Miller v. Allstate Ins. Co.,
    No. 96 C 17107, slip. Op. (Ky. Cir. Ct. Jefferson County, July 6, 2000) .........21

Ross-Randolph v. Allstate
    No. DKC 99-3344, slip. Op. 16 (D Md. May 11, 2001)....................................21

Warren v. Xerox Corp.,
    No. 01-CV-2909 (JG), 2004 WL 1562884 (E.D.N.Y. Jan. 26, 2004)...............20

## STATUTES

Fed. R. Civ. P. 8(a) ...................................................................................16

Fed R. Civ. P. 12(b)(6)................................................................................6

Fed. R. Civ. P. 23 ...............................................................................*passim*

McKinney's Cons. Law of N.Y., Book , Statutes § 235 .............................14

N.Y. Ins. Law § 5106(a) ....................................................................6, 7, 15

N.Y. C.P.L.R. § 901 ............................................................................*passim*

N.Y. C.P.L.R. 3013 ....................................................................................16

N.Y. Pers. Prop. L. § 414(2) .....................................................................10

## OTHER AUTHORITIES

5 Weinstein, Korn & Miller, <u>New York Civil Practice</u> ¶ 3013.06  ............16

11 NYCRR 65.39(c) .....................................................................................7

Defendant, Allstate Insurance Company ("Allstate" or "Defendant"), respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint of Shady Grove Orthopedic Associates, P.A. ("Shady Grove") and Sonia E. Galvez ("Galvez" and together with Shady Grove, collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]

## PRELIMINARY STATEMENT

Plaintiffs' opposition strenuously avoids the sound legal arguments raised in Allstate's motion. Instead, Plaintiffs attempt to obfuscate the issues by introducing irrelevant factual background that has nothing to do with the legal issues raised in Allstate's motion. Notably, Plaintiffs completely "punt" on the issue of standing. As this Court will recall, Plaintiff Galvez withdrew her prior complaint based on this Court's inclination that she lacked standing after she assigned her claim to her medical provider. Despite that withdrawn complaint, she magically re-appears in this subsequent action along with her medical provider as co-plaintiff. Plaintiffs blatantly ignore the case law cited by Allstate – as well as this Court's expressed inclination on the issue – that would result in the inevitable conclusion that Plaintiff Galvez has no standing. Plaintiffs now request this Court to answer the question again as to whether Plaintiff Galvez or Plaintiff Shady Grove, the assignee and medical provider, has standing.

Aside from the standing issue, the more critical issue to be decided by this Court is whether N.Y. C.P.L.R. § 901(b) would preclude Plaintiffs' class action. Generally, C.P.L.R. § 901(b) does not permit the recovery of a penalty by means of a class action unless the statute specifically authorizes the use of the class action. Plaintiffs do not contest (i) that the Complaint

---

[1]     All other defined terms and abbreviations in this reply brief are adopted from Allstate's initial moving brief.

1

seeks recovery of 2% interest penalty per month pursuant to N.Y. Ins. Law § 5106(a); and (ii) that the general prohibition of C.P.L.R. § 901(b) would apply.  Plaintiffs, however, rely on the statutory exception by arguing that the regulations promulgated by the Commissioner of Insurance "contemplates" the use of a class action.  This argument is specious because (1) the statutory requirement is "specifically authorizes" and not "contemplates;" (2) the statute, not the regulations, must specifically authorize the class action; and (3) the regulations "contemplate" the recovery of benefits rather than the penalty interest in issue here.

Alternatively, Plaintiffs argue that C.P.L.R. § 901(b) is procedural and is thus displaced by Fed. R. Civ. P. 23.  Plaintiffs, however, completely ignore the cogent, detailed analysis made by the Southern District recently in Leider v. Ralfe, 387 F. Supp. 2d 283 (S.D.N.Y. 2005), which squarely held Section 901(b) would not be displaced by Fed. R. Civ. P. 23.  Instead of addressing the Leider decision, which included a well reasoned discussion of the Erie doctrine, Plaintiffs simply ignore that landmark case and its progeny as if it never existed.  Plaintiffs astonishingly characterize the Leider decision as "misplaced" and making "no sense."  Plaintiffs, however, fail to provide a rational or reasonable alternative to the Leider analysis.  Rather, Plaintiffs rely heavily on Wesley v. John Mullins & Sons, Inc., 444 F. Supp. 117 (E.D.N.Y. 1978), a case that actually supports Allstate's argument.  Plaintiffs' distorted reading of Wesley is perplexing but nonetheless completely wrong.

Plaintiffs' unwarranted insistence that C.P.L.R. § 901(b) is inapplicable mirrors their unwarranted insistence that they have a claim sounding in contract.  The gravamen of the Complaint seeks the recovery of statutory interest penalty pursuant to N.Y. Ins. Law 5106(a), as reflected in Count IV.  Although Plaintiffs provide this Court with a complete copy of Galvez's no-fault insurance policy in issue, Plaintiffs are unable to point to the specific provision or term

2

that was breached. They cannot do so for the simple reason that it does not exist. This case involves an alleged statutory violation, which if proven, will result in a statutory penalty. The case does <u>not</u> involve any <u>breach of contractual obligations</u>. To escape this fatal flaw, Plaintiffs must rely on "implied" theories including the covenant of good faith and fair dealing. Those theories, however, cannot be used to create an independent obligation beyond those included in the express language of the contract, *i.e.*, the insurance policy. Moreover, Plaintiffs' creative labeling of claims cannot be used to extend the statute of limitations period.

