IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

SHADY GROVE ORTHOPEDIC           )
ASSOCIATES, P.A,                 )
on behalf of itself and all others )
similarly situated,              )
                                 )
                                 )      C.A. No.:  06-CV-1842NG-JO
                 Plaintiff,      )
                                 )
v.                               )
                                 )
ALLSTATE INSURANCE COMPANY,      )
                                 )
                 Defendant.      )
                                 )

PLAINTIFF SHADY GROVE ORTHOPEDIC ASSOCIATES'
ANSWERING BRIEF TO ALLSTATE'S MOTION
TO DISMISS THE AMENDED COMPLAINT

JOHN SHEEHAN SPADARO, LLC

John S. Spadaro, No. JS3769
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302)235-7745

Attorney for plaintiff Shady Grove Orthopedic
Associates (on behalf of itself and all others
similarly situated)

September 17, 2010

3829

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

STATEMENT OF FACTS ...............................................................................................3

    A.  The Thirty-Day Standard and Interest Penalty ....................................................3

    B.  The Preclusion Standard ......................................................................................5

ARGUMENT ..................................................................................................................7

I. THE AMEDED COMPLAINT EASILY MEETS THE JURISDICTIONAL
REQUIREMENTS UNDER CAFA ................................................................................7

    A.  The Procedural Standards ....................................................................................7

    B.  It is Reasonably Probable That the Amount in Controversy Will Exceed $5 Million ........8

        i.        Recoveries From Identical Cases ..................................................8

        ii.      The Value of Declaratory Relief, Punitive Damages and Attorneys' Fees Adds
Further to the Amount in Controversy ......................................10

            a.  Value of the Declaratory Judgment ............................................10

            b.  Value of Punitive Damages ..........................................................12

            c.  Value of Attorneys' Fees ..............................................................13

II. SHADY GROVE HAS PLED A COGNIZABLE CLAIM UNDER
THE GENERAL BUSINESS LAW ..............................................................................13

III. SHADY GROVE HAS PLED A COGNIZABLE CLAIM
FOR BREACH OF CONTRACT ..................................................................................16

    A.  The Applicable Pleading Standards ....................................................................16

    B.  The Amended Complaint Implicates Specific Contractual Promises ................17

IV. SHADY GROVE HAS SUFFICIENTLY PLED THE RULE 23 STANDARDS ................19

    A.  Numerosity ..........................................................................................................19

3829

B.  Commonality ...................................................................................................20

C.  Typicality ......................................................................................................21

D.  Adequacy .....................................................................................................22

E.  Superiority ....................................................................................................22

V. ALLSTATE'S ATTACK ON CLASS CERTIFICATION IS PREMATURE.........................23

VI. THE CLASSS IS READILY INDENTIFIABLE BY OBJECTIVE MEASURES ................25

CONCLUSION .......................................................................................................28

## TABLE OF AUTHORITIES

<u>Case</u>                                                                                                                                                    <u>Page</u>

*Alberton v. Commonwealth Land Title Ins. Co.*, 264 F.R.D. 203 (E.D. Pa. 2010) ........................26

*All Health Med. Care, P.C. v. Government Employees Ins. Co.*, 771 N.Y.S.2d 832
(N.Y. Civ. Ct. 2004) ...............................................................................................................6

*Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 0118(VM)(THK), 2009 WL 1181278
 (S.D.N.Y. May 1, 2009) ..........................................................................................................7

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)...............................................................................16, 17

*AVA Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp.2d 522
(S.D.N.Y. 2008)..................................................................................................................7, 8, 20

*Barabin v. Aramark Corp.*, C.A. No. 02-8057, 2003 WL 355417
(3d Cir. Jan. 24, 2003) ..............................................................................................................25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..............................................................16, 17

*Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006) ..........................................................1, 7

*Blumer v. Acu-Gen Biolabs, Inc.*, 638 F. Supp.2d 81 (D. Mass. 2009).......................................19

*Boone Assoc. v. Leibovitz*, 786 N.Y.S.2d 518 (N.Y. App. Div. 2004)..........................................17

*Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84 (D. Md. 2009)..........................................*passim*

*Calabrese v. CSC Holdings, Inc.*, No. 02-CV-5171
(E.D.N.Y. Feb. 19, 2009) ..........................................................................................................20

*Chiropractic Neurodiagnostics, P.C. v. Travelers Indem. Co.*, 812 N.Y.S.2d 300
(N.Y. Civ. Ct. 2006) ...............................................................................................................6

*Colonial Penn Ins. Co. v. Magnetic Imaging Sys., Ltd.*, 694 So.2d 852 (Fla. Ct. App. 1997)........2

*Crowhorn v. Nationwide Mut. Ins. Co.*, 836 A.2d 558 (Del. Super. Ct. 2003) .........................2, 3

*DeMarco v. Nat'l Collectors Mint, Inc.*, 229 F.R.D. 73 (S.D.N.Y. 2005).....................................20

*DiTolla v. Doral Dental IPA of New York, LLC*, 469 F.3d 271 (2d Cir. 2006) ............................11

*Flanagan v. Allstate Ins. Co.*, 225 F.R.D. 569, 573 (N.D. Ill. 2004) ...........................................27

iv

*Gayvont v. Davol, Inc.*, No. MDL 07-1842ML, 2008 WL 2433258
(D.R.I. Feb. 26, 2008)................................................................................................1, 7

*Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir. 2001)................................................12

*Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288 (S.D.N.Y. 1996) ...................2, 14, 15

*Hardy v. City of New York*, __ F. Supp.2d __, 2010 WL 3199676
(E.D.N.Y. Aug. 12, 2010)................................................................................................16

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977) ................11

*Karvaly v. Ebay, Inc.*, 245 F.R.D. 71 (E.D.N.Y. 2007)................................................21

*Kendrick v. Standard Fire Ins. Co.*, No. 06-141-DLB, 2007 WL 1035018
(D. Ky. March 31, 2007) ..................................................................................................7

*Kerr v. American Indep. Ins. Co.*, C.A. No. 06C-06-012ESB
(Del. Super. Ct. July 28, 2009)..........................................................................................9

*King's Medical Supply Inc. v. Country-Wide Ins. Co.*, 783 N.Y.S.2d 448
(N.Y. Civ. Ct. 2004) ..........................................................................................................4

*Leider v. Ralfe*, 387 F. Supp.2d 283 (S.D.N.Y. 2005).............................................13, 14

*Liberty Queens Medical, P.C. v. Liberty Mut. Ins. Co.*, No. 2001-915QC, 2002 WL 31108069
(N.Y. Sup. Ct. June 27, 2002) ..........................................................................................6

*Lewis v. First American Title Ins. Co.*, 265 F.R.D. 536 (D. Idaho 2010) ...................27

*Magee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582 (E.D.N.Y. 1997).....................12

*Manson v. GMAC Mortgage, LLC*, 602 F. Supp.2d 289, 294 n.9 (D. Mass. 2009)...................1, 7

