# John Sheehan Spadaro, LLC

ATTORNEY AT LAW

724 YORKLYN ROAD, SUITE 375

HOCKESSIN, DELAWARE 19707

TELEPHONE: 302.235.7745

FACSIMILE: 302.235.2536

JSPADARO@JOHNSHEEHANSPADARO.COM

February 25, 2011

**BY ELECTRONIC FILING**
Magistrate Judge James Orenstein
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Room 1227 South
Brooklyn, New York 11201

      Re:  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*
            **C.A. No. 06-CV-1842NG-JO**

Dear Magistrate Judge Orenstein:

     I write on behalf of the plaintiff Shady Grove Orthopedic Associates in the hope of compelling Allstate's production of documents responsive to our initial document requests.

     1. *Procedural history.* Following the Supreme Court's March 2010 decision Allstate moved for a stay of discovery pending a decision on its mootness argument. On June 28, 2010 the Magistrate Judge denied Allstate's motion. *See* Memorandum and Order (Document 42).

     Four days later Shady Grove served Allstate with a set of four document requests. Ex. A. The central request, as carefully delimited by the requests' instructions, sought production of "a meaningful sample, free of manipulation or bias, of evidence of 1) Allstate's compliance or noncompliance with the thirty-day payment standard under N.Y. Ins. Law § 5106, and 2) the extent to which Allstate may owe statutory interest to prospective class members for the sample in question." *Id.* at 2. This request thus contemplated Allstate's production of a suitable random sampling of documents from the relevant Personal Injury Protection (or "PIP") claim files.

     Allstate served written responses in August 2010 (Ex. B), and the parties conferred by phone on September 24, 2010. Ex. C. Shady Grove asked Allstate to explain the way in which it numbers PIP files, and to identify the file components that comprise an Allstate PIP file. *Id.* We also proposed beginning and end dates for Allstate's production.[1]

---

[1] Under Shady Grove's theory of the case a six-year statute of limitations applies, so that the relevant class period would begin in April 2000. Under Allstate's theory the limitations period would be three years, so that the class period would have an April 2003 start date. Shady Grove ultimately agreed to use Allstate's start date for now, subject to a supplementation of its production in the event the Court adopts the six-year statute.

4121

Since Allstate seeks a blanket confidentiality order, we provided it with a model form of order on September 29, 2010. We also expressed our willingness to use the form confidentiality order that was entered in an identical class action, *Bulmash v. Travelers*. Ex. C, n.1.[2] In addition, we agreed to treat all documents as confidential on an interim basis, so that negotiations on the confidentiality order would not delay discovery. Ex. D. Allstate rejected our proposed models for the confidentiality order, and instead provided us with a competing version. We responded the same day, proposing just minor revisions to Allstate's model. Ex. E. Allstate next advised that its proposed draft had not received final approval, and had been shared with us in error. We thus asked Allstate to provide us with its actual proposed confidentiality order. Ex. F. Roughly four months have passed, and we have yet to receive Allstate's proposal.

The parties conferred by phone again on October 12, 2010. Allstate's counsel indicated that he had been unable to reach his client contact, and so could not address any issues of substance. Ex. G. He mentioned, however, that Allstate possesses a software product designed to identify random document samples. We asked Allstate to educate us on how the software works, and how it might be used in this case. *Id.* Again, four months have passed with no further information from Allstate.

On November 3, 2010 Allstate identified the basic components that make up its New York PIP files -- or, more precisely, the components most relevant to the thirty-day payment inquiry. Ex. H. These include health insurance claim forms, state-issued "no-fault" forms, "Explanation of Benefits" forms ("EOBs") and other documents. Allstate also confirmed its ability to isolate New York claim files by word search. Ex. I. The centerpiece of Allstate's proposal was to limit the production initially to EOBs, and then supplement the production with relevant back-up data for any EOBs that appeared on their face to implicate a "thirty-day" violation. *Id.*

