# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHADY GROVE ORTHOPEDIC ASSOCIATES, P.A, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, <br><br> Defendant. | C.A. No.: 06-CV-1842NG-JO <br><br> **COPY** |

## PLAINTIFF SHADY GROVE ORTHOPEDIC ASSOCIATES' RESPONSES TO ALLSTATE'S FIRST SET OF INTERROGAORIES

Plaintiff Shady Grove Orthopedic Associates responds to defendant Allstate Insurance Company's interrogatories as follows:

### Preliminary Objections

1. Shady Grove objects to the interrogatories to the extent they seek information not relevant to the claims or defenses in this case.

2. Shady Grove objects to the interrogatories to the extent they may be vague, ambiguous, overly broad, or unduly burdensome in their application.

3. Shady Grove objects to the interrogatories to the extent they are not reasonably limited in their temporal scope, on the grounds that such interrogatories are overly broad, unduly burdensome, and seek information not relevant to the claims or defenses in this case.

4. Shady Grove objects to the interrogatories to the extent they seek information subject to attorney-client privilege or attorney work product protection.

5. Shady Grove objects to the interrogatories, including any definitions or instructions

claims (on the one hand), and failing to pay the resulting statutory interest (on the other). Shady Grove further states that in the experience of its counsel in this and other cases, Allstate, Nationwide, State Farm, GEICO and substantially all auto insurers who are subject to a thirty-day payment requirement in the various states (e.g., New York, Florida, Delaware, Maryland) that impose such a requirement on the handling of PIP claims regularly fail to pay such interest where it is owed. In addition, reported and unreported decisions from the New York courts reveal multiple instances of Allstate's failing to pay the required statutory interest on overdue PIP claims.

     5. Set forth the factual basis for your contention that "[o]n those occasions when Allstate fails to pay covered claims for first-party no-fault benefits within the thirty-day period under N.Y. Ins. Law §5106(a), Allstate routinely and falsely claims to have never received the insured's proof of loss in the first instance, all as a means of avoiding the consequences of its violation of the thirty-day standard" as alleged in paragraph 20 of the Complaint.

**ANSWER:** Shady Grove objects to this interrogatory on the grounds that it is premature, at this early stage of discovery, to require it to state fully the factual basis for its contentions. Subject to and without waiving this objection, Shady Grove relies on the experience of its counsel in this and other cases, which tends to show that on those occasions when Allstate fails to timely pay covered claims for PIP benefits, Allstate routinely and falsely claims to have never received the insured's proof of loss in the first instance.

Shady Grove further notes that evidence of this phenomenon exists in connection with Sonia Galvez's PIP-payment history; such evidence was set forth and elaborated upon in detail within Shady Grove's August 18, 2006 answering brief, which we quote as follows. (Note that exhibit references are to exhibits attached to the August 18, 2006 answering brief.)

***

### *Allstate's Handling of Ms. Galvez's No-Fault Claims*

*The complaint alleges three wrongful practices: that Allstate routinely violates the statutory thirty-day standard; that it routinely ignores its obligation to pay statutory interest for overdue benefits; and that as a means of avoiding the statutory interest penalty, it routinely (and falsely) claims to have never received the insured's proof of loss in the first instance. Compl. ¶¶17-20 (Ex. L). Each of these practices is reflected in Allstate's handling of Ms. Galvez's claims.*

#### *i. The June 15, 2005 Medical Services*

*Ms. Galvez is the named insured under Allstate "New York Private Passenger Auto Insurance Policy" no. 0 73 885752 02/22, effective February 22, 2005 and still in effect at the time of her auto collision. On May 30, 2005, she was injured while driving her 2005 Toyota Corolla, the vehicle insured under her Allstate policy. Compl. ¶21.*

*On June 15, 2005 Ms. Galvez received medical care for her injuries from Dr. Mark Peterson of Shady Grove. Those services are described within Shady Grove's "Visit Summary" as an office visit and radiologic exam. The Visit Summary records that $168 was charged for the office visit, and $99 was charged for the exam. Ex. M.*[1]

*The Visit Summary also records a July 5, 2005 entry reading "6/15/05 TO ALLSTATE. BN"; meaning that on July 5, 2005, the June 15, 2005 bills were mailed to Allstate by Shady Grove representative Bonita Nolan. Id. Allstate ignored those bills; and more than three months passed with no response from Allstate of any kind. Accordingly, on October 18, 2005, Shady Grove submitted the June 15, 2005 bills to Allstate a second time. This second submission*

---

[1] As is evident from its format, the Visit Summary is Shady Grove's internal chronological record of care, treatment and billing history.

5

*of the bills is reflected by the Visit Summary's October 18, 2005 entry, reading "6/15/05 REFILED TO ALLSTATE. BN." Id.*

*Allstate finally responded (to the **second** billing) with a denial dated November 23, 2005. Ex. N. Allstate based its denial on the supposed untimeliness of the claim, asserting that it had not been received within forty-five days of the June 15, 2005 date of service. Id. In order to maintain this position, Allstate recorded on the denial a "Bill Received Date" of October 31, 2005 -- thereby treating the bills' first submission as though it had never occurred. Id.*

*Just days later, however, Allstate would reveal (inadvertently, it seems) the full extent of its misconduct. On December 1, 2005, and apparently through its own administrative error, Allstate issued a **second** denial for the October 18, 2005 re-billing. Though Allstate's original (November 23, 2005) denial recorded the receipt date for that re-billing as October 31, 2005, its second (redundant) denial **altered** the "Bill Received Date" to read **November 7, 2005**. Ex. O. And why? Because the October 31, 2005 receipt date (which Allstate had already recorded) would have rendered a December 1, 2005 response untimely under the no-fault statute; and as we have seen, such a thirty-day violation would have precluded Allstate from contesting coverage based on its "untimeliness" theme.*

***

6. Set forth the factual basis for your contention that Allstate made "false claims for the purposes of avoiding the consequences of its violation of the thirty-day standard under N.Y. Ins. Law §5106(a) and 11 NYCRR 65.15(h)(1)," as alleged in paragraph 27 of the Complaint.

**ANSWER:** Shady Grove incorporates by reference its objection and response to Interrogatory No. 5 above.

7. Set forth the factual basis for your contention that "the proposed class includes over 50,000 members," as alleged in paragraph 32 of the Complaint.

Respectfully submitted,



John S. Spadaro, No. JS3769
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302) 235-7745

Attorney for plaintiff Shady Grove Orthopedic Associates, P.A. (on behalf of itself and all others similarly situated)

September 3, 2010

11