IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

SHADY GROVE ORTHOPEDIC )
ASSOCIATES, P.A, )
on behalf of itself and all others )
similarly situated, )
)
)                    C.A. No.:  06-CV-1842NG-JO
                  Plaintiff, )
)
v. )
)
ALLSTATE INSURANCE COMPANY, )
)
                  Defendant. )
)


**PLAINTIFF SHADY GROVE ORTHOPEDIC ASSOCIATES'
OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR CLASS CERTIFICATION**


JOHN SHEEHAN SPADARO, LLC

John S. Spadaro, No. JS3769
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302)235-7745

Attorney for plaintiff Shady Grove Orthopedic
Associates (on behalf of itself and all others
similarly situated)


April 16, 2012


4836

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................................1

STATEMENT OF FACTS ...............................................................................................3

   A.  The 30-Day Standard and Interest Penalty ..............................................3

   B.  The Preclusion Standard ......................................................................5

   C.  Allstate's Handling of Ms. Galvez's No-Fault Claims .................................6

       i.    The June 15, 2005 Medical Services ...........................................6
       ii.   The June 29, 2005 Medical Services ...........................................8

   D.  Results of File Sampling and Other Class Certification Discovery ..................9

       i.    Market Share and PIP Claims Data .............................................9
       ii.   File Sampling data ...............................................................10

ARGUMENT ............................................................................................................14

   I.    THE SO-CALLED "$5 RULE" DOES NOT APPLY .................................14

      A.  There Is No Dispute That a Demand Has Been Made
          on Behalf of Prospective Class Members ..........................................14
      B.  The $5 Rule Contradicts Section 5106 ...............................................16

   II.   THE LEGAL FRAMEWORK......................................................................17

   III.  THE NUMEROSITY STANDARD IS MET ..............................................18

   IV.  THE COMMONALITY STANDARD IS MET ............................................19

   V.   THE TYPICALITY STANDARD IS MET ..................................................20

   VI.  THE ADEQUACY STANDARD IS MET ....................................................20

   VII. THE PREDOMINANCE STANDARD IS MET ..........................................21

   VIII. THE SUPERIORITY STANDARD IS MET ..............................................22

CONCLUSION .........................................................................................................24

## TABLE OF AUTHORITIES

**Case**                                                                    **Page**

*All Health Med. Care, P.C. v. Government Employees Ins. Co.*, 771 N.Y.S.2d 832
(N.Y. Civ. Ct. 2004) ........................................................................................5

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591(1997) .........................................18, 21

*Becher v. Long Island Lighting Co.*, 173 F.R.D. 28 (E.D.N.Y. 1997) ...........................17

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)..........................................................17, 21

*Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84 (D. Md. 2009)............................*passim*

*Chiropractic Neurodiagnostics, P.C. v. Travelers Indem. Co.*, 812 N.Y.S.2d 300
(N.Y. Civ. Ct. 2006) ........................................................................................5

*Coleman v. Cannon Oil Company*, 141 F.R.D. 516 (M.D. Ala. 1992) .........................18

*Colonial Penn Ins. Co. v. Magnetic Imaging Sys., Ltd.*, 694 So.2d 852 (Fla. Ct. App. 1997)..1, 19

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ...............18

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91(2d Cir. 2007)...........21

*Crowhorn v. Nationwide Mut. Ins. Co.*, 836 A.2d 558 (Del. Super. Ct. 2003) .................1, 20-21

*Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992)..............................20

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................17

*GHS Health Maintenance Organization, Inc. v. United States*, 536 F.3d 1293
(Fed. Cir. 2008)..............................................................................................12, 16

*Ginsburg v. Twayne Publishers, Inc.*, 600 F. Supp. 247 (S.D.N.Y. 1984)...................15

*Gortat v. Capala Bros.*, 257 F.R.D. 353 (E.D.N.Y. 2009) ........................................17

*Griffin v. Oceanic Contractors, Inc.*, 484 U.S. 564 (1982) .......................................14

*Gunnells v. Healthplan Serv., Inc.*, 348 F.3d 417 (4th Cir. 2003)...............................23

*Haynes v. Planet Automall*, 276 F.R.D. 65, 73 (E.D.N.Y. 2011) ................................19

*Kapps v. Wing*, 283 F. Supp.2d 866 (E.D.N.Y. 2003)................................................19

*King's Medical Supply Inc. v. Country-Wide Ins. Co.*, 783 N.Y.S.2d 448 (N.Y. Civ. Ct. 2004)....4

*Liberty Queens Medical, P.C. v. Liberty Mut. Ins. Co.*, No. 2001-915QC,
2002 WL 31108069 (N.Y. Sup. Ct. June 27, 2002) .......................................................5

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ...............................................19, 20

*Montefiore Medical Ctr. v. New York Central Mut. Fire Ins. Co.*, 780 N.Y.S.2d 161
(N.Y. App. Div. 2004) ..........................................................................................5

*Mt. Sinai Hosp. v. Triboro Coach, Inc.*, 699 N.Y.S.2d 77 (N.Y. App. Div. 1999) ...............5

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996).................23

*Ostrer v. Schenck*, 41 N.Y.2d 782 (N.Y. 1977) .......................................................12

*Presbyterian Hosp. v. Maryland Cas. Co.*, 90 N.Y.2d 274 (N.Y. 1997).............................5

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (1997) .................................12, 16

*Ramos v. SimplexGrinnell LP*, 796 F Supp.2d 346 (E.D.N.Y. 2011)..........................18-19

*Reilly v. NatWest Markets Group Inc.*, 181 F.3d 253 (2d Cir. 1999),
*cert. denied*, 528 U.S. 1119 (2000)..........................................................................15