Finally, dismissal of the class allegations is justified at this juncture for the very reason that Plaintiffs cannot adequately represent the class pursuant to Rule 23(a)(4). Even though they have purportedly agreed that Plaintiff Galvez is the proper plaintiff (assuming she has standing in the first instance), other medical providers may not be so generous, and no amount of discovery or the creation of subclasses will cure this inherent conflict. Furthermore, many courts have addressed the issue of class certification in the PIP benefits area, and have concluded that the individualized issues in the PIP area are too numerous to warrant class certification. Re-tracing those steps would only be a waste of this Court's time and resources.

## <u>PROCEDURAL POSTURE</u>

For a recitation of the procedural posture of this litigation, including the dismissal of the prior proceeding captioned, <u>Sonia E. Galvez v. Allstate Ins. Co.</u>, Civ. A. No. 05-6066 (NG) (JMA) (E.D.N.Y.) (hereinafter, "<u>Galvez I</u>"), Allstate respectfully refers this Court to Allstate's letter dated May 10, 2006, to the Honorable Nicholas G. Garaufis, U.S.D.J. (a courtesy copy of which was submitted to this Court), requesting re-assignment of this case.

**ARGUMENT**

I.   **PLAINTIFFS' INCLUSION OF CERTAIN EXHIBITS IS IMPROPER OR IRRELEVANT.**

As an initial matter, Allstate objects to the introduction of certain information and exhibits annexed to Plaintiffs' memorandum of law.  Rather than focusing on the legal arguments set forth in Allstate's initial memorandum of law,[2] Plaintiffs seek to obfuscate the issues by injecting nearly ten pages of irrelevant "Factual Background" issues including, but not limited to, (1) the preclusion standard and the lack of medical necessity; (2) the "orgy of lawlessness" ostensibly perpetrated by other insurance companies such as State Farm, Nationwide, and Liberty Mutual; (3) opposing counsel's litigation efforts in the Delaware state case captioned, <u>Crowhorn v. Nationwide Mut. Ins. Co.</u>, 836 A.2d 558 (Del. Super. Ct. 2003); and (4) the allegedly "widespread pattern of thirty-day violations here in New York" including accusations that Allstate is a "chronic violator" based on four cases spanning eleven years. Pls. Mem. at 3-15. Those four cases, however, involved failure to pay and/or denial of <u>benefits</u>, as opposed to delayed or non-payment of <u>statutory interest</u>.

While it is appropriate to provide background information to the Court to describe the highly regulated environment of no-fault insurance law of New York State, it is <u>not</u> appropriate in an opposition to a Rule 12(b)(6) motion for Plaintiffs to discuss the alleged "orgy of lawlessness" of no-fault insurance existing in other states and/or involving other insurance companies.  An egregious example is Plaintiffs' discussion of their counsel's litigation of the <u>Crowhorn</u> decision.  While Plaintiffs' counsel should be applauded for obtaining the settlement amount of $5 million (of which a third or $1,650,000 was awarded as attorneys' fees to Murphy

---

[2]   Allstate's Memorandum of Law in Support of Its Motion to Dismiss, dated July 12, 2006 shall herein be cited as "Def. Mem."  Plaintiffs' Memorandum of Law In Opposition to Motion to Dismiss, dated August 18, 2006 shall herein be cited as "Pls. Mem."

Spadaro & Landon)[3] in that Delaware state litigation, the issues in that case appears to involve the allegation that:

> Nationwide [Mutual Insurance Company] "systematically delayed and/or denied the payment of PIP claims and benefits of Delaware automobile insurance policies. More specifically, Plaintiff alleges that such claims were denied or delayed without providing the insured with a reasonable, written explanation within thirty (30) days as required in 21 Del. C. § 2118B ("Thirty-days Provision").

Crowhorn v. Nationwide Mutual Ins. Co., No. Civ. A. 00C-06-010 (WLW), 2001 WL 695542, at *2 (Del. Super. Ct. Apr. 26, 2001). The complaint in that case does not involve the recovery of statutory interest. Equally significant, the Delaware insurance statute involved does not appear to require the payment of any statutory interest penalty. Id. at *2, n. 6 (quoting 21 Del. C. § 2118B).[4]

Aside from the fact that such information is wholly irrelevant to the legal issues of Allstate's motion, the unfounded assertion that Allstate engaged in a widespread violation of Section 5106(a) by citing to the practices of other insurers is an unwarranted deduction of fact that should not be considered. See Americorp Fin., Inc. v. St. Joseph's Hosp. Health Ctr, 180 F. Supp. 2d 387, 392 (N.D.N.Y. 2001) ("Under Rule 12(b)(6), 'the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted.'")(citations omitted). Accordingly, statements such as, "[w]e are thus dealing with uniform, systematic, industry-wide abuses – abuses that cause genuine hardship to consumers, and persist even in the face of the occasional regulatory wrist

---

[3]   See Crowhorn v. Nationwide Mut. Ins. Co., 836 A.2d 558 (Del. Super. Ct. 2003)

[4]   To the extent Plaintiffs raise issues or factual allegations including Allstate's handling of Plaintiff Galvez's no-fault claims, such issues are more appropriate for a summary motion. Nevertheless, Allstate's motion to dismiss should still be granted even assuming those allegations were true.

slap," and "[t]his problem cries out for reform," (Pls. Mem. at 11) should be stricken and not considered for the pending motion.