*Mike v. Safeco Ins. Co. of America*, 223 F.R.D. 50 (D. Conn. 2004)...........................26

*Montefiore Medical Ctr. v. New York Central Mut. Fire Ins. Co.*, 780 N.Y.S.2d 161
(N.Y. App. Div. 2004)........................................................................................................5

*Mt. Sinai Hosp. v. Triboro Coach, Inc.*, 699 N.Y.S.2d 77 (N.Y. App. Div. 1999).......................6

*Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13 (2d Cir. 2003)................*passim*

*Presbyterian Hosp. v. Maryland Cas. Co.*, 90 N.Y.2d 274 (N.Y. 1997) ...........5, 11, 26

*P.T.& L. Contracting Corp. v. Trataros Constr., Inc.*, 816 N.Y.S.2d 508
(N.Y. App. Div. 2006) ........................................................................................................ 18

*Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47 (2d Cir. 1992) ..................................... 2, 14

*Robinson v. Metro-North Commuter RR Co.*, 267 F.3d 147 (2d Cir. 2001), *cert. denied*,
535 U.S. 951 (2002). ............................................................................................................ 24

*Rombom v. Interboro Mut. Indem. Ins. Co.*, 721 N.Y.S.2d 474 (N.Y. App. Div. 2000) ............... 6

*Schweitzer v. Crofton*, No. 08-CV-135(DRH)(ETB), 2010 WL 3516161(E.D.N.Y. 2010) ......... 16

*Selevan v. New York Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009) ............................................ 16

*Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp.2d 350 (E.D.N.Y. 2008) .......................... 8

*Womack v. State Farm Mut. Auto. Ins. Co.*, C.A. No. 06C-04-013RFS
(Del. Super. Ct. Aug. 21, 2008) ............................................................................................. 9

## Other Authorities

3A CORBIN ON CONTRACTS (1994) ...................................................................................... 18

Fed. R. Civ. P. 12 ................................................................................................................... 1

Fed. R. Civ. P. 23 ...................................................................................................... 10, 11, 24

Fla. Stat. ch. 627.736 ............................................................................................................. 9

Md. Code Ann., Insurance §19-508 ......................................................................................... 9

11 NYCRR 65-3 ..................................................................................................................... 5

11 NYCRR 65-3.4 .................................................................................................................. 4

11 NYCRR 65-3.5 ............................................................................................................... 4, 5

11 NYCRR 65-3.5 ................................................................................................................... 5

11 NYCRR 65-3.6 .................................................................................................................. 4

11 NYCRR 65-3.8 ................................................................................................................... 5

11 NYCRR 65-3.9 ............................................................................................................... 4, 5

vi

11 NYCRR 65.15 ...................................................................................................21

N.Y. Ins. Law §5102 .........................................................................................4, 5

N.Y. Ins. Law §5103 .........................................................................................4, 5

N.Y. Ins. Law §5106 ......................................................................................*passim*

N.Y. Veh. & Traf. Law §319 .............................................................................3, 4

10 *Del. C.* §8106 ..................................................................................................10

21 *Del. C.* §2118B ................................................................................................9

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) ..........................................3, 25

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Allstate Insurance Company has moved to dismiss Shady Grove Orthopedic Associates' amended complaint. Some of Allstate's arguments were available, but never made, in its July 2006 motion to dismiss the original complaint -- including its argument regarding the supposed "fail-safe" nature of the class definition. *See* Fed. R. Civ. P. 12(g) (subject to specified exceptions, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.")[1] Other arguments ask the Court to deny class certification at the pleadings stage, without the benefit of class discovery. For the reasons that follow, none of the arguments have merit.

*First*, the burden of proving the jurisdictional amount under the Class Action Fairness Act is not an onerous one. *Manson v. GMAC Mortgage, LLC*, 602 F. Supp.2d 289, 294 n.9 (D. Mass. 2009). It turns on a showing of "reasonable probability" -- a more lenient test than the traditional "preponderance of the evidence" standard. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006) (adopting reasonable probability standard for CAFA cases); *Gayvont v. Davol, Inc.*, No. MDL 07-1842ML, 2008 WL 2433258, slip op. at *1 (D.R.I. Feb. 26, 2008) (describing reasonable probability as "an even more lenient standard" than preponderance of the evidence) (Ex. A).

*Second*, common sense compels the conclusion that the amount in controversy will likely exceed $5 million. As shown below, Allstate held New York State's largest market share for auto insurance as recently as 2005 (or shortly before Shady Grove filed its complaint in April 2006). The applicable six-year statute of limitations for contract claims implicates a ten-year

---

[1] For this reason, Allstate should not properly be permitted to argue its "fail-safe" objection on this motion.

1

span of Allstate's claims-handling. The amended complaint seeks recovery of statutory interest, declaratory relief, attorneys' fees and punitive damages, each of which constitute separate values for purposes of calculating the amount in controversy. Moreover, experience in identical cases -- including the $5 million recovery in *Crowhorn v. Nationwide Mut. Ins. Co.*, 836 A.2d 558, 561 (Del. Super. Ct. 2003), which involved a class of roughly 28,000 claimants in tiny Delaware -- makes it overwhelmingly clear that this case, targeting as it does a far larger class, implicates more than $5 million.

*Third*, the amended complaint pleads cognizable claims for violation of New York's General Business Law and for breach of contract. Section 349 of New York's General Business law "is applicable to insurance companies' interactions with insureds," *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 49 (2d Cir. 1992); and as the insured's assignee, Shady Grove has the same rights as the insured. *See also Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 293-94 (S.D.N.Y. 1996) (upholding care providers' claims challenging delay and denial of no-fault payments under both section 349 *and* contract theories).

*Fourth*, Allstate's Rule 23 analysis is both premature and wrong. As will be seen, the complaint in this case is virtually identical to the complaint filed (by the same attorney) in *Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84 (D. Md. 2009). Not only did the *Bulmash* complaint survive as a matter of pleading, it ultimately led to class certification on a contested Rule 23 motion. In fact, the district court in *Bulmash* viewed that identical case as "*perfectly suited* for a class action." *Bulmash*, 257 F.R.D. at 91 (emphasis added). *See also Colonial Penn Ins. Co. v. Magnetic Imaging Sys., Ltd.*, 694 So.2d 852, 853 (Fla. Ct. App. 1997) (upholding class certification in an identical case under Florida's analog to Rule 23); *Crowhorn*, 836 A.2d at

2

561-64 (approving class settlement in an identical case under Delaware's Superior Court Civil Rule 23).

In any event, the Rule 23 analysis should be informed by discovery, and not resolved on the basis of attorney argument. *See Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 21 (2d Cir. 2003) (reversing denial of class certification where "[t]he District Court precluded any class discovery and even the filing of a motion for class certification.")