Shady Grove responded on November 18, 2010, setting forth a detailed counterproposal. Ex. J. *See also* Ex. K. We explained that Allstate's staged, "EOB-only" production was unworkable for several reasons. ***First,*** one of Shady Grove's central allegations is that as a means of circumventing the statutory thirty-day payment requirement, Allstate engages in a practice of denying its receipt of PIP claims that it has actually received -- not incidentally, the same allegation Allstate faced in *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288 (S.D.N.Y. 1996). The production of EOBs, without more, is unlikely to shed any light on this allegation. Rather (and assuming the truth of this allegation) the EOBs would simply record the "doctored" receipt date.[3] ***Second,*** Allstate's "EOB-only" approach would entail substantial delay. With the case in its fifth year of litigation, we think Allstate should make the full disclosures necessary to inform the class certification inquiry, rather than engage in a piecemeal production. ***Third,*** our experience in similar cases teaches that other file components are critical to the inquiry. For example, we have often seen

---

[2] *See Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84, 91 (D. Md. 2009) (addressing efforts to recover "payment of statutory interest on Personal Injury Protection claims that were paid late by Travelers," district court finds the claims "perfectly suited for a class action.")

[3] This part of Shady Grove's theory of the case was explained in more detail in Shady Grove's response to Allstate's Interrogatory No. 5, excerpted here as Exhibit L.

Magistrate Judge James Orenstein
February 25, 2011
Page 3

EOBs that record a "receipt date" later than the date stamped on the health insurance claim form itself. Often we have seen correspondence from the claimant's counsel that complains of delays not reflected by the EOBs.

2. ***Request for relief.*** For the reasons explained above, we believe the file sampling should include "no-fault" forms, payment-related correspondence, medical bills, and health insurance claim forms in addition to the EOBs. We propose that these components be produced from the 100 "earliest" files for each twelve-month period beginning with April 20, 2003-04 and continuing through the present.[4] We further request that that the production be made on a rolling basis, with Allstate producing roughly ten files at a time as they become ready for production.

Such a sampling would impose far less burden than other courts have imposed in identical cases. In *Bulmash*, for example, the insurer produced a random sampling of 179 PIP files from a potential universe of less than 2,000 files. *Bulmash*, 257 F.R.D. at 87-88. In another identical class action, the court ordered the production of 2,239 PIP files out of a total of roughly 28,000.[5] Here, by contrast, Allstate estimates a total pool of 35,000 PIP files *per year*. And in any event, Allstate has offered no particularized showing that the sampling sought by Shady Grove would pose any undue burden in the context of this substantial case. *See Thompson v. U.S. Dept. of Housing and Urban Development*, 219 F.R.D. 93, 98 (D. Md. 2003) (collecting cases for the proposition that "a party that objects to discovery requests on the grounds of burden or expense has an affirmative duty to particularize the basis of the objections," and that "failing to do so waives the objection.")

Finally, we note that Allstate has stated its intention to produce other responsive documents (including claims manuals) once a confidentiality order is in place. Ex. B. But as shown above, Allstate's torpidity has delayed the entry of a confidentiality order for nearly six months. We therefore respectfully request that documents responsive to all four of Shady Grove's requests be produced immediately.

Respectfully,

John S. Spadaro

cc: Andrew T. Hahn, Esq. (by electronic filing)

---

[4] By "earliest" we mean the first 100 New York PIP files for each twelve-month period, determined by the date of accident, the date on which the file was opened, or the date on which the triggered auto policy incepted. We leave it to Allstate to determine which of these measures is most workable. We also respectfully reserve the right to broaden the targeted time frame should the Court reject Allstate's position on the applicable limitations period.

[5] *Compare Crowhorn v. Nationwide Mut. Ins. Co.*, C.A. No. 00C-06-010WLW, slip op. at 1-2 (Del. Super. Ct. May 16, 2002) (ordering production of file sampling consisting of 2,239 files) (Ex. M) *with Crowhorn v. Nationwide Mut. Ins. Co.*, 836 A.2d 558, 561 (Del. Super. Ct. 2003) (certifying class of approximately 28,000 claimants).