*Rombom v. Interboro Mut. Indem. Ins. Co.*, 721 N.Y.S.2d 474 (N.Y. App. Div. 2000)..........5

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010).......................1

*In re Vitamin C Antitrust Litig.*, 2012 WL 251909, __ F.R.D. __,
(E.D.N.Y. 2012)..........................................................................................17, 18

*Walker v. Edison Chouest Offshore, L.L.C.*, No. 04 Civ. 2954(MBM),
2006 WL 2212464 (S.D.N.Y. Aug. 3, 2006)...........................................................14, 15

*Womack v. State Farm Mut. Auto. Ins. Co.*, C.A. No. 06C-04-013RFS
(Del. Super. Ct. Aug. 21, 2008 ...............................................................................20

## Other Authorities

Federal Rule of Civil Procedure 23 ................................................................*passim*

N.Y. Veh. & Traf. Law §319 ...........................................................................3

N.Y. Ins. Law §5102.....................................................................................3, 4

N.Y. Ins. Law §5103.....................................................................................3, 4

N.Y. Ins. Law §5106 ................................................................................*passim*

11 NYCRR 65-3. .....................................................................................*passim*

4 HERBERT B. NEWBERG AND ALBA CONTE, NEWBERG ON CLASS ACTIONS
(3d ed. 1982)...............................................................................................18

5 MOORE'S FEDERAL PRACTICE (1997) ...........................................................23

Black's Law Dictionary (9th ed. 2009) .........................................................15

Black's Law Dictionary (8th ed. 2004) .........................................................14

Webster's Third New International Dictionary (1986) ...................................14

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Shady Grove Orthopedic Associates seeks a class-wide recovery of statutory interest for overdue Personal Injury Protection benefits under N.Y. Ins. Law §5106(a).[1]  It proceeds as assignee of its former patient, Sonia Galvez, against Ms. Galvez's auto insurer, Allstate Insurance Company.

Following the Supreme Court's March 2010 ruling, *see Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010), the parties completed discovery on class certification issues.  The results are undisputed: from an agreed random sample of 300 PIP files, Allstate admitted at least one 30-day violation, unaccompanied by any payment of statutory interest, for 73 separate claim files -- a 24.3% "hit rate."  If projected over the total number of PIP files for the targeted class period, this would mean that a class of roughly 83,000 New York care providers is currently owed statutory interest by Allstate.

As another district court recently observed in an identical case, such claims are "perfectly suited for a class action." *Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84, 91 (D. Md. 2009). *See also Colonial Penn Ins. Co. v. Magnetic Imaging Sys., Ltd.*, 694 So.2d 852, 853 (Fla. Ct. App. 1997) (granting contested class certification motion in an identical case under Florida's analog to Rule 23); *Crowhorn v. Nationwide Mut. Ins. Co.*, 836 A.2d 558, 561-64 (Del. Super. Ct. 2003) (approving class settlement in an identical case under Delaware's Superior Court Civil Rule 23).  This Court has likewise recognized that the case is driven, not by individualized issues, but by "mechanical" calculations that are universal throughout the class -- calculations that require little more than a calendar and a calculator.  *See* Jan. 24, 2012 hearing transcript at

---

[1] We refer to these insurance benefits throughout as "PIP" or "no-fault" benefits.  Because section 5106(a) requires payment of covered PIP claims within 30 days of the insurer's receipt of proof of loss, we refer to instances of overdue payment as "30-day violations."

31 (deying motion to strike class allegations) (Ex. A). *And cf. Bulmash*, 257 F.R.D. at 91 (determining whether a class member's PIP payment was overdue, and whether statutory interest was paid, is "a matter of simple arithmetic.")

For these reasons, and for the reasons that follow, this Court should grant class certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) for the following proposed class:

> All health care providers who, since April 20, 2003, submitted claims for first-party no-fault benefits under New York auto policies issued by Allstate Insurance Company, where (i) those claims were never disputed by Allstate within 30 days of their receipt by the company, and (ii) Allstate made no payment of statutory interest against the claim.

## STATEMENT OF FACTS

### A. The 30-Day Standard and Interest Penalty

Under N.Y. Veh. & Traf. Law §319(1) (part of New York's Motor Vehicle Financial

Security Act), persons who own any motor vehicle registered in New York or operate or permit

to be operated a motor vehicle in New York must maintain specified forms of liability insurance.

N.Y. Ins. Law §5103(a) provides that liability insurance issued in satisfaction of section 319's

requirements must also provide for the payment of first-party benefits to specified categories of

persons, and for loss arising out of the use or operation of the insured vehicle.  These first-party

benefits (sometimes referred to as "no-fault," "Personal Injury Protection" or "PIP" benefits)

include, by virtue of the definitions set forth in N.Y. Ins. Law §5102, payments to reimburse

persons for medical and other expenses up to $50,000 per person.

Under N.Y. Ins. Law §5106(a), payment of first-party no-fault benefits pursuant to

section 5103 must be made as the loss is incurred.  Section 5106(a) further provides that such

benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and

amount of the loss.  It also provides that overdue benefits will bear interest at the rate

of 2% per month.[2]

Regulations promulgated by New York's (former) Insurance Department likewise govern

the processing of claims for first-party no-fault benefits.[3]  Under 11 NYCRR 65-3.5(a), an

insurer may request verification of the claim for no-fault benefits within ten business days of its

receipt of the claimant's application for such benefits.  Verification must be requested (if at all)

through the use of prescribed forms as specified by 11 NYCRR 65-3.4(c), including New York

---

[2] Under 11 NYCRR 65-3.9(a), interest owed pursuant to N.Y. Ins. Law §5106(a) is compounded and calculated on a *pro rata* basis using a thirty-day month.