On the final page of Plaintiffs' memorandum, Plaintiffs take one last parting shot at Allstate with the following statement:  "We might note, too, that nowhere in its opening brief does Allstate suggest that its is ***not*** engaging in the regular and widespread violation of Section 5106(a)." Pls. Mem. at 33 (emphasis in original).  While Allstate could have easily made such a self-serving conclusory denial, such a statement is not appropriate or relevant to its Rule 12(b)(6) motion.  Suffice to say, Allstate denies that it is engaging in a "regular and widespread violation of Section 5106(a)."

## II.    PLAINTIFFS' ANALYSES OF C.P.L.R. § 901(b) IS FATALLY FLAWED.

### A.    The "Unless Clause" Does Not Apply.

Because Plaintiffs cannot and do not contest the applicability of Section 5106(a), they seek to wiggle out of the statutory prohibition by sneaking their way into the "unless" clause, *i.e.*, "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action...." See C.P.L.R. § 901(b) (emphasis added).  Rather than citing or discussing any case law on the issue (because there is none to support their specious argument), or even distinguishing any of the many cases cited in Allstate's initial memorandum, Plaintiffs simply quote a sentence of Allstate's pre-motion letter, which they distort and take completely out of context. Pls. Mem. at 17.  Notwithstanding Plaintiffs' blind and misplaced faith in Allstate's summary description of  C.P.L.R. § 901(b) in a pre-motion letter, the Court should refer to the specific language of the provision as applied by the case law cited in Allstate's memorandum.

Because Plaintiffs have not, and indeed cannot, point to any express language in Section 5106(a), or any case law interpreting that statute that grants such authority, they desperately

6

stretch the limits of imagination to develop any means, including reference to an innocuous sentence in a pre-motion letter, to camouflage such failure.  Furthermore, Plaintiffs must point to the implementing regulations, specifically 11 NYCRR 65.39(c), as another desperate measure. This regulation refers to "a class action brought <u>for the payment of benefits</u>...."  11 NYCRR 65.39(c) (emphasis added).  According to Plaintiffs' logic, this reference along with the reference to an accrual date for the interest must mean that "New York's statutory no-fault scheme <u>expressly contemplates</u> the recovery of the interest penalty in a class action setting...."  Pls. Mem. at 17.  This leap of logic is fallacious.  First, the standard is "specifically authorized," not "expressly contemplates."  Second, the statute, not the regulations, must "specifically authorize" a class action.  Finally, as stated in the initial moving memorandum (Def. Mem. at 12), the regulations relate to a class action for benefits, not interest payments, and Plaintiffs concede that the instant case is one "where no recovery of benefits is sought."  Pls. Mem. at 17.[5]

**B.** **Section 901(b) Is A Substantive Provision And Applies In Federal Litigation.**

1.   Plaintiffs Cannot Avoid *Leider* and the *Erie* Doctrine.

Plaintiffs' argument that Section 901(b) is procedural makes no sense.  <u>See</u> Pls. Mem. at 18-21.  In its moving memorandum (Def. Mem. at 11-12), Allstate cited to and discussed <u>Leider</u>

---

[5]     Even if Plaintiffs were seeking to recover the benefits themselves, nothing in Section 5106(a), which covers the payment of benefits as well, specifically authorizes the use of the class action mechanism.  The fact that the regulations mentions class actions does not necessarily mean that the state legislature intended such a mechanism to be available.  There have been instances where the Superintendent of Insurance promulgated regulations that were inconsistent with the statute, and thus rendered invalid.  <u>See, e.g.</u>, <u>Adams v. Gov't Employees Ins. Co.</u>, 52 A.D.2d 118, 121, 383 N.Y.S.2d 319 (1st Dep't 1976) (an insurance department regulation which conflicts with provisions of the no-fault law should not be given weight), <u>appeal</u> <u>dismissed</u>, 40 N.Y.2d 807, 391 N.Y.S.2d 1025 (1976); <u>Cady v. Aetna Life & Cas. Ins. Co.</u>, 61 N.Y.2d 594, 597, 475 N.Y.S.2d 362 (1984) (holding that the regulation was invalid because it conflicted with C.P.L.R. § 7511); <u>Staten Island Hosp. v. Liberty Mut. Ins. Co.</u>, 122 Misc. 2d 523, 528, 471 N.Y.S.2d 506, 510 (Dist. Ct. Nassau Co. 1984) (regulation of Superintendant of Insurance relating to "uneven compensation for attorneys" held to be unenforceable).

v. Ralfe, 387 F. Supp. 2d 283 (S.D.N.Y. 2005), which squarely held <u>Section 901(b)</u> would <u>not</u> be

displaced by Fed. R. Civ. P. 23.  In so holding, the court in <u>Leider</u> provided a detailed analysis

applying <u>Erie</u> and its progeny to address the state substantive versus federal procedural issue.

<u>See</u> <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938).   Astonishingly, Plaintiffs do not offer

any alternative to the <u>Leider</u> court's analysis of the <u>Erie</u> doctrine.  Instead, Plaintiffs completely

turn a blind eye to the line of U.S. Supreme Court cases interpreting <u>Erie</u>, including <u>Guaranty</u>

<u>Trust Co. v. York</u>, 326 U.S. 99 (1945) (rejecting the substance-procedure test and applying the

outcome determination test); <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 27 (1988) (moving

from the "direct collision" test to a "sufficiently broad to cover the point in dispute").  For the

sake of brevity, Allstate will not engage in a detailed recitation of those U.S. Supreme Court

cases.  Suffice to say, the <u>Leider</u> court provided a succinct, sound analysis of <u>Erie</u> and its

pathmarking cases to reach the proper conclusion that Section 901(b) is not displaced by Fed. R.