*Finally*, this is not a "fail-safe" class. Indeed, Allstate confuses the "fail-safe" concept so thoroughly that it would make class certification impossible in any case where the class seeks recovery of money. But the class here is readily ascertainable by objective criteria; and Allstate's liability for the PIP claims at issue has already been decided. *See* MANUAL FOR COMPLEX LITIGATION §21.222 (4th ed. 2004) ("fail-safe" inquiry turns on whether identity of class "can be ascertained by reference to objective criteria.")

## STATEMENT OF FACTS

The Court is familiar with both the procedural history and the basic gravamen of this lawsuit. In brief, Shady Grove seeks a class-wide recovery of statutory interest for overdue Personal Injury Protection benefits under N.Y. Ins. Law §5106(a).[2] It proceeds as assignee of its former patient, Sonia Galvez.

### A. The Thirty-Day Standard and Interest Penalty

Under N.Y. Veh. & Traf. Law §319(1) (part of New York's Motor Vehicle Financial Security Act), persons who own any motor vehicle registered in New York or operate or permit to be operated a motor vehicle in New York must maintain specified forms of liability insurance. N.Y. Ins. Law §5103(a) provides that liability insurance issued in satisfaction of section 319's

---

[2] We refer to these insurance benefits throughout as "PIP" or "no-fault" benefits.

3

requirements must also provide for the payment of first-party benefits to specified categories of persons, and for loss arising out of the use or operation of the insured vehicle. These first-party benefits (sometimes referred to as "no-fault," "personal injury protection" or "PIP" benefits) include, by virtue of the definitions set forth in N.Y. Ins. Law §5102, payments to reimburse persons for medical and other expenses up to $50,000 per person.

Under N.Y. Ins. Law §5106(a), payment of first-party no-fault benefits pursuant to section 5103 must be made as the loss is incurred. Section 5106(a) further provides that such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of the loss. It provides, too, that overdue benefits will bear interest at the rate of two percent per month.[3]

Regulations promulgated by New York's Insurance Department likewise govern the processing of claims for first-party no-fault benefits. Under 11 NYCRR 65-3.5(a), an insurer may request verification of the claim for no-fault benefits within ten business days of its receipt of the claimant's application for such benefits. Verification must be requested (if at all) through the use of prescribed forms as specified by 11 NYCRR 65-3.4(c), including New York State Form NF-3 (Verification of Treatment by Attending Physician or Other Provider of Health Services) and New York State Form NF-4 (Verification of Hospital Treatment). If an insurer makes a timely request for verification under 11 NYCRR 65-3.5(a), the time within which the insurer must pay the claim for no-fault benefits is tolled pending the insurer's receipt of the requested verification. *King's Medical Supply Inc. v. Country-Wide Ins. Co.*, 783 N.Y.S.2d 448, 450 (N.Y. Civ. Ct. 2004). If the requested verification is not supplied to the insurer within thirty days of the original request, then 11 NYCRR 65-3.6(b) requires the insurer to communicate a follow-up request for verification within ten days thereafter. The regulations further provide,

---

[3] Under 11 NYCRR 65-3.9(a), interest owed pursuant to N.Y. Ins. Law §5106(a) is compounded and calculated on a *pro rata* basis using a thirty-day month.

4

under 11 NYCRR 65-3.5(b), that an insurer may request additional verification within fifteen business days of its receipt of one or more completed verification forms.

Under 11 NYCRR 65-3.8(a)(1), no-fault benefits are overdue if not paid within thirty days after the insurer receives verification of all relevant information requested pursuant to 11 NYCRR 65-3.5 (in cases where such a request is made). As noted above, overdue benefits are subject to the interest penalty specified in section 5106(a) and 11 NYCRR 65-3.9(a).

The effect of this regulatory scheme (established under N.Y. Ins. Law §§5102, 5103 and 5106, in combination with the provisions of 11 NYCRR 65-3) is to require insurers to pay covered no-fault benefits within thirty days of the claimant's submission of proof of the fact and amount of loss, or (in cases where the insurer makes any timely request for verification) within thirty days of the insurer's receipt of all requested verification. The same regulatory scheme makes no-fault insurers liable for payment of an interest penalty on overdue benefits, calculated at the rate of two percent per month.

### B. The Preclusion Standard

New York's common law adds an important adjunct to the regulatory scheme. A fair avalanche of authority holds that an insurer's failure to pay or deny a no-fault claim within the required thirty days precludes it from contesting the claim. *See Presbyterian Hosp. v. Maryland Cas. Co.*, 90 N.Y.2d 274, 282 (N.Y. 1997) (thirty-day violation precluded assertion of "statutory exclusion defense"); *Montefiore Medical Ctr. v. New York Central Mut. Fire Ins. Co.*, 780 N.Y.S.2d 161, 162 (N.Y. App. Div. 2004) ("In the event an insurer fails to timely deny a [no-fault] claim . . . the insurer is precluded from asserting that the claim was untimely or incomplete"); *Mt. Sinai Hosp. v. Triboro Coach, Inc.*, 699 N.Y.S.2d 77, 81 (N.Y. App. Div. 1999) (same); *Chiropractic Neurodiagnostics, P.C. v. Travelers Indem. Co.*, 812 N.Y.S.2d 300,

300 (N.Y. Civ. Ct. 2006) (thirty-day violation precludes all claims of "noncoverage"); *All Health Med. Care, P.C. v. Government Employees Ins. Co.*, 771 N.Y.S.2d 832, 834 (N.Y. Civ. Ct. 2004) ("Failure to pay or deny a claim will result in preclusion of defendant's affirmative defenses at trial.")

Significantly, this preclusion standard applies to the defense of "lack of medical necessity" -- meaning that the proposed class here, consisting only of those whose claims were subject to the thirty-day violation, cannot possibly implicate that (individualized) defense. *See Rombom v. Interboro Mut. Indem. Ins. Co.*, 721 N.Y.S.2d 474, 474-75 (N.Y. App. Div. 2000) ("Defendant's failure to deny plaintiff's claim for no-fault benefits within 30 days of receipt of proof of claim and amount of loss sustained precludes defendant from asserting the affirmative defense of denial of benefits on the ground that the tests administered were 'not medically reasonable and/or necessary'"); *Liberty Queens Medical, P.C. v. Liberty Mut. Ins. Co.*, No. 2001-915QC, 2002 WL 31108069, slip op. at *1 (N.Y. Sup. Ct. June 27, 2002) ("Lack of medical necessity is a defense to an action for recovery of no-fault benefits , and may be asserted by the insurer *provided* that there has been a timely denial of the claim") (emphasis added) (Ex. B). Because the class is limited to those who were subjected to the thirty-day violation, none of the class's claims are susceptible to coverage defenses, including defenses based on lack of medical necessity, excessive doctor's bills or the like.