[3] In October 2011 New York's Insurance Department and Banking Department merged into a single state agency, the New York Department of Financial Services.  *See http://assembly.state. ny.us/comm/Ins/20111115/* (last visited April 14, 2012).

State Form NF-3 (Verification of Treatment by Attending Physician or Other Provider of Health Services) and New York State Form NF-4 (Verification of Hospital Treatment).  If an insurer makes a timely request for verification under 11 NYCRR 65-3.5(a), the time within which the insurer must pay the claim for no-fault benefits is tolled pending the insurer's receipt of the requested verification.  *King's Medical Supply Inc. v. Country-Wide Ins. Co.*, 783 N.Y.S.2d 448, 450 (N.Y. Civ. Ct. 2004).  If the requested verification is not supplied to the insurer within thirty days of the original request, then 11 NYCRR 65-3.6(b) requires the insurer to communicate a follow-up request for verification within ten days thereafter.  The regulations further provide, under 11 NYCRR 65-3.5(b), that an insurer may request additional verification within fifteen business days of its receipt of one or more completed verification forms.

Under 11 NYCRR 65-3.8(a)(1), no-fault benefits are overdue if not paid within thirty days after the insurer receives verification of all relevant information requested pursuant to 11 NYCRR 65-3.5 (in cases where such a request is made).  As noted above, overdue benefits are subject to the interest penalty specified in section 5106(a) and 11 NYCRR 65-3.9(a).

The effect of this regulatory scheme (established under N.Y. Ins. Law §§5102, 5103 and 5106, in combination with the provisions of 11 NYCRR 65-3) is to require insurers to pay covered no-fault benefits within thirty days of the claimant's submission of proof of the fact and amount of loss, or (in cases where the insurer makes any timely request for verification) within thirty days of the insurer's receipt of all requested verification.  The same regulatory scheme makes no-fault insurers liable for payment of an interest penalty on overdue benefits, calculated at the rate of 2% per month.

## B. <u>The Preclusion Standard</u>

New York's common law adds an important adjunct to the regulatory scheme.  Abundant authority holds that an insurer's failure to pay or deny a no-fault claim within the required thirty days precludes it from contesting the claim.  *See Presbyterian Hosp. v. Maryland Cas. Co.*, 90 N.Y.2d 274, 282 (N.Y. 1997) (thirty-day violation precluded assertion of "statutory exclusion defense"); *Montefiore Medical Ctr. v. New York Central Mut. Fire Ins. Co.*, 780 N.Y.S.2d 161, 162 (N.Y. App. Div. 2004) ("In the event an insurer fails to timely deny a [no-fault] claim . . . the insurer is precluded from asserting that the claim was untimely or incomplete"); *Mt. Sinai Hosp. v. Triboro Coach, Inc.*, 699 N.Y.S.2d 77, 81 (N.Y. App. Div. 1999) (same); *Chiropractic Neurodiagnostics, P.C. v. Travelers Indem. Co.*, 812 N.Y.S.2d 300, 300 (N.Y. Civ. Ct. 2006) (thirty-day violation precludes all claims of "noncoverage"); *All Health Med. Care, P.C. v. Government Employees Ins. Co.*, 771 N.Y.S.2d 832, 834 (N.Y. Civ. Ct. 2004) ("Failure to pay or deny a claim will result in preclusion of defendant's affirmative defenses at trial.")

Significantly, this preclusion standard applies to the defense of "lack of medical necessity" -- meaning that the proposed class here, consisting only of those whose claims were subject to the thirty-day violation, cannot possibly implicate that (individualized) defense.  *See Rombom v. Interboro Mut. Indem. Ins. Co.*, 721 N.Y.S.2d 474, 474-75 (N.Y. App. Div. 2000) ("Defendant's failure to deny plaintiff's claim for no-fault benefits within 30 days of receipt of proof of claim and amount of loss sustained precludes defendant from asserting the affirmative defense of denial of benefits on the ground that the tests administered were 'not medically reasonable and/or necessary'"); *Liberty Queens Medical, P.C. v. Liberty Mut. Ins. Co.*, No. 2001-915QC, 2002 WL 31108069, slip op. at *1 (N.Y. Sup. Ct. June 27, 2002) ("Lack of medical necessity is a defense to an action for recovery of no-fault benefits , and may be asserted by the

5

insurer *provided* that there has been a timely denial of the claim") (emphasis added) (Ex. B).

Because the class is limited to those who were subjected to the thirty-day violation, none of the

class's claims are susceptible to coverage defenses, including defenses based on lack of medical

necessity, excessive doctor's bills or the like.

Allstate, for its part, concedes the point.  In an earlier brief, Allstate acknowledged that

"as pointed out by Plaintiff's counsel, coverage cannot be contested once the thirty-day period

expires."  Docket No. 54 at 22.

### C. Allstate's Handling of Ms. Galvez's No-Fault Claims

The amended complaint alleges three wrongful practices: that Allstate routinely violates

the statutory thirty-day standard; that it routinely ignores its obligation to pay statutory interest

for overdue benefits; and that as a means of avoiding the statutory interest penalty, it routinely

(and falsely) claims to have never received the insured's proof of loss in the first instance.

Amended Compl. ¶¶17-20 (Docket No. 33).  Each of these practices is reflected in Allstate's

handling of Ms. Galvez's claims.

### i. The June 15, 2005 Medical Services

Ms. Galvez is the named insured under Allstate "New York Private Passenger Auto

Insurance Policy" no. 0 73 885752 02/22, effective February 22, 2005 and still in effect at the

time of her auto collision.  On May 30, 2005, she was injured while driving her 2005 Toyota

Corolla, the vehicle insured under her Allstate policy.  Amended Compl. ¶21.