Civ. P. 23.  The <u>Leider</u> court also found that "the bulk of cases to address the applicability of

N.Y. C.P.L.R. § 901(b) have decided that the statute is substantive and applies with equal force

in federal litigation." <u>Id.</u> at 291 (collecting cases). Accordingly, Allstate respectfully submits

that the <u>Leider</u> court's application of the <u>Erie</u> doctrine to the Section 901(b) is correct and should

be adopted.

Completely ignoring the <u>Erie</u> doctrine in their opposition, Plaintiffs make no attempt to

counter the cogent and detailed legal analysis performed by the Southern District.  Instead,

Plaintiffs arrogantly contend that the Southern District's analysis in <u>Leider</u> "makes no sense" and

"is simply misplaced." Pls. Mem. at 20, 21.  As an objection to the <u>Leider</u> decision, Plaintiffs

argue that "the class action device is not a result." Pls. Mem. at 20-21.  This argument is again

incomprehensible, but it appears to stem from the <u>Leider</u> court's application of the <u>Erie</u> doctrine

to this issue.   Plaintiffs seem to be arguing that any <u>Erie</u> doctrine analysis must be limited to substantive law, and not procedural rules, because only substantive law can affect the outcome of a case.  According to Plaintiffs, because C.P.L.R. § 901(b) is a procedural "class action device," it "cannot possibly dictate (or even influence) the result in this or any case." <u>Id.</u>  This proposition reflects a fundamental ignorance of the <u>Erie</u> line of cases and simply ignores the litany of decisions that had to apply the <u>Erie</u> doctrine when faced with an ostensible procedural rule that affected the outcome or "result" of the case.  <u>See</u> <u>Gasperini v. Center For Humanities</u>, 518 U.S. 415 (1996) ("Classification of a law as 'substantive' or 'procedural' for <u>Erie</u> purposes is sometimes a challenging endeavor.").

2.   *<u>Wesley</u>, <u>Oot</u>, and <u>Peters</u> Do Not Support Plaintiffs' Position.*

Rather than accepting the Southern District's analysis in <u>Leider</u> or applying the <u>Erie</u> doctrine, Plaintiffs curiously point to a decision that actually supports Allstate's argument.  Out of desperation, Plaintiffs place much significance in <u>Wesley v. John Mullins & Sons, Inc.</u>, 444 F. Supp. 117 (E.D.N.Y. 1978), but it is entirely unclear how that decision helps Plaintiffs.  In <u>Wesley</u>, the defendant moved to dismiss plaintiff's pendent state law claim, or in the alternative, to decertify the class action with respect thereto.  While recognizing the prohibition of a class action for the recovery of a penalty under  C.P.L.R. § 901(b), and further acknowledging that the relevant statute, *i.e.*, Section 414 of the New York Personal Property Law (a/k/a the New York Retail Installment Sales Act), did "not specifically authorize class actions," this Court in <u>Wesley</u> was addressing the issue of whether to assert pendent jurisdiction over the state claim.  <u>Id.</u> at 119. This Court in <u>Wesley</u> expressed severe reservations as to whether it had the power to exercise pendent jurisdiction over the pendent state claim which provided for a recovery in an amount in excess of that permitted by the parallel federal statute.  <u>Id.</u> at 120.  Nevertheless, this Court, assuming *arguendo* that it had such power, exercised its discretion in refusing to do so, in part

9

because it would have permitted "a plaintiff by procedural device to do that which is forbidden by both federal and state law." Id. This Court was referring to a class action that was prohibited by C.P.L.R. § 901(b), and as a result, decertified the class action in accordance with that provision.

Furthermore, Plaintiffs clearly misconstrue or distort the dicta appearing in footnote 12 of the Wesley decision, which Plaintiffs quote incompletely with a disingenuous use of an ellipsis. Footnote 12 of the Wesley reads in full:

> We recognize that the court might have power to exercise pendent jurisdiction over the state class claims if the amount of recovery sought thereunder were limited to that permissible under § 1640(a)(2)(B). This would emasculate the class members' recovery under the state statute, but it would go far in satisfying the federal and state policies against annihilatory penalty judgments. It would also circumvent the prohibition against class actions under C.P.L.R. § 901(b), as well as raise questions as to how the limited recovery would be distributed to the class, for N.Y. Pers. Prop. L. § 414(2) does not permit the court to consider all of the equitable factors it must consider under [TILA] § 1640(a). *It is thus doubtful whether it would be a proper exercise of our discretion to assert pendent jurisdiction under these hypothetical circumstances.*

444 F. Supp. at 120 n. 12 (emphasis added). From the full quote of the footnote, it is obvious that this Court in Wesley was describing a hypothetical situation if it exercised pendent jurisdiction and the anomalous consequences arising from such exercise, including the circumvention of the prohibition against class actions under C.P.L.R. § 901(b).