6

## ARGUMENT

### I. THE AMENDED COMPLAINT EASILY MEETS
### THE JURISDICTIONAL REQUIREMENTS UNDER CAFA

#### A. The Procedural Standards

The "burden of demonstrating the amount in controversy" under CAFA "is . . . not an onerous one." *Manson v. GMAC Mortgage, LLC*, 602 F. Supp.2d 289, 294 n.9 (D. Mass. 2009). It requires us to show "that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff are in excess of $5 million." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006).

Courts recognize that the "reasonable probability" standard is a lesser and more lenient standard than preponderance of the evidence. In *AVA Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp.2d 522 (S.D.N.Y. 2008), for example, the court observed that "[i]n determining whether federal jurisdiction exists, a court *need only* to be satisfied that the removing party has established, with reasonable probability, the amount in controversy." *AVA Acupuncture*, 592 F. Supp.2d at 530 n.61 (emphasis added in part, omitted in part). In *Kendrick v. Standard Fire Ins. Co.*, No. 06-141-DLB, 2007 WL 1035018 (D. Ky. March 31, 2007), it was sufficient that the court could "reasonably deduce[] from the allegations . . . that the aggregate amount in controversy *could* exceed $5 million." *Kendrick*, slip op. at * 3 (emphasis in original) (Ex. C). Similarly, in *Gayvont v. Davol, Inc.*, No. MDL 07-1842ML, 2008 WL 2433258 (D.R.I. Feb. 26, 2008), the court described the reasonable probability test as "an even more lenient standard" than preponderance of the evidence. *Gayvont*, slip op. at *1 (Ex. A). *And cf. Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 0118(VM)(THK), 2009 WL 1181278, slip op. at *3 n.1 (S.D.N.Y. May 1, 2009) (observing that "in the Eleventh Circuit, defendants must establish jurisdictional requirements for removal by a 'preponderance of the evidence,' whereas in the

7

Second Circuit, defendants must merely establish a 'reasonable probability' that those requirements are met to carry their burden under CAFA") (Ex. D).

Shady Grove's burden is further eased by the requirement that "the Court must construe all ambiguities and draw all reasonable inferences in favor of the party asserting federal jurisdiction." *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp.2d 350, 353 (E.D.N.Y. 2008). This is consistent with CAFA's purpose of expanding diversity jurisdiction for class action lawsuits. *AVA Acupuncture*, 592 F. Supp.2d at 526.

In evaluating whether CAFA's jurisdictional requirements are met, the Court looks first to the complaint. *Id.* at 527. If the pleadings are inconclusive, the Court may then look outside the pleadings. *Sorrentino*, 588 F. Supp.2d at 354; *AVA Acupuncture*, 592 F. Supp.2d at 527.

## B. It is Reasonably Probable That the Amount in Controversy Will Exceed $5 Million

The conclusion urged by Allstate -- that there is no reasonable probability under which the amount in controversy could exceed $5 million -- flies in the face of common sense and empiricism. As noted above, Allstate held New York State's largest market share for auto insurance at the time this action commenced.[4] The lawsuit having commenced in 2006, the applicable six-year statute of limitations for contract claims implicates a ten-year span of Allstate's claims-handling (from 2000 to the present). These circumstances make it at least reasonably probable, if not fairly certain, that the universe of claims will be enormous.

### i. Recoveries From Identical Cases

The Court should also consider the size of the recoveries in identical cases against other PIP insurers. After all, the statutory thirty-day claims handling standard, and the availability of statutory interest for overdue claims, are not unique to New York. Other states have enacted

---

[4] *See* Http://www.ins.state.ny.us/press/2005/p0505021.htm (last visited on June 21, 2010).

8

substantially identical statutes, requiring no-fault insurers to pay covered claims (or deny

noncovered ones) within thirty days of receipt, and imposing an interest penalty for overdue

payments. *See, e.g.*, 21 *Del. C.* §2118B(c) (Delaware statute, requiring the insurer to pay or deny

in writing "no later than 30 days following the insurer's receipt of [a] written request for first-

party insurance benefits," and providing graduated interest penalty for overdue payments); Fla.

Stat. ch. 627.736(4)(b) (Florida statute, providing that "[p]ersonal injury protection insurance

benefits . . . shall be overdue if not paid within 30 days after the insurer is furnished written

notice of the fact of a covered loss and of the amount of same," and providing interest penalty);

Md. Code Ann., Insurance §19-508(c) (to same effect). Leading names in the auto insurance

market -- names like State Farm, Nationwide, GEICO and Liberty Mutual -- thus operate every

day, and in several states, within the framework of the thirty-day standard.

Due to the chronic failure of auto insurers to comply with theses statutes, substantial

recoveries have been made in class action settings identical to this one. As noted above, a class

of 28,000 produced a recovery of $5 million in the *Crowhorn* case. By contrast, the class in *Kerr*

*v. American Indep. Ins. Co.*, C.A. No. 06C-06-012ESB (Del. Super. Ct. July 28, 2009) numbered

just 717 persons. *Kerr*, slip op. at 2 (Ex. E). *See also id.* at 3 (finding that the class

representative's claims "are typical of those of the class, because he (like all other class

members) alleged an entitlement to statutory interest . . . due to overdue PIP benefits.") Yet the

*Kerr* settlement agreement confirms that this relatively tiny class recovered a $300,000

settlement fund. Ex. F at 17 (excerpted due to its size). Similarly, a class of 13,000 PIP

claimants yielded a $1.1 million settlement fund in *Womack v. State Farm Mut. Auto. Ins. Co.*,

C.A. No. 06C-04-013RFS (Del. Super. Ct. Aug. 21, 2008) (Ex. G). *And see* Ex. H (excerpts of

*Womack* settlement agreement, confirming size of the $1.1 million fund).

9

It must be emphasized, too, that these prior results were obtained in Delaware. New York's population is almost *twenty times* that of Delaware.[5] Delaware's statute of limitations for contract claims, meanwhile, is half that of New York's. *See* 10 *Del. C.* §8106 (providing for three-year limitation on actions "based on a promise[.]") The relevant class period in this case will thus be years longer than the corresponding class periods from *Crowhorn, Kerr* and *Womack.*

Common sense dictates that if Shady Grove's allegations of widespread misconduct are true, then 1) the class size here will vastly outnumber the class size in these prior identical cases, 2) the universe of PIP claims will far exceed anything seen in the prior cases, and 3) the amount in controversy not only exceeds $5 million, but could easily exceed $10 million.

### ii. The Value of Declaratory Relief, Punitive Damages and Attorneys' Fees Adds Further to the Amount in Controversy

The amended complaint seeks recovery not just in the form of statutory interest, but also in the form of declaratory relief, attorneys' fees and punitive damages. Each of these items of recovery should be separately factored into the Court's calculation of the amount in controversy.