On June 15, 2005 Ms. Galvez received medical care for her injuries from Dr. Mark

Peterson of Shady Grove.  Those services are described within Shady Grove's "Visit Summary"

as an office visit and radiologic exam.  The Visit Summary records that $168 was charged for the office visit, and $99 was charged for the exam.  Ex. C.[4]

The Visit Summary also records a July 5, 2005 entry reading "6/15/05 TO ALLSTATE. BN"; meaning that on July 5, 2005, the June 15, 2005 bills were mailed to Allstate by Shady Grove representative Bonita Nolan.  *Id.*[5]  Allstate ignored those bills; and more than three months passed with no response from Allstate of any kind.  Accordingly, on October 18, 2005, Shady Grove submitted the June 15, 2005 bills to Allstate a second time.  This second submission of the bills is reflected by the Visit Summary's October 18, 2005 entry, reading "6/15/05 REFILED TO ALLSTATE. BN."  *Id.*

Allstate finally responded (to the *second* billing) with a denial dated November 23, 2005.  Ex. E.  Allstate based its denial on the supposed untimeliness of the claim, asserting that it had not been received within forty-five days of the June 15, 2005 date of service.  *Id.*  In order to maintain this position, Allstate recorded on the denial a "Bill Received Date" of October 31, 2005 -- thereby treating the bills' first submission as though it had never occurred.  *Id.*[6]

Just days later, however, Allstate would reveal (inadvertently, it seems) the full extent of its misconduct.  On December 1, 2005, and apparently through its own administrative error, Allstate issued a *second* denial for the October 18, 2005 re-billing.  Though Allstate's original (November 23, 2005) denial recorded the receipt date for that re-billing as October 31, 2005, its

---

[4] As is evident from its format, the Visit Summary is Shady Grove's internal chronological record of care, treatment and billing history.

[5] At Allstate's Rule 30(b)(6) deposition of Shady Grove, Shady Grove's designee reviewed the chronology of Ms. Galvez's claim as set forth here, and confirmed its accuracy.  Transcript of Jan. 11, 2012 deposition of B. Nolan ("Nolan") at 222-23 (Ex. D).

[6] Testifying on Shady Grove's behalf, Ms. Nolan disputed Allstate's account of the dates on which bills were received by the insurer.  Nolan at 222 (Ex. D).

second (redundant) denial *altered* the "Bill Received Date" to read ***November 7, 2005***. Ex. F.
And why?  Because the October 31, 2005 receipt date (which Allstate had already recorded)
would have rendered a December 1, 2005 response untimely under the no-fault statute; and as we
have seen, such a thirty-day violation would have precluded Allstate from contesting coverage
based on its "untimeliness" theme.

On the face of the documents, then, and on the sworn testimony of Shady Grove's
designee, it appears that 1) Allstate has subjected the June 15, 2005 bills to the thirty-day
violation; 2) it has wrongly withheld statutory interest for those bills; and 3) it may well have
knowingly falsified its claim records in the bargain.

### ii. The June 29, 2005 Medical Services

Shady Grove's Visit Summary shows that on June 29, 2005, Ms. Galvez received a
therapeutic procedure charged at $43 and manual therapy charged at $86.  Ex. G.  The Visit
Summary also shows a July 13, 2005 entry reading "6.27, 29.05 TO ALLSTATE W/SCRIPT
DB"; meaning that on July 13, 2005, the June 29, 2005 bills were forwarded to Allstate, along
with separate bills for services rendered on June 27, 2005, by a Shady Grove employee whose
initials are "DB."  *Id*.  Shady Grove's designee confirmed that both sets of June 2005 bills were
mailed to Allstate in a single envelope.  Nolan at 129-31 (Ex. D).

Allstate eventually recorded the "Bill Received Date" for the June 27, 2005 bills as July
22, 2005.  Ex. H.  If we assume (for the sake of argument) the truth and accuracy of that record,
then Allstate timely paid the June 27 bills on August 15, 2005.  But since the June 29 bills were
sent in the same mailing as the June 27 bills, the former must likewise have been received as of
July 22, 2005.  Yet Allstate ignored the June 29 bills, and Shady Grove was forced to resubmit
them to Allstate on October 27, 2005.  Ex. G.

True to form, Allstate treated the resubmitted bills as a *first* submission; and this allowed Allstate to pretend that they were not submitted within forty-five days of treatment as required under the policy.  In a denial dated November 23, 2005, Allstate thus denied coverage for the June 29, 2005 bills based on the bills' "untimeliness" -- a denial which, ironically, was itself untimely, not having been raised within thirty days of the bills' original submission.  Ex. I.

Here again, the documents support on their face the complaint's allegations of chronic thirty-day violations, failure to pay statutory interest for overdue benefits, and fraudulent manipulation of claim records.

### D.  Results of File Sampling and Other Class Certification Discovery

### i.  Market Share and PIP Claims Data

Allstate is a prolific seller of auto insurance in New York.  According to its Rule 30(b)(6) designee, Allstate has held the second- or third-highest market share for New York auto insurance over the past decade.  Transcript of Feb. 22, 2012 deposition of G. Leib ("Leib") at 42-43 (Ex. J).  Allstate has in place as many as 1.5 million New York auto policies, many of which insure multiple vehicles; so that, at any point in the targeted class period (from April 2003 to the present), Allstate likely insured many millions of New York vehicles.  *See id.* at 43-45.