Plaintiffs, however, grossly mischaracterizes this footnote to argue that this Court could have exercised pendent jurisdiction, and that "*it could have continued to preside over the class action, allowing the class to seek recovery of statutory penalties* – even in the face of CPLR § 901(b)...." Pls. Mem. at 19. A review of footnote 12 in the context of the entire decision leads to the exact opposite conclusion – this Court refused to exercise pendent jurisdiction, because C.P.L.R. § 901(b) would have been circumvented. Accordingly, the Wesley decision supports

10

Allstate's position. Equally astonishing, Plaintiffs urge this Court to "follow its decision in Wesley" rather than the "misplaced" analysis of Leider. Pls. Mem. at 21.

Plaintiffs' reliance on the two other cited cases, In re Oot, 112 B.R. 497 (Bankr. N.D.N.Y. 1989), and In re Peters, 90 B.R. 588 (Bankr. N.D.N.Y. 1988), is equally misplaced.[6] Those two cases relate only to the procedural requirements of Section **901(a)**, not 901(b), versus Fed. R. Civ. P. 23. Section 901(a) is the state analog to Fed. R. Civ. P. 23 and imposes similar requirements (though not identical under certain situations), including numerosity, typicality, commonality, superiority, and adequacy of representation enumerated in Federal Rule 23. Oot and Peters never mentioned or discussed Section 901(b). To be sure, penalties or minimum recoveries were not in issue in either of those cases.

The bankruptcy courts in Oot and Peters were faced with the issue pertaining to Article 3-A of the New York Lien Law, which required that an action to enforce a trust be brought in a representative capacity in compliance with Article 9 of the C.P.L.R. 90 B.R. at 593. At that time, New York courts accorded the numerosity requirement under C.P.L.R. § 901(a) "liberal construction" in enforcing Article 3-A trusts. Id. In this context, the bankruptcy courts held that Section 901 and Fed. R. Civ. P. 23 "are procedural in nature." 112 B.R. at 502; 90 B.R. at 594. Accordingly, the bankruptcy courts were not dealing with any issue remotely close to a statutory penalty found in C.P.L.R. § 901(b), but were addressing the numerosity requirement of C.P.L.R. § 901(a). Federal courts in diversity cases will apply the standards of Fed. R. Civ. P. 23, and not CPLR 901(a), to determine whether a class action should be certified. Oot and Peters are

---

[6]     Plaintiffs' accusations that Allstate "neglects to mention," and "unfairly" reserved discussion of the Wesley, Oot, and Peters for the reply brief, and "entirely ignore[ed] them" are unnecessary. Pls. Mem. at 18, 20. First, as discussed herein, those cases are inapposite. Second, Allstate was limited at the time to a 25-page limit under Judge Garaufis's Individual Rules and thus had to be judicious with the arguments to assert.

11

therefore simply inapposite to the issues relating to Section 901(b).[7]

### III.   PLAINTIFFS FAIL TO ADDRESS THE STANDING ISSUE.

As demonstrated at length in Allstate's moving brief, Plaintiff Galvez lacks standing to assert any of the claims contained in the Complaint.  Plaintiffs cannot dispute that Galvez assigned her benefits claims to her medical providers and authorized those medical providers to obtain payment from Allstate.  Assuming as true that Allstate failed to timely make those payments, Plaintiffs cannot dispute that her medical providers are the ones who actually suffered from the alleged late payments.  Indeed, Plaintiffs do not and cannot deny that Galvez has not been damaged by any alleged late payment and did not suffer any out of pocket expenses as a result of any late payment.

Based on the foregoing reasons, this Court was inclined to rule that Ms. Galvez was not the proper plaintiff in the predecessor action.  Pls. Mem. Ex. S.   In view of the Court's inclination, Galvez voluntarily dismissed "Galvez I" only to subsequently commence this action and join Shady Grove as a co-plaintiff.  Despite the addition of Shady Grove, however, Plaintiffs' counsel inexplicably continues to assert that Galvez is entitled to the interest payments in the first instance, but is "prepared to have the case go forward with whichever party the Court ultimately views as the proper plaintiff." Pls. Mem. at 15.  In essence, Plaintiffs contend that while they would prefer to have the interest penalties paid to Ms. Galvez, they are ultimately unconcerned with the identity of the plaintiff as long as Allstate pays the interest to someone and Plaintiffs' counsel receives their one-third contingency fee.

---

[7]      The Leider decision parenthetically describes the ruling in Oot and Peters relating to C.P.L.R. § 901(b) (387 F. Supp. 2d at 292-93), but such description appears to be erroneous because, as discussed, C.P.L.R. § 901(b) or statutory penalties were never even discussed or mentioned in those decisions.

The argument that both Plaintiffs may state a claim for the same interest penalty payments even though they both concede that only one of them will be entitled to receive the payments, if any, is patently untenable.  First, by taking this position, Plaintiffs have completely relinquished their burden of proof on the standing issue, and instead aim to shift that burden to the Court to determine in the first instance who the proper plaintiff should be under the circumstances of this case.  See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (holding that plaintiffs have the burden of establishing standing).  Second, Plaintiffs not only fail to cite to any authorities to support this position, but allowing them to proceed together when only one of the Plaintiffs is ultimately entitled to relief presupposes the existence of a conflict of interest.   Plaintiffs attempt to negate this concern by incredulously arguing without proffering any supporting affidavits that no conflict of interest exists because "[b]oth plaintiffs believe that Ms. Galvez is the proper plaintiff."  Pls. Mem. at 22.  Such a statement, if true, seriously questions Shady Grove's motivation in bringing this action against Allstate and its ability to act as class representative.