### a. Value of the Declaratory Judgment

The amended complaint seeks a declaration that, by systematically failing to pay statutory interest on uncontested, overdue PIP claims, Allstate has failed to comply with N.Y. Ins. Law §5106 on a grand scale. Amended compl. ¶¶38-45. This relief is meant to constitute, in the vernacular of Rule 23, "corresponding declaratory relief." See Fed. R. Civ. P. 23(b)(2)

---

[5] *See* http://quickfacts.census.gov/qfd/states/10000.html (last visited September 15, 2010) (showing Delaware's population to be less than 900,000); http://quickfacts.census.gov/qfd/states/36000.html (last visited September 15, 2010) (showing New York's population at over 19.5 million).

10

(providing for class certification where the defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]") The requirement of "corresponding declaratory relief," means relief that "as a practical matter . . . affords injunctive relief or serves as a basis for later injunctive relief." Fed. R. Civ. P. 23(b)(2) advisory committee's note.

In other words, the declaration sought here would not only impact past claims; it could serve as the basis for later injunctive relief if Allstate persisted in the challenged conduct after the conclusion of this lawsuit. Such declaratory relief has value beyond any immediate monetary recovery.

In actions for declaratory relief, "the amount in controversy is measured by the value of the object of the litigation." *DiTolla v. Doral Dental IPA of New York, LLC*, 469 F.3d 271, 276 (2d Cir. 2006) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977)). The object here -- reforming Allstate's approach to covered no-fault claims -- has substantial value to the class, many of whom remain (and will remain) Allstate policyholders. Though that value is not readily reducible to dollars and cents, the recognized value of no-fault coverage suggests that Shady Grove's count for declaratory relief alone places a seven-figure amount in controversy. *See Presbyterian Hosp. v. Maryland Cas. Co.*, 90 N.Y. 2nd 274, 281 (N.Y. 1997) (observing that "a core and essential objective" of no-fault scheme is "to provide a tightly timed process of claim, disputation and payment.")

**b. Value of Punitive Damages**

It is "well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Under New York law,

> The courts require a plaintiff to establish four elements in order to obtain punitive damages "as an additional and exemplary remedy when the claim arises from a breach of contract": (1) the defendant's conduct must give rise to an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . such as fraud aimed at the public generally; (3) the egregious conduct must be directed at the plaintiff; and (4) the conduct complained of must be part of [a] pattern directed at the public generally."

*Magee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 588 (E.D.N.Y. 1997) (collecting cases). The amended complaint meets this test at every turn. An independent tort is alleged under section 5106's private right of action. The allegations of widespread misconduct and dishonesty (including fudging of payment records) target egregious conduct on the one hand, and consumer-oriented conduct (or conduct directed at the consuming public generally) on the other. The amended complaint further alleges that Shady Grove, as assignee of Ms. Galvez, has been subjected to the challenged conduct.

In short, this lawsuit is precisely the type of case envisioned by cases like *Magee*. The amended complaint thus pleads a legally cognizable claim for punitive damages.[6] Based on the scope of the lawsuit, it is clear that the stakes on punitive damages are high, and certainly in the seven-figure range.

---

[6] It is noteworthy, too, that Allstate has not seriously challenged the availability of punitive damages in its motion.

#### c. Value of Attorneys' Fees

Attorneys' fees are available under section 5106, under section 349 of the General Business Law, and under Rule 23(h).  With the litigation in its fourth year; a procedural history leading to the United States Supreme Court and back again; and discovery now under way, it should be clear that hundreds of hours have already been devoted to the prosecution of this case. Should the lawsuit survive Allstate's latest motion to dismiss, it is equally clear that many more hours are to come.

Assuming commercially reasonable hourly rates on a lodestar basis alone, the amount tin controversy for attorneys' fees must reasonably be calculated as a seven-figure amount.

*\*\*\**

As demonstrated above, the "reasonable probability" test is a low threshold.  The contours of this dispute make plain that it is at least reasonably probable that the amount in controversy is in excess of $5 million.

## II. SHADY GROVE HAS PLED A COGNIZABLE
## CLAIM UNDER THE GENERAL BUSINESS LAW

Allstate makes much of Shady Grove's prior withdrawal, without prejudice, of its claim under section 349 of the General Business Law (or "GBL").[7]  That action was prompted by Allstate's citation, on its original motion to dismiss, of *Leider v. Ralfe*, 387 F. Supp.2d 283 (S.D.N.Y. 2005).  That is, the original complaint sought treble damages under the GBL.  *Leider*, however, stands for the proposition that class certification is available under section 349 of the GBL only where a plaintiff waives his or her claim for treble damages -- and this by operation of the now-familiar CPLR §901(b).  *Leider*, 387 F. Supp.2d at 292-93.  *See also* Docket No. 11-1 at

---

[7] Under Rule 41(a)(1)(B), the voluntary dismissal of a claim is without prejudice unless otherwise stated.

17 (wherein Allstate argues *Leider*). In light of *Leider*'s holding, Shady Grove decided to withdraw the GBL claim and re-plead at the next opportunity. Since Shady Grove's amended complaint does not seek treble damages, the "withdrawal" episode is of no consequence to this motion.

More importantly, claims under section 349 are available to claimants and their assignees in insurance disputes, so long as the challenged conduct targets not just the plaintiff but the consuming public generally. In *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 49 (2d Cir. 1992) the Second Circuit expressly held that section 349 is "applicable to insurance companies' interactions with insureds . . . ." The Court rested its holding on a finding that the insureds "presented ample evidence to prove that Nationwide engaged in similar deceptive practices against other policyholders, thus satisfying the GBL §349 requirement that the conduct be recurring or have ramifications for the general public." *Id.* at 53. Of course, this is the precise type of proof that Shady Grove intends to marshal through discovery here.

Allstate also says that 1) the conduct complained of does not constitute "deception" within the meaning of the statute, and 2) Shady Grove lacks standing under section 349 because it is not a consumer. The decision in *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288 (S.D.N.Y. 1996) answers these arguments definitively.

*Greenspan* was an action by care providers (not policyholders or other insureds) challenging a variety of Allstate's practices in the handling of no-fault claims. The plaintiff alleged, for example, that Allstate "falsely denies having received claims" on a widespread basis -- one of the same allegations made by Shady Grove here. Not surprisingly, Allstate made precisely the same argument it makes here: "Allstate argues that health care providers are not the public, and that the complaint thus alleges no public harm." *Greenspan*, 937 F. Supp. at 294.

14

The Court rejected Allstate's argument, finding not only that the allegations of improper claims handling constituted "deceptive acts or practices" under section 349, but also that the care provider had standing:

> Here, although Allstate's deceptive acts allegedly impeded plaintiffs' ability to earn a living, they may also affect the public interest. The purpose of the no-fault insurance law was to institute an inexpensive, efficient method of compensating accident victims. Deliberately erecting barriers to reimbursement and imposing additional social costs may frustrate that objective and harm the public. Allstate's conduct may also affect the ability of accident victims to obtain medical treatment.