With specific reference to PIP claims, Allstate recorded the receipt of 344,998 such claims for the years 2003 through 2011.  Ex. K at 8.  These numbers provided the backdrop against which the parties negotiated Allstate's production of PIP files.

### ii. File Sampling data

In March 2011 the parties reached agreement on a file sampling protocol, under which Allstate agreed to produce 300 randomly selected PIP files on a rolling basis. Docket No. 62. For purposes of the Rule 23 inquiry, Shady Grove's counsel reviewed these 300 files to identify each file that contained at least one 30-day violation. Since a claimant who suffered one such violation is no less a class member than another who suffered ten, we did not undertake to identify more than one violation per claimant. (In this regard, the review may be thought of as a "one-and-done" exercise.) In addition, we sought to identify only "clean" or "true" violations -- meaning that we did not count as violations those instances where a claim was denied within 30 days; where the insurer made a timely request for additional proof; or (of course) where Allstate made timely payment.

At periodic intervals during the course of Allstate's rolling production, Shady Grove served Allstate with requests for admissions under Rule 36. The following example is typical of these requests:

> 1. As to each separate and discrete set of documents attached at Tabs 1 through 52 hereto, admit that such set of documents reflects an instance in which PIP benefits became overdue.
>
> 2. As to each claim for PIP benefits reflected by the documents attached at Tabs 1 through 52 hereto, admit that as of the date of these requests Allstate has paid no statutory interest with respect to such benefits.

Ex. L at 3. In response to Shady Grove's initial requests for admissions, Allstate gave (or incorporated by reference) the following response *forty-one times*:

> Denies that any late payment penalty interest is due or owed. The amount of interest owed is less than $5.00, and therefore pursuant to subdivision 65-3.9 of New York State Insurance Department Regulation 68 (11 NYCRR 65), no payment of this amount was required (absent a demand).

10

Ex. M (emphasis in original).  In response to Shady Grove's second set of requests for admissions, Allstate offered the identical response *twenty times*, while also offering an outright admission for a twenty-first claim file. Ex. N.  *See also* Ex. O (admitting 30-day violation, with as-yet-unpaid statutory interest, for Allstate Claim No. 2125792495). Responding to a third set of requests for admissions, Allstate gave the same response an additional *eleven times*.  Ex. P.

It bears emphasizing that we do not believe that Allstate was always truthful in answering Shady Grove's requests for admissions; nor do we believe that Allstate generally complied with the requirements of Rule 36.  For example, we learned from Allstate's Rule 30(b)(6) designee that even where a court or arbitrator awards statutory interest for Allstate's late payment of New York no-fault benefits, Allstate does not regard the outcome as establishing a 30-day violation. Leib at 140-50 (Ex. J).  But if we take Allstate's responses as true, this means that from among 300 randomly selected PIP claimants, Allstate visited at least one 30-day violation, together with unpaid statutory interest, on 73 claimants -- a "hit rate" of approximately 25%.  This does not take into account the prospect that some (perhaps many) claimants were subjected to multiple 30-day violations in connection with the same auto accident.

What to make of these statistics?  As a threshold matter, it is clear that Allstate hopes to hide behind the so-called "$5 rule," the regulatory provision under which statutory interest in amounts less than $5 need only be paid where the claimant demands payment.  But as discussed more fully below, Allstate cannot properly be insulated from liability by the $5 rule.  *First,* the rule's "demand" requirement has been met: there is no dispute that both the original and amended complaints constitute a demand for payment of statutory interest on behalf of absent class

members.  This is clear both from the plain meaning of the term "demand," and the binding

testimony of Allstate's 30(b)(6) designee:

> Q.  You understand that Shady Grove Orthopedic Associates P.A.
> is the plaintiff in this lawsuit?
>
> A.  I do.
>
> ***
>
> Q.  And you understand that Shady Grove is a Maryland-based
> medical practice; is that consistent with your understanding?
>
> A.  It is.
>
> Q.  And you understand that the documents marked as Exhibits 2
> and 3 . . . the original complaint and the amended complaint
> ***demand certain relief on behalf of absent class members*** as
> against Allstate; is that fair to say?
> A.  Yes.
>
> Q.  And ***among the relief demanded is the recovery of statutory
> interest*** under New York's PIP statute; is that fair to say?
>
> A.  Yes.

Leib at 34-35 (Ex. J) (emphasis added).

   ***Second***, section 5106(a) requires that "[a]ll overdue payments shall bear interest at the

rate of two percent per month."  It does not say that ***some*** overdue payments shall bear interest;

or that overdue payments above some numerical threshold shall bear interest; but that ***all*** overdue

payments shall bear interest.  By effectively changing "all" to "some," the regulation on which

Allstate relies directly contradicts the statute.  *See GHS Health Maintenance Organization, Inc.*

*v. United States*, 536 F.3d 1293, 1297 (Fed. Cir. 2008) (citing *Ragsdale v. Wolverine World*

*Wide, Inc.*, 535 U.S. 81, 86 (1997) for the proposition that "[w]hen a regulation directly

contradicts a statute, the regulation must yield.")  *Accord, Ostrer v. Schenck*, 41 N.Y.2d 782,

785-86 (N.Y. 1977) ("Provided that his regulations are not inconsistent with some specific

12

statutory provision, the superintendent [of insurance] may prescribe regulations to effectuate any of the powers given to him by law . . . ") (internal quotation omitted).