In any event, none of the three arguments advanced by Plaintiffs in support of their assertion that the claim for statutory interest belongs to Galvez has merit.  First, Plaintiffs' reliance on the term "claimant" in section 5106(a) is misplaced.  Had the term been intended by the Legislature to mean that the insured was entitled to the interest penalty in the first instance, it would have used the term "insured" or "policy-holder."  See, e.g., City of N.Y. v. Beretta USA Corp., 228 F.R.D. 134, 144 (E.D.N.Y. 2005) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'") (citations omitted), adhered to on recon., 228 F.R.D. 147 (E.D.N.Y. 2005).  The term "claimant" in this instance logically refers to the party that actually submitted

13

the claims to the insurer, *i.e.,* the medical providers, pursuant to an assignment agreement.

Second, Plaintiffs' interpretation of the phrase "the applicant or the applicant's assignee" as meaning that the claim for statutory interest resides with the insured in the first instance is equally specious. To the contrary, such language simply illustrates the fact that the Legislature contemplated the possibility that an insured may have assigned his or her rights to apply for benefits to a health care provider. "Typically, the word 'or' as used in a statute indicates an alternative exists, 'presenting a choice' of either propositions that the word 'or' separates." Petro, Inc. v. Serio, 9 Misc. 3d 805, 811 n.2, 804 N.Y.S.2d 598 (Sup. Ct. N.Y. County 2005) (quoting McKinney's Cons. Law of N.Y., Book 1, Statutes § 235). Plaintiffs cite to no case law or legislative history to support its argument that the term "or" as used within the clause should be construed to mean that the applicant takes precedence over the applicant's assignee.

Finally, the fact that Galvez's assignment does not expressly refer to the statutory interest penalties under Section 5106(a) does not carve out an exception to the assignment. Plaintiffs do not and cannot refute the wealth of cases in New York that unequivocally hold that the interest penalty runs with the assignment. See, e.g., Cranofacial Pain Mgmt. v. New York Cent. Mut. Fire Ins. Co., 186 Misc. 2d 309, 310, 718 N.Y.S.2d 130 (Civ. Ct. Queens Co. 2000) (holding that the language of the assignment "evinces an intent to transfer all rights and interests for no fault benefits by the assignor to the provider). (Emphasis added.) Plaintiffs' argument that the assignment does not incorporate the interest penalties because it is not specifically referenced therein is contrary to the general law of assignments and quite simply does not make sense. Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, 731 F.2d 112, 125 (2d Cir. 1984) ("An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor."); Capoccia v. Brognano, 135 A.D.2d

14

1010, 522 N.Y.S.2d 733 (3d Dep't 1987) (holding that where assignment is clear and unequivocal and contains no reservations, the assignment is complete and assignor parted with his entire interest). Because of the assignment, Galvez is completely unaffected by any late or overdue payments for her medical services.

## IV.   PLAINTIFFS FAIL TO STATE CLAIMS SOUNDING IN CONTRACT

Insisting that they have claims based on a breach of contract, Plaintiffs easily lose sight of the fact that the gravamen of this action is Allstate's alleged refusal to pay the 2% interest penalty pursuant to N.Y. Ins. Law 5106(a), which is included in Count IV of the Complaint. Plaintiffs' strenuous effort to re-package the claim into ones sounding in contract in order to extend the statute of limitations period must therefore fail.

### A.   Plaintiffs Fail To Identify the Contract Term That Was Breached.

Plaintiffs point to Galvez's insurance policy which "sets forth the mandatory no-fault provisions required by (and lifted verbatim from) the no-fault statutory scheme." Pls. Mem. at 30. Plaintiffs, however, cannot identify any provision in the insurance policy (because it does not exist) that mentions the 2% interest penalty. If such a provision exists, Plaintiffs would have certainly pointed this Court to the provision in Plaintiff Galvez's insurance policy, the entirety of which Plaintiffs annexed as Exhibit Z to their memorandum. Their failure to do so speaks volumes. Instead, Plaintiffs must hide behind "an implied representation of fact" theory which again is vague, conclusory, and most significantly, unsupported by any substantive analysis or even any New York case law. See Fowler v. American Lawyer Media, Inc., 306 A.D.2d 113, 761 N.Y.S.2d 176, 177 (1st Dep't 2003) ("[V]ague and conclusory allegations are insufficient to sustain a breach of contract cause of action.") (citations and internal quotation marks omitted).

Plaintiffs also argue, "The complaint clearly alleges that Allstate's violations of the no-fault scheme constitute 'a widespread systematic [wrong], directed at consumers generally.'"

Pls. Mem. at 31 (citing Compl. ¶ 51). Again, this allegation is relevant to Allstate's statutory

obligations pursuant to Section 5106(a) claim, not to any contractual obligation.

**B.    The Liberal Notice Pleading Standard Cannot Salvage A Deficient Contract Claim.**

Plaintiffs also try to hide behind the notice pleading standard of Fed. R. Civ. P. 8(a).

Plaintiffs fail to recognize that the C.P.L.R. adopts a notice pleading standard as well. See 5

Weinstein, Korn & Miller, New York Civil Practice ¶ 3013.06 at 30-267 (Matthew Bender &

Co. 2 ed. 2006) ("Thus CPLR 3013 and Fed. R. Civ. P. 8(a) both take the position that the

essence of modern pleading is notice to the adversary and to the court."). Notwithstanding the

notice pleading standard of the C.P.L.R., courts have still required the plaintiff to identify the

insurance policy terms allegedly breached. See Def. Mem. at 13-14.