*Id.*

New York's no-fault scheme relies heavily on the availability of statutory interest for overdue benefits as a means of compelling prompt payment. As noted earlier, speed lies at the heart of the no-fault scheme generally, and section 5106 in particular. The conduct challenged here is thus a threat to the no-fault statute's fundamental purpose; and it threatens a public harm, just as in *Greenspan*. Under *Greenspan*, Shady Grove has standing to pursue its claim under section 349; and the claim itself is available on the facts alleged.

Finally, the transaction at issue -- not Ms. Galvez's medical treatment, but the handling of her PIP claim -- is not an "out-of-state" transaction. There is no dispute that Ms. Galvez was driving a New-York-registered car at the time of her accident; that her PIP coverage arises under a New York policy; or that the claims were handled by Allstate at its Hauppauge, New York office. The fact that medical bills were mailed from Maryland does nothing to change the character of this New York no-fault dispute.

### III.  SHADY GROVE HAS PLED A COGNIZABLE
### CLAIM FOR BREACH OF CONTRACT

#### A.  The Applicable Pleading Standards

Allstate asks the Court to treat the Supreme Court's decisions in *Ashcroft v. Iqbal*, 129 S.

Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) as a grant of immunity

from civil lawsuits.  But in the aftermath of these cases -- which, properly deployed, are really

meant to target frivolous claims -- the applicable pleading standards remain generous to

plaintiffs.  For example, it is still the case that "[w]hen evaluating a motion to dismiss for failure

to state a claim under Rule 12(b)(6), a court shall 'construe plaintiff['s] complaint liberally,

accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in

plaintiff['s] favor.'" *Hardy v. City of New York*, __ F. Supp.2d __, 2010 WL 3199676, slip op. at

*12 (E.D.N.Y. Aug. 12, 2010) (quoting *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d

Cir. 2009)) (Ex. I).  Moreover, under *Twombly*, a plaintiff need not plead with extensive detail;

rather, he or she "must allege 'only enough facts to state a claim to relief that is plausible on its

face.'" *Schweitzer v. Crofton*, No. 08-CV-135(DRH)(ETB), 2010 WL 3516161, slip op. at * 3

(E.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 570) (Ex. J).  Nor have *Iqbal* and *Twombly*

dispensed with Rule 9(b), so that contract claims must now be pled with particularity.

The amended complaint describes the precise conduct that Shady Grove challenges: a

routine and widespread failure to pay statutory interest under section 5106(a).  It describes Ms.

Galvez's PIP claims with specificity, identifying her vehicle by make, model and tag number.  It

identifies the involved insurance contract by policy number.  It states the date of the accident and

recounts the tender of claims to Allstate, etc.  The amended complaint also alleges that Shady

Grove, as assignee, has been subjected to the offending practice.  Further, it alleges that over

50,000 people are similarly situated.

16

This is a well-pled and plausible claim -- not the kind of frivolous, "threadbare" pleading to which *Iqbal* and *Twombly* are directed.

## B. The Amended Complaint Implicates Specific Contractual Promises

Shady Grove's pleading implicates contractual promises in three respects. First, it is axiomatic that when a contract is silent as to time of performance, a reasonable time will be implied. *Boone Assoc. v. Leibovitz*, 786 N.Y.S.2d 518, 518-19 (N.Y. App. Div. 2004) (citation omitted). Though Shady Grove is clearly aware that covered PIP claims must be paid within thirty days, it makes no mention of that deadline in its insurance contract -- which, being a contract of adhesion, is solely drafted by Allstate.

But since a reasonable time for performance must be supplied, the statutory thirty-day standard must necessarily be part of the contract. That standard of performance is not merely reasonable, but mandatory (and so conclusively reasonable). The fact that Allstate specifies no time for performance on covered PIP claims does not insulate it from a claim for breach of contract.

Second, the amended complaint alleges that "[a]n implied representation of fact contained in all the subject automobile insurance policies is that Allstate will address claims for first-party no-fault benefits in a manner consistent with the requirements of N.Y. Ins. Law §5106 and [the related no-fault regulations]." Amended Compl. ¶48. In fact, Ms. Galvez's policy sets forth a six-page, single-spaced policy endorsement titled "MANDATORY PERSONAL INJURY PROTECTION ENDORSEMENT - New York." Ex. K. That endorsement is taken directly from the prescribed language of the no-fault regulations. The clear implication, to ordinary consumers of reasonable sensibilities, is that Allstate will comply with the statutorily

17

mandated requirements for no-fault coverage.  By failing to do so, then, Allstate breaches the contract.

Third, the amended complaint clearly alleges that Allstate's violations of the no-fault scheme constitute "a widespread and systematic [wrong], directed at consumers generally." Amended Compl. ¶51.  Such systematic wrongdoing constitutes bad faith almost by definition; and the complaint thus alleges that by engaging in these widespread abuses, Allstate has breached the policy's implied promise of good faith and fair dealing.  *Id.* ¶53.  *See also* 3A CORBIN ON CONTRACTS §654A (1994) (defining the duty of good faith and fair dealing as "the obligation to preserve the spirit of the bargain rather than the letter, the adherence to substance rather than form.")[8]

In other words, any insurer that engages in the conduct complained of here -- that is, the routine violation of statutory claims-handling standards, systematic delays and avoidance of statutory payment obligations, and even the falsification of claim records -- necessarily breaches the duty of good faith and fair dealing.  That breach is actionable under New York law; and it is pled in the complaint in detail.  Amended Compl. ¶¶17-20, 51-54.

---

[8] It is axiomatic that all contracts contain an implied covenant of good faith and fair dealing. *P.T. & L. Contracting Corp. v. Trataros Constr., Inc.,* 816 N.Y.S.2d 508, 508 (N.Y. App. Div. 2006) (noting also that the covenant is breached by conduct that, though not forbidden under the contract's express terms, would nonetheless deprive the other party of the contract's full benefits).

## IV. SHADY GROVE HAS SUFFICIENTLY
## PLED THE RULE 23 STANDARDS

### A. Numerosity

Allstate chastises us for amending the complaint's estimate of the class's size from "over 1,000 members" to "over 50,000 members." It also criticizes us for not knowing information that is uniquely in Allstate's possession -- that is, the exact number of persons to whom Allstate owes statutory interest.

Several points are in order. First, the very authority upon which Allstate relied in its June 15, 2001 pre-motion-conference letter holds that when the amount in controversy is challenged, the plaintiff may meet its burden by amending the pleadings. *Blumer v. Acu-Gen Biolabs, Inc.*, 638 F. Supp.2d 81, 86 (D. Mass. 2009). There is nothing improper in Shady Grove's amendments. Second, the amendment in question in no way contradicts the original pleading: any number "over 50,000" must necessarily be "over 1,000."