The Court should thus reject Allstate's reliance on the $5 rule, which cannot properly apply. When we then project the resulting 25% hit rate over the total number of PIP claims embraced within the proposed class period, the estimated size of the class is 83,834 persons -- each of whom are owed the same relief on the same basis, arising from the same widespread and wrongful practice.[7]

---

[7] Were the Court to accept Allstate's interpretation of the $5 rule (though again, we believe this would be error), the hit rate would be reduced to .3% based on the lone unqualified admission that Allstate provided in response to Shady Grove's requests for admissions. Yet even this artificially reduced hit rate would yield a class of approximately 1,035 persons, easily exceeding the "numerosity" threshold for class certification.

## ARGUMENT

## I. THE SO-CALLED "$5 RULE" DOES NOT APPLY

### A. There Is No Dispute That a Demand Has Been Made On Behalf of Prospective Class Members

The regulation on which Allstate relies provides as follows:

> All overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month, calculated on a pro rata basis using a 30-day month. When payment is made on an overdue claim, any interest calculated to be due in an amount exceeding $5 shall be paid to the applicant or the applicant's assignee without demand therefor.

11 NYCRR 65-3.9(a).

As shown by Allstate's responses to Shady Grove's requests for admissions, Allstate concedes that if a cognizable demand for statutory interest has been made on behalf of the class, this "$5 rule" cannot apply. And this is indeed the case.

In *Walker v. Edison Chouest Offshore, L.L.C.*, No. 04 Civ. 2954(MBM), 2006 WL 2212464 (S.D.N.Y. Aug. 3, 2006), the plaintiff indorsed his complaint with a statement disavowing any intent to waive trial by jury. The Southern District addressed whether this statement constituted an affirmative jury demand. In so doing, the court illustrated the plain meaning of the term "demand":

> The plain meaning of the word demand, which will be conclusive unless "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters," *Griffin v. Oceanic Contractors, Inc.*, 484 U.S. 564, 571 (1982), is an insistent and peremptory request, made as of right. *See* Webster's Third New International Dictionary 598 (1986); *see also* Black's Law Dictionary (8th Ed. 2004) (defining demand as "the assertion of a legal or procedural right.")

14

*Walker*, 2006 WL 2212464 at * 2 (Ex. Q).[8]

Consistent with the plain meaning of "demand," both the original and amended complaint demand the payment of statutory interest on behalf of the class. *See, e.g.*, Amended Compl. at 15 (praying that the Court will "[award] to Shady Grove and all others similarly situated the interest owed to them under N.Y. Ins. Law §5106 . . .") (Docket No. 33). This is, after all, what complaints do: to borrow from Black's, they demand relief (usually in the form of money damages) based on the assertion of legal rights. *See Ginsburg v. Twayne Publishers, Inc.*, 600 F. Supp. 247, 248 (S.D.N.Y. 1984) (contrasting original complaint, which "demanded both specific performance and compensatory and punitive damages," with proposed amended complaint, which "included only a revised demand for monetary damages . . . .")

Allstate, meanwhile, does not disagree (whatever else its lawyers may say). As shown above, Allstate's Rule 30(b)(6) designee readily acknowledged that Shady Grove's 2006 complaint demanded payment of statutory interest under section 5106(a), and on behalf of the prospective class. Leib at 34-35 (Ex. J). This testimony is binding on Allstate. *See Reilly v. NatWest Markets Group Inc.*, 181 F.3d 253, 268 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000) (Rule 30(b)(6) testimony binds the corporate deponent).

Because a legally cognizable demand was made on behalf of the class roughly six years ago (in the form of Shady Grove's original complaint), the $5 rule's "demand" requirement has been met. Therefore, the true import of Allstate's responses to Shady Grove's requests for admissions is no less than this: Allstate admits that through a widespread and common course of conduct, it owes statutory interest for roughly one-quarter of the PIP claimants within the random sample. Again, this would project to a total class size of over 83,000 providers.

---

[8] A more recent edition of Black's Law Dictionary employs the same definition quoted in *Walker*. *See* Black's Law Dictionary 495 (9th ed. 2009).

### B. The $5 Rule Contradicts Section 5106

Because Shady Grove demanded statutory interest on behalf of the class six years ago, there is no need for the Court to rule on the validity of the $5 rule. It nonetheless bears noting that the $5 rule contradicts the very statute it purports to implement; so that under settled law, the regulation from which the $5 rule derives is invalid.

As noted above, section 5106(a) vests New York providers with an automatic right of recovery for statutory interest on **all** overdue benefits. The $5 rule, by contrast, limits that right to overdue benefits that are large enough (in dollars) or late enough (in time) to give rise to statutory interest in excess of $5. Absent a demand -- which section 5106(a) does not require -- statutory interest in amounts less than $5 need not be paid at all. *See* 11 NYCRR 65-3.9(a). The regulation thus contradicts, rewrites, and improperly dilutes the statute's plain imperative. Or to state the matter differently: all means all, some means of some, and the two cannot be reconciled.

Under New York law, the Superintendent of Insurance (whose office promulgated the $5 rule prior to its merger with the newly formed Department of Financial Services) cannot properly issue regulations in contravention of existing statutes: "***Provided*** that his regulations are not inconsistent with some specific statutory provision, the superintendent [of insurance] may prescribe regulations to effectuate any of the powers given to him by law . . . . ") *Ostrer v. Schenck*, 41 N.Y.2d 782, 785-86 (N.Y. 1977) (internal quotation omitted; emphasis added). Federal law is the same. *GHS Health Maintenance Organization, Inc. v. United States*, 536 F.3d 1293, 1297 (Fed. Cir. 2008) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (1997) for the proposition that "[w]hen a regulation directly contradicts a statute, the regulation must yield.") Thus, even had Shady Grove never made a demand for statutory interest on behalf of the class -- though both sides agree that such a demand was made six years ago -- the $5 rule

16

could not properly insulate Allstate from liability to the class, regardless of whether the amounts owed exceeded $5.