Federal courts in New York are no different and have also required specific allegations as

to what provisions of the agreement were breached. See, e.g., Americorp Financial, Inc., 180 F.

Supp. 2d at 390 ("In pleading such a [breach of contract] claim, plaintiff must provide specific

allegations as to an agreement between the parties, the terms of that agreement, and what

provisions of the agreement were breached as a result of the acts at issue.") (citation omitted);

Posner v. Minnesota Mining & Mfg. Co., 713 F. Supp. 562, 563 (E.D.N.Y. 1989) ("in asserting

a breach of contract claim, the complaint must plead the terms of the agreement upon which

defendant's liability rests") (citation omitted). Aside from case law articulating general

propositions, Plaintiffs again fail to provide any case law refuting the cases on point in Allstate's

moving memorandum.[8] The fact that Plaintiffs cannot point to any provision in the insurance

policy that was breached is fatal to their contract claim, and any re-pleading would be futile.

---

[8]    Plaintiffs' reliance on Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002), is also severely misplaced. That case involved a discrimination action, where the U.S. Supreme Court

Because Plaintiffs cannot identify any insurance policy provision that was breached, they rely on the argument that "the <u>clear implication</u> … is that Allstate will comply with the statutorily mandated requirements for no-fault coverage," and by failing to do so, "Allstate breaches the contract" and "also breaches the covenant of good faith and fair dealing." Pls. Mem. at 32 (emphasis added). Again, Plaintiffs' do not support its argument with any case law. Although a duty of good faith and fair dealing is implicit in every contract, the duty cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract. <u>See</u>, <u>e.g.</u>, <u>Sutton Assocs. v. Lexis-Nexis</u>, 196 Misc. 2d 30, 34, 761 N.Y.S.2d 800 (Sup. Ct. Nassau Co. 2003) (citations omitted).

Finally, with respect to the necessary element of contract damages, the standing issue is again dispositive. Because Plaintiff Galvez assigned her claim to her medical provider, she cannot claim that she sustained any damages for any breach of any contractual obligations.

### C.   Plaintiffs Cannot Extend the Statute of Limitations Period.

It is highly instructive that New York courts generally focus on the gravamen of the cause of action rather than its label to determine the applicable statute of limitations. <u>See</u>, <u>e.g.</u>, <u>Weissman v. Dow Corning Corp.</u>, 892 F. Supp. 510, 516 (S.D.N.Y. 1995) (citation omitted); <u>see also</u> <u>ABC Radio Network, Inc. v. State of N.Y. Dep't of Tax. And Fin.</u>, 294 A.D.2d 213, 214 (1st Dep't 2002) ("the essential nature of a proceeding may not be changed, thereby lengthening the statute of limitations, merely by denominating it as something other than what it actually is"). Accordingly, to the extent Plaintiffs' Complaint is asserting claims beyond April 20, <u>2003</u>, as opposed to April 20, <u>2000</u> (<u>see</u> Compl. ¶¶ 2, 30), such claims should be dismissed as time barred.

---

held that a complaint in such a case was not required to allege specific facts establishing the *prima facie* case under the *McDonnell Douglas* burden-shifting framework.

Not even Plaintiffs' counsel's "zealous" advocacy (Pls. Mem. at 32) can revive these time barred claims.

## V.   THE CONFLICT OF INTEREST BETWEEN GALVEZ AND SHADY GROVE UNDERSCORES WHY THE CLASS ACTION ALLEGATIONS MUST BE DISMISSED.

Although Plaintiffs contend that a decision on class certification would be premature at this stage, they ignore a well-settled principle that a plaintiff must first establish personal standing before even attempting to represent a class under Rule 23.  Angel Music, Inc. v. ABC Sports, Inc., 112 F.R.D. 70, 73-74 (S.D.N.Y. 1986).  This jurisdictional requirement is not lessened by the mere assertion of class allegations.

> That a suit may be a class action, however, adds nothing to the question of standing, for even the named plaintiffs who represent a class "must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."

Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976) (citing Warth v. Seldin, 422 U.S. 490, 502 (1975)).

Just because both Plaintiffs purportedly believe that Galvez is the proper plaintiff does not end the conflict of interest inquiry.  If the Court allows Galvez to proceed on her claims, the proposed class of claimants as set forth in the Complaint would likely result in a class of insureds who assigned their claims as Galvez did, and whose interests do in fact conflict with the interests of their respective health care providers.  The Court will thus be saddled with the burden of inquiring into every situation where an insured assigned her benefits claims to her health care providers to determine whether each health care provider consents to the notion that the insured is entitled to any interest penalties.  Where such consent cannot be obtained, Plaintiffs' counsel will inevitably be forced to reconcile the conflicting interests between other insureds and their

18

health care providers for the late interest penalties.