But perhaps more to the point, the "over 50,000" clarification was made necessary by Allstate's perverse reading of the original complaint. That is, Allstate has repeatedly read the phrase "over 1,000" to mean "*only* 1,000"; for this reading allows Allstate to then formulaically multiply the number 1,000 by the approximate dollar amount of Shady Grove's interest claim, and thereby (ostensibly) support its argument on the amount in controversy. But when Shady Grove pled that the class numbered "over" 1,000 persons, it contemplated (and still anticipates) a realistic reflection of Allstate's enormous market share -- something in the many tens of thousands, for example. Because Allstate insisted on distorting the complaint's plain meaning, Shady Grove amended its allegation on numerosity.

It should also be noted that in assessing numerosity, the Court "may draw reasonable inferences and make common sense assumptions." *Calabrese v. CSC Holdings, Inc.*, No. 02-

CV-5171, slip op. at *8 (E.D.N.Y. Feb. 19, 2009) (Ex. L).  Generally, "courts will find a class

sufficiently numerous when it comprises 40 or more members." *DeMarco v. Nat'l Collectors*

*Mint, Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y. 2005).  Assuming the truth of Shady Grove's allegations

of routine and widespread misconduct, there can be no doubt (given Allstate's market share) that

the complaint contemplates a very large class.

Finally, Allstate says that our pleading on numerosity is too spare.  But the phrasing

employed in the complaint -- that "[w]hile the exact number and identities of the proposed class

members is presently unknown, and can only be determined through investigation and discovery,

plaintiff is informed and believes that the proposed class includes over 50,000 members" -- is

hardly extraordinary.  Nor is it a reason to abandon a common sense estimate of the class's

potential size:

> The instant Complaint specifies the amount in controversy in only
> the most general terms, indicating that *the exact number of class*
> *members will be ascertained through discovery and review of*
> *defendants' records.*  Although plaintiffs avoid placing a value on
> the object of the litigation, plaintiffs do give some indication of the
> class action's breadth by stating that "there are thousands of Class
> Members, in that almost every no-fault claimant and medical
> provider who have had their claims denied . . . have had their rights
> aggrieved."

*AVA Acupuncture*, 592 F. Supp.2d 522, 528-29 (addressing language substantially identical to

that used in Shady Grove's complaint) (emphasis added).

**B. Commonality**

The test for commonality is a low threshold.  *Karvaly v. Ebay, Inc.*, 245 F.R.D. 71, 82

(E.D.N.Y. 2007).  This is true *on the merits*, though here we are merely dealing with the

pleadings.

Though the amended complaint makes several allegations on commonality, Allstate ignores all but one. It thus bears noting that the amended complaint alleges the following common issues of law and fact:

> a. Whether Allstate owes interest to the proposed class members under N.Y. Ins. Law §5106 and 11 NYCRR 65.15;
>
> b. Whether Allstate's conduct is in violation of N.Y. Gen. Bus. Law §349;
>
> c. Whether Allstate's conduct constitutes a knowing or willful violation of N.Y. Gen. Bus. Law §349;
>
> d. Whether the proposed class is entitled to compensatory damages, and if so, the amount of such damages;
>
> e. Whether the proposed class is entitled to punitive damages, and if so, the amount of such damages; and
>
> f. Whether the proposed class is entitled to recovery of its reasonable attorneys' fees under N.Y. Ins. Law §5106(a), 11 NYCRR 65.15(i)(1), N.Y. Gen. Bus. Law §349(h) or otherwise, and if so, the amount of such fees.

Amended Compl. ¶33. If these are not sufficient allegations of common questions of law and fact, then it is difficult to imagine what allegations could ever pass muster. *And see Bulmash*, 257 F.R.D. at 88 (finding commonality in an identical case).

### C. Typicality

Like commonality, typicality sets a low threshold. *Karvaly v. Ebay, Inc.*, 245 F.R.D. at 82. When a plaintiff alleges that the defendant committed the same wrongful act in the same manner as against both the plaintiff and the class, typicality is satisfied. *Id.*

The amended complaint alleges that Shady Grove has been subjected to what may be termed "thirty-day violations," and that it is owed interest as a result. It makes the same claim for each absent class member. *See, e.g.*, Amended Compl. ¶29 ("Allstate owes to Shady Grove,

21

and to all members of the proposed class, interest under N.Y. Ins. Law §5106 and [the applicable regulations].")   Moreover, Shady Grove proceeds under the same legal theories as the class. Typicality has been sufficiently pled. *And see Bulmash*, 257 F.R.D. at 88-89 (finding typicality in an identical case).[9]

### D. Adequacy

Allstate criticizes us for pleading that Shady Grove is subject to no conflict of interest and will fairly represent the class.  But what more specificity does Allstate seek?  Affidavits attesting to the personal character of Shady Grove's officers?  How exactly does Allstate propose that plaintiffs plead the absence of conflicts?

This is one of many examples in which Allstate's criticisms of the amended complaint are themselves threadbare and conclusory.  But the adequacy factor has been sufficiently pled; and as a practical matter, there should by now be no doubt that Shady Grove is committed to representing the class.

### E. Superiority

Here as elsewhere, Allstate suggests that by pleading the necessary elements of a particular claim -- in this case, that a class action would be a superior method of adjudication -- a plaintiff pleads nothing more.  But in fact, Shady Grove pled not just the brief excerpt cited in Allstate's brief, but also that:

> [T]he damages suffered by individual members of the proposed class may be relatively modest, so that the burden and expense of prosecuting individual actions would make it difficult or impossible for such members to obtain relief.  The prosecution of

---

[9] Allstate makes questionable use of ellipses in its discussion of typicality.  Allstate quotes the amended complaint as asserting in conclusory fashion that "[t]he proposed class representative's claims are typical of the members of the class . . . ."  Allstate brief at 23.  But the omitted matter alleges that Shady Grove is itself owed statutory interest -- which is precisely why its claims are typical.  Amended Compl. ¶34.

such individual actions would also impose a substantial burden on New York's civil justice system. At the same time, individualized litigation would entail a significant risk of varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and the courts, by requiring multiple trials for the same complex factual issues. By contrast, the class action mechanism presents fewer case-management problems; conserves the resources of the parties and the courts; and protects the rights of each member of the proposed class. The proposed class members thus have little interest in individually controlling the prosecution of separate actions; and to counsel's knowledge, there has been no substantial litigation of this dispute in any forum. It is not anticipated that the prosecution of this dispute as a class action will entail any special case-management difficulties; and notice of the pendency of this action, and of any resolution of the same, can be provided to the proposed class by publication and/or individual notice.

Amended Compl. ¶36. Again, if this does not meet Rule 8(a)'s requirement of a "short and plain statement of the claim," it is hard to imagine what does.

## V. ALLSTATE'S ATTACK ON CLASS CERTIFICATION IS PREMATURE

Allstate asks the Court to deny class certification prior to the conduct of discovery. This approach is contrary to law, and might well constitute reversible error. In *Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13 (2d Cir. 2003), for example, the Second Circuit found an abuse of discretion in the district court's denial of certification prior to discovery:

> In denying class certification under Rule 23(b)(3), the District Court focused on the superiority of class litigation , the technical nature of the claimed violations . . . and the impact of a potentially huge class. \*\*\*
>
> The difficulty we have with these conclusions is that they are based on assumptions of fact rather than on findings of fact. ***The District Court precluded any class discovery and even the filing of a motion for class certification.***

*Parker*, 331 F.3d at 21 (emphasis added).