## II. **THE LEGAL FRAMEWORK**

Class certification is governed by Federal Rule of Civil Procedure 23. The essential requirements, as applicable to this lawsuit, were noted in *Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010):

> To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a): numerosity, commonality, typicality, and adequacy.
>
> ***
>
> Not only must each of the requirements set forth in Rule 23(a) be met, but certification of the class must also be deemed appropriate under one of the three subdivisions of Rule 23(b).
>
> ***
>
> Under Rule 23(b)(3), class certification is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class [action] is superior to other available methods for fairly and efficiently adjudicating the controversy."

*Brown*, 609 F.3d at 475-76 (quoting Fed. R. Civ. P. 23(b)(3)).

Though class certification must be the product of rigorous analysis, the Second Circuit requires that Rule 23 be given a liberal construction, reflecting a "'general preference' for granting rather than denying class certification." *In re Vitamin C Antitrust Litig.*, 2012 WL 251909, __ F.R.D. __, slip op. at * 3 (E.D.N.Y. 2012) (citing *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (other citations omitted) (Ex. R). Further, class certification is not an inquiry into the merits. *Becher v. Long Island Lighting Co.*, 172 F.R.D. 28, 30 (E.D.N.Y. 1997) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)).

This case is a consumer class action.  Courts and commentators agree that the class action device exists (in large part) for the express purpose of accommodating such claims:

> It is by now a truism that the class-action lawsuit has become a vehicle of citizenship and consumer control over the vagaries of political or market forces. * * *  Sometimes a class-action lawsuit is the only way in which consumers would know of their rights at all, let alone have a forum for their vindication.

4 HERBERT B. NEWBERG AND ALBA CONTE, NEWBERG ON CLASS ACTIONS §18.01 (3d ed. 1982) (quoting *Coleman v. Cannon Oil Company*, 141 F.R.D. 516, 520 (M.D. Ala. 1992)).  Because consumer claims often present the classic case for certification, the Supreme Court has observed that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

This legal framework makes a compelling case for class certification here.  As Allstate's repeated invocation of the $5 rule makes clear, this case involves a large class of care providers, the vast majority of whom are owed nominal interest on each affected medical bill; and all arising from the same course of conduct.  That is why another district court viewed an identical case as "perfectly suited for a class action." *Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84, 91 (D. Md. 2009).

### III. THE NUMEROSITY STANDARD IS MET

The numerosity standard requires Shady Grove to show that the prospective class is too numerous to make joinder of each class member practicable.  Courts within the Second Circuit "generally presume that joinder of all putative class members is impracticable if the class has more than forty members." *In re Vitamin C*, slip op. at *4 (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) and *Ramos v. SimplexGrinnell LP*, 796 F.

Supp.2d 346, 353 (E.D.N.Y. 2011)).  With the class here estimated at over 80,000 care providers (on the basis of Allstate's own statistics), the numerosity standard is easily met.

## IV.  THE COMMONALITY STANDARD IS MET

Commonality is met "if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (collecting cases and commentaries).  The requirement of commonality "can be satisfied by the existence of a single common question of fact or law." *Haynes v. Planet Automall*, 276 F.R.D. 65, 73 (E.D.N.Y. 2011).  Commonality has thus been found where the named plaintiffs "alleged common deprivations of . . . statutory rights arising from a common statutory scheme." *Kapps v. Wing*, 283 F. Supp.2d 866, 872 (E.D.N.Y. 2003).

This is such a case.  Shady Grove alleges, in common with the proposed class of absent care providers, that it has been deprived of the right to statutory interest under New York's statutory no-fault scheme.  This is precisely the common issue that other courts have identified in granting class certification for identical cases. *See Bulmash*, 257 F.R.D. at 88 ("Common issues of law in this case include whether class members are entitled to statutory interest under [Maryland's PIP statute] due to [the insurer's] late payment of PIP claims . . ."); *Colonial Penn Ins. Co. v. Magnetic Imaging Sys. I Ltd.*, 694 So.2d 852, 854 (Fla. Ct. App. 1997) ("This case presents a question of common or general interest to all class members: statutory interest due on late PIP benefits payments.")

## V.  **THE TYPICALITY STANDARD IS MET**

Typicality is found "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marisol A.*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  The requirements of commonality and typicality tend to merge, "so that similar considerations animate analysis" of each.  *Marisol A.*, 126 F.3d at 376.

Here, as in *Bulmash*, the typicality standard is easily met:

> All proposed class members will allege that they submitted a valid PIP claim to [the insurer], [the insurer] paid their PIP claim beyond the thirty-day deadline, and they are entitled to recovery of the statutory interest due under [the PIP statute].  This is exactly the claim brought by [the named plaintiff].

*Bulmash*, 257 F.R.D. at 89 (finding typicality).  *Accord, Womack v. State Farm Mut. Auto. Ins. Co.*, C.A. No. 06C-04-013RFS, slip op. at 3 (Del. Super. Ct. Aug. 21, 2008) (class representative's claims were "typical of those of the class, because she (like all other class members) allege[d] an entitlement to statutory interest under [the PIP statute] due to overdue PIP benefits") (Ex. S).

## VI.  **THE ADEQUACY STANDARD IS MET**

The requirement of adequate representation "is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Marisol A.*, 126 F.3d at 378.  The adequacy standard thus requires that class counsel be qualified and experienced enough to prosecute the class action; and that the class representative be subject to no conflict of interest with the class. *Id.*

As the court noted in *Bulmash*, Shady Grove's counsel "has successfully prosecuted similar class actions of a larger size." *Bulmash*, 257 F.R.D. at 89. *See also Crowhorn v.*

*Nationwide Mut. Ins. Co.*, 836 A.2d 558, 565 (Del. Super. Ct. 2003) (observing, in an identical case, that Shady Grove's counsel "had experience litigating similarly complex cases . . . .") Neither Shady Grove nor its counsel are subject to any conflict of interest; and they have vigorously prosecuted the case for six years, even to the point of securing *certiorari* before the Supreme Court. The adequacy standard is thus easily met.