To be adequate class representatives pursuant to Rule 23(a)(4), Plaintiffs must demonstrate: (1) that the representatives' interests must not conflict with the class members' interests; and (2) the representatives and their attorney must be able to prosecute the action vigorously. See In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 512 (S.D.N.Y. 1996); Tedesco v. Mishkin, 689 F. Supp. 1327, 1339 (S.D.N.Y. 1988) ("Attorneys representing a class bear an independent duty to protect the interests of that class."). Plaintiffs' counsel's ability to protect the interests of the insureds will be substantially undermined if other health care providers do not take the same position as Shady Grove. See Tedesco, 689 F. Supp. at 1339 ("As the unnamed members of the class are not present to protect their rights, the district court must accordingly take special care to guarantee the propriety and adequacy of the class' legal representation."). In view of the fact that Plaintiffs' counsel and Shady Grove were quick to abandon the claim to Galvez, this Court should seriously question whether Plaintiffs' counsel and Shady Grove are adequate to represent vigorously a class (or sub-class) of medical providers. See Sweet v. Pfizer, 232 F.R.D. 360, 370 (C.D. Cal. 2005) ("...the conflicts made 'the class representatives and class counsel, despite their apparent best intentions, inadequate under Rule 23(a)(4)'") (citations omitted); accord Lewis v. NFL, 146 F.R.D. 5, 10 n.6 (D.D.C. 1992)("As the court finds an actual conflict here, counsel cannot be adequate and the class cannot be certified.").

Plaintiffs' suggestion of the use of subclasses is also unavailing; both Shady Grove and Galvez must still be an adequate representative of their respective proposed subclasses, and to the extent the interests of the classes conflict, each proposed subclass would require separate

19

counsel. Warren v. Xerox Corp., No. 01-CV-2909 (JG), 2004 WL 1562884, at *18, n.26 (E.D.N.Y. Jan. 26, 2004) (citing Ortiz v. Fibreboard Corp., 527 U.S. 815, 856 (1999)).

In any event, a defendant may properly move to strike class action allegations prior to discovery where, such as here, the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Clark v. McDonald's Corp., 213 F.R.D. 198, 205 n.3 (D.N.J. 2003); see also Reinisch v. New York Stock Exch., 52 F.R.D. 561, 564 (S.D.N.Y. 1971) (dismissing putative class under Rule 23(c)(1) where it was "evident that the claims of the class members would differ widely"); Rowe v. Morgan Stanley Dean Witter, 191 F.R.D. 398, 406 (D.N.J. 1999) (dismissing class allegations for failure to state a claim because requiring individualized fact-sensitive inquiries could not be maintained as a class action "as a matter of law"); Board of Educ. Of Topeka High School v. Climatemp, Inc., No. 79 C 4989, 1981 WL 2033, at *2, 5 (N.D. Ill. Feb. 20, 1981) (rejecting plaintiff's argument that it would be procedurally improper to entertain defendant's motion to strike class action allegations in advance of a motion by plaintiff to certify class); Miller v. Motorola, Inc., 76 F.R.D. 516 (N.D. Ill. 1977) (granting motion to strike class action allegations on the basis of the complaint). Unlike Parker v. Time Warner Entertain. Co., 331 F.3d 13 (2d Cir. 2003), no amount of discovery will circumvent the inherent conflict of interest contemplated by the putative class, nor will discovery shed additional light on the practicalities of a class action lawsuit (or lack thereof).

Plaintiffs' argument that the individualized issues inherent in the recovery of statutory penalties pose no barrier to Rule 23 certification is simply untenable. Plaintiffs' detailed recitation of Allstate's alleged mishandling of Plaintiff Galvez's claim reflects the individualized nature of such claims. Pls. Mem. at 11-14. Indeed, because of such individualized issues, various courts have refused to certify class actions in the context of disputes regarding PIP

20

claims.  See, e.g., Miller v. Allstate Ins. Co., No. 96 C 17107, slip. op. (Ky. Cir. Ct. Jefferson

Co., July 6, 2000) (see Tab 12 of the Compendium) (holding that allegations that insurer

improperly used a "peer review" process to deny full payment of PIP claims not appropriate for

class action treatment because individualized issues would predominate as each claimant would

have to prove "that his benefits were unpaid after thirty days, that he provided Allstate with

'reasonable proof,' and that there was no 'reasonable foundation' for the denial or delay of his

claim."); Ross-Randolph v. Allstate, No. DKC 99-3344, slip op. 16 (D. Md. May 11, 2001) (see

Tab 13 of the Compendium) (where plaintiffs alleged Allstate engaged in fraudulent scheme

using computer to adjust PIP claims, court dismissed class action allegations because to

determine whether any plaintiff was entitled to relief, each plaintiff would have to prove

entitlement to medical benefits, which "necessarily turns on whether a particular medical

procedure is necessary and an individual claimant's charges derived therefrom are reasonable.").

Notably, Plaintiffs have failed to cite to any cases certifying a class action in the area of PIP

benefits.  Because other courts have refused to certify a class action based on the same

allegations of Plaintiffs herein, it would be a tremendous waste of judicial resources to adjudicate

the class certification issues.

## CONCLUSION

For all of the foregoing reasons, and for those reasons set forth in the Allstate's initial

memorandum of law, the Court should grant the motion to dismiss the Complaint in its entirety,

and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        September 1, 2006

                                        Respectfully submitted,

                                        **SEYFARTH SHAW LLP**

                                        By:  /s/ Andrew T. Hahn
                                        Andrew T. Hahn, Esq. (AH-6283)
                                        James S. Yu, Esq. (JY-9734)

                                        1270 Avenue of the Americas, Suite 2500
                                        New York, New York 10020-1801
                                        (212) 218-5500

                                        Attorneys for Defendant
                                        Allstate Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing Reply Memorandum of Law in Support of Defendant Allstate Insurance Company's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

> John S. Spadaro, Esq.
> Murphy, Spadaro & Landon
> 1011 Centre Road, Suite 210
> Wilmington, Delaware 19805

Dated: New York, New York
      September 1, 2006

/s/ Andrew T. Hahn
Andrew T. Hahn