23

The Advisory Committee, too, has endorsed the need for meaningful discovery to inform the Rule 23 analysis:

> Subdivision (c)(1)(A) is changed to require that the determination whether to certify a class be made "at an early practicable time." The "as soon as practicable" exaction neither reflects prevailing practice nor captures the many valid reasons that may justify deferring the initial certification decision.
>
> ***
>
> Time may be needed to gather information necessary to make the certification decision. Although an evaluation of the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial. In this sense it is appropriate to conduct controlled discovery into the "merits," limited to those aspects relevant to making the certification decision on an informed basis.

Fed. R. Civ. P. 23 advisory committee's note.

Allstate also asks the Court to deny outright the claim for class certification under Rule 23(b)(2). But the Second Circuit has held that issues raised under Rule 23(b)(2) (can only be decided after a full evidentiary hearing. *Robinson v. Metro-North Commuter RR Co.*, 267 F.3d 147, 163-64 (2d Cir. 2001), *cert. denied*, 535 U.S. 951 (2002). *Accord, Parker*, 331 F.3d at 20 (citing *Robinson*). Since an evidentiary hearing presupposes the securing of evidence, the Second Circuit plainly requires some measure of meaningful discovery prior to the disposition of Rule 23(b)(2) issues.

In short, a logical and orderly resolution of class certification issues requires meaningful discovery. Since that discovery has just begun, Allstate's motion should be denied.

24

As to Rule 23(b), Allstate wrongly equates the concept of "incidental" relief with relief that is of secondary importance.  Case law makes clear that the concept of "incidental" relief is, for purposes of the Rule 23(b)(3) analysis, a specialized and technical one:

> Consistent with this analysis, whether damages are "incidental" depends on: (1) whether such damages are of a kind to which class members would be automatically entitled; (2) whether such damages can be computed by "objective standards" and not standards reliant upon "the intangible, subjective differences of each class member's circumstances"; and (3) whether such damages would require additional hearings to determine.

*Barabin v. Aramark Corp.*, C.A. No. 02-8057, 2003 WL 355417, slip op. at *2 (3d Cir. Jan. 24, 2003) (Ex. M).

In other words, incidental relief is relief that flows automatically from a finding of liability.  *Parker*, 331 F.3d at 17.  There can be no better example of such relief than the statutory interest at issue, liability for which arises automatically (for covered claims, that is) on violation of the thirty-day standard.  The Court should thus reject Allstate's premature attack on Rule 23(b) certification.

## VI.  THE CLASS IS READILY IDENTIFIABLE BY OBJECTIVE MEASURES

Allstate argues that the contemplated class constitutes a "fail-safe" class.  The basis for Allstate's argument is that the class is defined as persons who are owed statutory interest.  But Allstate confuses the "fail-safe" doctrine, and its analysis (if accepted) would essentially be the end of consumer class actions.

Every class plaintiff alleges that the defendant is liable to the class; and if that obligation constitutes a "fail-safe," there can be no class actions.  But in fact, the fail-safe inquiry turns on whether the class's identity "can be ascertained by reference to objective criteria."  MANUAL

25

FOR COMPLEX LITIGATION §21.222 (4th ed. 2004). *Accord, Mike v. Safeco Ins. Co. of America*, 223 F.R.D. 50, 53 (D. Conn. 2004) (same).

That is not an issue here. As the district court found in *Bulmash*, thirty-day violations are readily identifiable from the insurers' claim records. *See Bulmash*, 257 F.R.D. at 87-88 (noting that random sample of 179 claim files yielded fifty-one class members). And not incidentally, the class definition in our amended complaint is identical to the class definition that resulted in Rule 23 certification in *Bulmash*. *See* Ex. N at ¶21 (*Bulmash* complaint).

If our class definition translated automatically to an adjudication of coverage for every involved PIP claim, that would be a fail-safe. But as noted above, an insurer cannot contest coverage once the thirty-day period expires, *see Presbyterian Hosp. v. Maryland Cas. Co.*, 90 N.Y.2d 274, 282 (N.Y. 1997) (thirty-day violation precluded assertion of "statutory exclusion defense"); and certainly the insurer cannot "undo" coverage years after the claim has been paid. Thus, the class claims here -- which target claims that have ***already been covered*** without dispute -- do not entail any automatic finding of liability.

Title insurance class actions are instructive. In *Alberton v. Commonwealth Land Title Ins. Co.*, 264 F.R.D. 203 (E.D. Pa. 2010), the class was defined to include persons who refinanced their mortgages, were thereby entitled to a statutory discount on their title insurance premium, but were not given the discount by the insurer. Thus defined, the class necessarily consisted of those who were owed the discount -- much as the class here would consist of those who are owed statutory interest. *Alberton*, 264 F.R.D. at 204 -06. But this feature did not render the *Alberton* class definition invalid: "[I]n order to be deemed a putative class member, it is only necessary to ascertain whether a person refinanced within the relative time period and whether he/she actually received a discounted rate." *Id.* at 207.

26

The same analysis applies here.  In order to identify the class, it is only necessary to determine whether a claimant's covered (that is, already-paid) PIP claim was paid within or without the thirty-day deadline; and if the latter, whether he or she was paid the required interest. *See also Lewis v. First American Title Ins. Co.*, 265 F.R.D. 536, 554 (D. Idaho 2010) (applying identical analysis in another title insurance case, court finds that "[t]he class members can be discovered through objective criteria.")

Again, Allstate's approach would effectively be the end of class actions.  Whether the case is a shareholder's derivative suit, a consumer class action or some other case appropriate for representative treatment, the class will always consist of persons to whom the defendant is allegedly liable.  That (universal) feature does not a fail-safe make.

Finally, the Court has broad discretion to revise the class definition to avoid any fail-safe concerns.  *Lewis*, 265 F.R.D. at 557; *Flanagan v. Allstate Ins. Co.,* 225 F.R.D. 569, 573 (N.D. Ill. 2004).  Though (as shown by *Bulmash*) there is no need to revise the class definition here, the instant class might just as well be defined in terms of persons *who were not paid interest*, as opposed to persons who are owed interest.  In either event, Allstate's motion should be denied.

## CONCLUSION

For the reasons set forth above, plaintiff Shady Grove Orthopedic Associates respectfully requests that Allstate's motion be denied in its entirety.

Respectfully submitted,

John S. Spadaro, No. JS3769
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302) 235-7745

Attorney for plaintiff Shady Grove Orthopedic
Associates, P.A. (on behalf of itself and all others
similarly situated)

September 17, 2010

28