## VII.   THE PREDOMINANCE STANDARD IS MET

The predominance requirement is met "if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class a whole, predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007). Stated differently, predominance exists "[so] long as a sufficient constellation of common issues binds class members together . . . ." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (internal quotations omitted).

The proposed class here is firmly bound by a constellation of common issues. For example, no individualized proofs are needed to show that Allstate is subject to New York's no-fault statute; that when it pays late, it becomes liable for statutory interest; that the interest is calculated at 2% monthly, and so forth. The Second Circuit has thus upheld a finding of predominance where the class members' claims "all arise from the same core allegation . . . ." *Brown*, 609 F.3d at 484.

Allstate has previously argued, without success, that the practical necessity of reviewing claim files is enough to defeat predominance. This Court has rejected that argument; since this case embraces only claims that have already been paid (or for which coverage has already been established by operation of New York's preclusion standard), "[t]his is not a coverage case." Jan.

24, 2012 hearing transcript at 30 (Ex. A). Accordingly, the proofs are not unique and individualized, but universal and "basically mechanical[.]" *Id.* at 31.

The *Bulmash* court understood this. In its discussion of the predominance issue, *Bulmash* observed that where the no-fault insurer maintains proper records, the proofs will consist largely of "counting the number of days the payment was late and determining the statutory interest due for that number of days." *Bulmash*, 257 F.R.D. at 91. It is for reasons such as this that the Supreme Court has recognized that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

### VIII. <u>THE SUPERIORITY STANDARD IS MET</u>

The superiority analysis requires an assessment of four factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Each factor militates in favor of class certification here.

Because the amounts owed as statutory interest are nominal, class members have (as *Bulmash* recognized) little incentive to pursue individual actions on any meaningful basis. *Bulmash*, 257 F.R.D. at 91 ("The amount of statutory interest owed to a particular plaintiff is likely too small to provide adequate incentive for individuals to bring claims against the [no-fault] insurer.") Though an occasional individual claim for statutory interest may be litigated against Allstate, the focus of such claims (rare though they may be) will invariably be the

22

principal amount owed under a particular set of medical bills -- not the nominal interest owed for late payment of those bills. The Fourth Circuit has thus noted that in cases like this one, "it appears likely that in the absence of class certification, very few claims would be brought," making "'the adjudication of [the] matter through a class action . . . superior to no adjudication of the matter at all.'" *Gunnells v. Healthplan Serv., Inc.*, 348 F.3d 417, 426 (4th Cir. 2003) (quoting 5 MOORE'S FEDERAL PRACTICE §23.48[1] (1997)). Nor does it appear that any competing class actions have been filed against Allstate.

For similar reasons, the desirability of concentrating the claims in this lawsuit should be manifest: without such collective and representative treatment, few class members will be aware of their rights, and fewer still will pursue them.

As to manageability, it should be remembered that trial courts enjoy a broad range of tools for the management and supervision of class actions. For this reason, "[c]ourts are generally loath to deny class certification based on speculative problems with case management . . . ." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 529 (S.D.N.Y. 1996) (citations omitted). Indeed, there can be little doubt that this Court has managed larger and more complex class actions than the one at bar.

23

## CONCLUSION

For the reasons set forth above, Shady Grove respectfully requests that the proposed class

be certified under Federal Rule of Civil Procedure 23(b)(3), as follows:

> All health care providers who, since April 20, 2003, submitted
> claims for first-party no-fault benefits under New York auto
> policies issued by Allstate Insurance Company, where (i) those
> claims were never disputed by Allstate within 30 days of their
> receipt by the company, and (ii) Allstate made no payment of
> statutory interest against the claim.

Shady Grove likewise requests that it be appointed as representative of the class, and that

the firm of John Sheehan Spadaro, LLC be appointed as class counsel.

Respectfully submitted,

John S. Spadaro, No. JS3769
724 Yorklyn Road, Suite 375
Hockessin, DE 19707
(302) 235-7745

Attorney for plaintiff Shady Grove Orthopedic
Associates, P.A. (on behalf of itself and all others
similarly situated)

April 16, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

SHADY GROVE ORTHOPEDIC )
ASSOCIATES, P.A, )
on behalf of itself and all others )
similarly situated, )
)
                        )    C.A. No.:  06-CV-1842NG-JO
            Plaintiff, )
)
v. )
)
ALLSTATE INSURANCE COMPANY, )
)
            Defendant. )
)

## CERTIFICATE OF SERVICE

     I, John S. Spadaro, hereby certify that on April 16, 2012, I served the foregoing Plaintiff

Shady Grove Orthopedic Associates' Opening Brief in Support of its Motion for Class

Certification to the following individuals in the manner indicated:

**BY FEDEX**
Andrew T. Hahn, Sr., Esq.
Duane Morris LLP
1540 Broadway
New York, NY 10036-4085

                                 /s/ John S. Spadaro
                                 John S. Spadaro, No. JS3769
                                 724 Yorklyn Road, Suite 375
                                 Hockessin, DE 19707
                                 (302) 235-7745

                                 Attorney for plaintiff Shady Grove Orthopedic
                                 Associates, P.A. (on behalf of itself and all others
                                 similarly situated)

April 16, 2012

4838