UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x

SHADY GROVE ORTHOPEDIC
ASSOCIATES, P.A., on behalf of itself
and all others similarly situated,

                  Plaintiffs,

   - against -

ALLSTATE INSURANCE COMPANY,

                  Defendant.

------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 7 - 2013 ★

BROOKLYN OFFICE

**OPINION & ORDER**
06-cv-1842 (NG) (JO)

**GERSHON, United States District Judge:**

     Plaintiff Shady Grove Orthopedic Associates, P.A. ("Shady Grove") brings this class action against defendant Allstate Insurance Company ("Allstate"), seeking payment of statutory interest penalties mandated by the New York State Insurance Law and accompanying regulations. By this motion, Shady Grove seeks certification of the following class, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All health care providers who, since April 20, 2003, submitted claims for first-party no-fault benefits under New York auto policies issued by Allstate Insurance Company, where (i) those claims were never disputed by Allstate within 30 days of its receipt of the claims (accompanied by verification or proof of claim, as those terms are used in 11 NYCRR 65-3.5); (ii) though ultimately paid by Allstate, those claims were not paid within 30 days of its receipt of the claims; and (iii) Allstate made no payment of statutory interest against the claim; provided, however, that eligibility for class membership shall not derive from any claim for which Allstate requested verification or proof of claim additional to that which was submitted with the original claim.[1]

---

[1] This is the second revised class definition, as set forth in the letter from counsel to plaintiff, dated February 13, 2013. (Spadaro Letter, February 13, 2013, at 4.) This revised definition was submitted

## BACKGROUND

Although the parties' familiarity with the allegations set forth in the Complaint[2] and with the prior proceedings in this case is presumed, a brief discussion of the background and procedural history is nonetheless helpful.

### I.    Factual Allegations

This class action lawsuit was commenced in 2006 by plaintiffs Shady Grove and Sonia E. Galvez, who sought to collect certain statutory interest penalties, which they alleged had been withheld by defendant Allstate in contravention of the New York Insurance Law (N.Y. Ins. Law) § 5106 (the Fair Claims Settlement portion of the New York Comprehensive Motor Vehicle Insurance Reparations Act) and Part 65 of Title 11 of the New York Compilation of Codes, Rules and Regulation (Regulations Implementing the Comprehensive Motor Vehicle Insurance Reparations Act).

Pursuant to the statute, first-party no-fault benefits must be paid within thirty days after the claimant provides "proof of the fact and the amount of the loss sustained. . . . All overdue payments shall bear interest at the rate of two percent per month." N.Y. Ins. Law § 5106(a).   Similarly, Subpart 65-3 of the implementing regulation provides, "All overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month, calculated on a pro rata basis using a 30-day month."   11 N.Y.C.R.R.  § 65-

---

at my request, following the February 6, 2013 oral argument. (*See* Oral Arg. Tr. 57, Feb. 6, 2013.) "A court is not bound by the class definition proposed in the complaint." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

[2]

Citations to the "Complaint" refer to the Amended Class Action Complaint, dated June 22, 2010, filed June 22, 2019 (ECF Document #33).

2

3.9(a). And, when payment is made on an overdue claim, "any interest calculated to be due in an amount exceeding $5 shall be paid to the applicant or the applicant's assignee without demand therefor." *Id.*

Plaintiff Shady Grove is "a Maryland corporation established for the practice of orthopedic medicine." (Complaint ¶ 5.) Defendant Allstate is an Illinois-based corporation in the insurance business, which regularly sells automobile insurance policies in the state of New York. (*Id.* ¶ 7.) Plaintiff Ms. Galvez is a Maryland resident who was insured under an Allstate policy, and who assigned to Shady Grove her rights to the no-fault benefits thereunder. (*Id.* ¶ 6.)

Shady Grove alleges that Allstate routinely fails to pay covered first-party no-fault benefits within 30 days, and that, when it does make payment on these overdue claims, it fails to pay the accrued interest, in accordance with §§ 5106 and 65-3.9(a). (*See id.* ¶¶ 17-19.) Plaintiff further alleges that Allstate "routinely and falsely claims to have never received" the claimant's proof of loss, "as a means of avoiding the consequences of its violation of the thirty-day standard." (*Id.* ¶ 20.)

With regard to its status as a proposed class representative, Shady Grove alleges that Ms. Galvez was entitled to payment of certain benefits under her no-fault insurance policy, that she assigned the right to those benefits to Shady Grove, and that Allstate neither made timely payment of those benefits, nor paid the interest that accrued pursuant to N.Y. Ins. Law § 5106(a) and 11 N.Y.C.R.R. § 65-3.9(a). (*See id.* ¶¶ 21-26.) Moreover, Shady Grove alleges that Allstate falsely claimed not to have received one or more of the claims that Shady Grove submitted in connection with these benefits, "for the purposes of avoiding the consequences of its violation of the thirty-day payment standard." (*Id.* ¶ 27.) Shady Grove therefore asserts that it is an appropriate class

3

representative, and that the proposed class satisfies all of the requirements of Rule 23 of the Federal Rules of Civil Procedure. (*See id.* ¶¶ 28-37.)

## II.    Procedural History

By Order dated December 15, 2006, I granted defendant's motion to dismiss in its entirety, concluding that Ms. Galvez, as assignor of her rights and interest in her no-fault benefits to Shady Grove, lacked standing to bring the action and that the class action was barred by § 901(b) of New York's Civil Practice Law and Rules (C.P.L.R.). *See Shady Grove Orthopedic Assoc's, P.A. v. Allstate Ins. Co.*, 466 F.Supp.2d 467, 473-75 (2006). Since, without the class action claims, Shady Grove's individual claims did not reach the required amount in controversy under 28 U.S.C. § 1332(a), I dismissed those claims for lack of subject matter jurisdiction. *Id.* at 476.

While this decision was affirmed by the Second Circuit, it was subsequently reversed by the United States Supreme Court.[3] S*ee Shady Grove Orthopedic Assoc's, P.A. v. Allstate Ins. Co.*, 549 F.3d 137 (2d Cir. 2008), *rev'd* 559 U.S.393 (2010). The action was remanded back to this court in June 2010. *See Shady Grove Orthopedic Assoc's, P.A. v. Allstate Ins. Co.*, 380 Fed.Appx. 96, 97 (2d Cir. 2010). The parties commenced and completed discovery relating to class certification.

Of the five counts originally alleged in the Complaint, two remain: Count IV, violations of N.Y. Ins. Law § 5106; and Count V, violations of N.Y. Gen. Bus. Law § 349 (Consumer Protection from Deceptive Acts and Practices). Counts I - III, which were claims for declaratory judgment, breach of contract, and bad faith breach of contract, respectively, were all dismissed, on the record,

---

[3]

Shady Grove appealed from the ruling that the class action claims were barred by C.P.L.R. § 901(b), and not from the decision relating to Ms. Galvez's standing. *See Shady Grove Orthopedic Assoc's, P.A. v. Allstate Ins. Co.*, 549 F.3d 137, 139-40, n. 1 (2d. Cir. 2008). Shady Grove, therefore, remains the only named plaintiff.

during the proceedings of January 24, 2012. (*See* Oral Arg. Tr., Jan. 24. 2012.) Plaintiff now seeks

certification of the proposed class with respect to both the § 5106 and § 349 claims.

**III.    The Class Definition and Shady Grove's Methodology**

As set forth above, Shady Grove seeks to certify a class comprised of health care providers

which submitted no-fault claims to Allstate since 2003, and which claims were ultimately paid, but

paid late, and paid without the addition of the statutory interest. Because Allstate received more

than 344,000 "coverage notice counts" for the applicable years, the parties agreed to a file sampling

protocol for the purposes of discovery relating to this motion.

Pursuant to the agreed-upon protocol, Allstate produced 300 randomly selected no-fault claim

files, which Shady Grove reviewed in an effort to ascertain whether each of the files contained at

least one violation of the 30-day rule, thus potentially rendering the claimant eligible for class

membership.[4] Based upon this initial review, Shady Grove served upon Allstate numerous requests

for admissions, which related to what Shady Grove determined to be the violations of § 5106

contained within the sample claim files. Allstate admitted one such violation (*see* Mem. in Supp.,

at 11, Ex. O) and responded to 72 of the requests for admissions with a statement denying that any

interest is owed because, "the amount of interest owed is less than $5.00, and therefore pursuant to

[11 N.Y.C.R.R. 65-3.9] no payment of this amount is required (absent a demand.)" (*Id.* at 10.) This

---

[4]

In the course of its review, Shady Grove did not count as a "30-day violation" any "instances where a claim was denied within 30 days; where the insurer made a timely request for additional proof; or (of course) where Allstate made timely payment." (Mem. in Supp., at 10.) Shady Grove also only sought to identify one 30-day violation per claim file, which it refers to as a "one-and-done" exercise. (*Id.*)

response forms the basis for the parties' dispute as to the so-called "Five-Dollar Rule," which is addressed below.

Shady Grove contends that the Five-Dollar Rule is inapplicable and that Allstate has admitted 73 violations out of a field of 300 randomly sampled claim files, which amounts to a "hit rate" of about 25%. (*Id.* at 11.) Extrapolating this percentage out to the 344,000 claims filed within the relevant time period, Shady Grove initially estimated a class size of about 83,000 members. (*Id.* at 13.) Following the proceedings of February 6, 2013, Shady Grove narrowed the definition of the proposed class to exclude those claims for which Allstate requested additional verification or additional proof of claim within the 30-day period,[5] as well as those which Allstate subsequently denied. (*See* Spadaro Letter, February 13, 2013, at 2, 4.) Shady Grove then conducted a re-review of ten of the claim files for which Allstate had asserted the "under-five-dollar" response. Upon this re-review, Shady Grove concluded that, for eight of the ten files, benefits were paid late and without interest, and membership within the proposed class would therefore be appropriate.[6] Thus concluding that eight out of ten of the claim files previously reviewed would be eligible for membership in the revised class, Shady Grove has reduced its original estimate from a class of about 83,000 to a class of about 65,000 members – about 80% of the originally estimated class size . (*Id.* at 3.)

---

[5]

To the extent that the insurer requests additional verification or additional proof of claim within 30 days after the initial proof of claim is filed, such request may act to "toll" the 30-day period. The parties refer to the period following the request for additional information as the "tolling period." (*See, e.g.*, Oral Arg. Tr. 14-17, Feb. 13, 2013.)

[6]

Of the two claims that Shady Grove excluded from the revised class definition, one was ultimately denied, although the denial was not timely, and another "involved a potential tolling issue." (Spadaro Letter, February 13, 2013, at 3.)

Allstate objects to Shady Grove's revised class definition, its methodology and its conclusions. Primarily, Allstate contends that the level of individual inquiry necessary to determine whether or not a violation has, in fact, occurred, is far too high to warrant certification of any plaintiff class. Allstate further asserts that the Five-Dollar Rule brings the number of "admitted" violations to two out of 300, rather than 73 out of 300, thus significantly lowering the "hit rate."

## ANALYSIS

### I.    The Five-Dollar Rule

Before delving into a discussion of whether the proposed class satisfies the requirements for certification under Rule 23, it is necessary to examine the applicability of the Five-Dollar Rule.

As set forth above, the Five-Dollar Rule is the product of 11 N.Y.C.R.R. § 65-3.9(a) ("Regulation 68"), which was promulgated by the New York State Insurance Department (now the New York State Department of Financial Services ("DFS")), to implement the Comprehensive Motor Vehicle Insurance Reparations Act. Under the Fair Claims Settlement provision of the Act:

> (a) Payments of first party benefits and additional first party benefits shall be made as the loss is incurred. Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained. If proof is not supplied as to the entire claim, the amount which is supported by proof is overdue if not paid within thirty days after such proof is supplied. *All overdue payments shall bear interest at the rate of two percent per month.* If a valid claim or portion was overdue, the claimant shall also be entitled to recover his attorney's reasonable fee, for services necessarily performed in connection with securing payment of the overdue claim, subject to limitations promulgated by the superintendent in regulations.

N.Y. Ins. L. § 5106(a) (emphasis added).

Regulation 68 similarly provides that "[a]ll overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month,

7

calculated on a pro rata basis using a 30-day month." 11 N.Y.C.R.R. § 65-3.9(a). It goes on to provide, however, that "[w]hen payment is made on an overdue claim, any interest calculated to be due *in an amount exceeding $5 shall be paid* to the applicant or the applicant's assignee *without demand therefor*." *Id.* (emphasis added). According to Allstate, the effect of Regulation 68's language (highlighted above) is to *negate* the insurer's obligation to pay interest in amounts totaling less than five dollars, unless the applicant makes a demand for it. If an insurer is not required to pay the smaller amounts of interest owed, however, Shady Grove argues that Regulation 68 effectively changes the statute's provision that "*[a]ll* overdue payments shall bear interest at the rate of two percent per month," to "*some* overdue payments shall bear interest at the rate of two percent per month." (*See* Plf. Mem. in Support at 12.) Plaintiff asserts that, in light of such a conflict, Regulation 68 "must yield" to the statute. (*Id.*, *quoting Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (1997).) Even if Regulation 68 does not so "yield," plaintiff contends that the filing of this lawsuit represents a demand for payment of the statutory interest penalties in amounts less than five dollars, thereby triggering Allstate's obligation to pay.

Allstate, first, disputes the contention that this lawsuit represents a demand for payment in accordance with the regulatory language. Allstate also argues that any challenge to Regulation 68 is improper because plaintiff has neither included in the Complaint a claim for a declaratory judgment relating to Regulation 68, nor joined the DFS as a party to this action. Furthermore, Allstate contends that the appropriate vehicle by which to mount such a challenge is an Article 78 proceeding in New York State court, not a civil action here, and that this court should decline jurisdiction over this issue in accordance with the abstention doctrine set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

8

On this point, I am not persuaded by the arguments on either side. First, I note that, rather than challenging the validity of Regulation 68, Shady Grove is merely arguing in favor of a particular interpretation thereof, which interpretation I reject. Allstate's contentions as to the need for a declaratory judgment claim, Article 78 proceeding or joinder of the DFS are therefore unavailing. Nor is *Burford* abstention required where, as here, "[t]here is no challenge to a state administrative or judicial order made pursuant to state law," and where the case "does not involve the federal courts in disrupting any state judicial or administrative proceedings [and n]o unclear state laws, issues or rulings are implicated." *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 600 (2d Cir. 1988). To the contrary, and despite Shady Grove's arguments otherwise, Regulation 68 is unambiguous and in perfect harmony with the governing statute. A reading of its plain language reveals that Allstate's understanding of the effect of the Five-Dollar Rule is incorrect.

Section 5106's edict regarding the accrual of interest upon *all* overdue payments is not undone by Regulation 68's provision for automatic payment of amounts exceeding five dollars. Indeed, the first sentence of Regulation 68, itself, expressly provides that "[a]ll overdue" benefits shall bear interest at the rate of two percent per month. 11 N.Y.C.R.R. § 65-3.9(a). Allstate's interpretation of the five-dollar clause would render this language meaningless and, as such, it is to be disfavored by the court. *See, e.g., Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 156 (2d Cir. 2007) ("we generally avoid interpreting a regulation in a way that renders one of its provisions meaningless"); *see also Albano v. Kirby,* 36 N.Y.2d 526, 530 (N.Y. 1975) ("Such a construction, resulting in the nullification of one part of the rule by another, is not permissible"). Nothing in Regulation 68 compels the conclusion that interest begins accruing only at the point in time at which it hits the five-dollar mark, or that insurers are somehow not liable for the interest that accrues in

9

lesser amounts. Rather, the plain language of Regulation 68 requires the insurer to include the amount of the accrued interest automatically when it makes payment of an overdue claim, as long as the amount of the accrued interest is greater than five dollars. If the amount of accrued interest is less than that, the insurer need not tack it on to the principal amount owed on the overdue claim, but may instead await a demand for such amount by the claimant (or the claimant's assignee). The interest thus accrues on *all* overdue payments, as the statute provides – and the insurer still *owes* those amounts to the claimant. Once the insurer receives a demand for the smaller amounts of interest owed, it is obligated to pay them. In accordance with the legislative intent behind § 5106 and Regulation 68, the specter of the requirement to pay interest – in any amount – serves to "curtail[] delay and reduc[e] expense in the adjustment of motor vehicle accident claims" and "encourage prompt payment of claims . . . and to penalize delay." *See Dermatossian v. New York City Transit Authority*, 67 N.Y.2d 219, 225 (1986).

I therefore disagree with Allstate's apparent contention that liability for the violation of § 5106 may be found only where there has been a demand made for the accrued interest. Rather, the statute clearly provides that no-fault payments are to be made within 30 days of receipt of the proof of claim. If such payments are delayed, the insurer must also pay interest. Both the failure to make timely payment *and* the failure to pay the statutory interest may amount to violations of the Insurance Law and corresponding regulation. Thus, whether or not there has been a demand, to the extent Allstate owes interest as a result of its failure to make timely payment of certain claims – which it has admitted – this lawsuit is a perfectly appropriate vehicle by which the outstanding interest payments, including those under five dollars, may be collected by those entitled to them.

10

## II. Certification of the Class

As set forth above, plaintiff seeks to certify a class comprised of:

All health care providers who, since April 20, 2003, submitted claims for first-party no-fault benefits under New York auto policies issued by Allstate Insurance Company, where (i) those claims were never disputed by Allstate within 30 days of its receipt of the claims (accompanied by verification or proof of claim, as those terms are used in 11 NYCRR 65-3.5); (ii) though ultimately paid by Allstate, those claims were not paid within 30 days of its receipt of the claims; and (iii) Allstate made no payment of statutory interest against the claim; provided, however, that eligibility for class membership shall not derive from any claim for which Allstate requested verification or proof of claim additional to that which was submitted with the original claim.

(Spadaro Letter, February 13, 2013, at 4.) The class proposed by this definition would thus exclude those providers whose claims were denied, as well as those for whom the 30-day period may have been tolled by, *inter alia*, a request by Allstate for additional verification, and those whose claims were paid within 30 days of receipt of the requisite proof of claim.

### A. Rule 23 Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs the certification of a class for the purposes of a class action. A party seeking class certification must establish by a preponderance of the evidence that each of the requirements set forth in Rule 23 has been met. *Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-03 (2d Cir. 2008). Rule 23:

does not set forth a mere pleading standard. Rather, a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).

*Comcast Corp. v. Behrend*, — U.S. — , 2013 WL 1222646, at **4 (March 27, 2013) (internal quotations and citations omitted). As the party seeking class certification, Shady Grove must

11

therefore demonstrate that its claims can withstand the rigorous analysis required with respect to Rule 23, in satisfaction both of the Rule 23(a) requirements – numerosity, commonality, typicality and adequacy of representation – and those of at least one subsection of Rule 23(b) – here, the Rule 23(b)(3) requirements of predominance and superiority. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, — U.S. —, 131 S.Ct. 2541, 2551 (2011) (rigorous analysis required with respect to the Rule 23(a) criteria); *see also Shayler v. Midtown Investigations, Ltd.*, 2013 WL 772818, at \*3 (S.D.N.Y. February 27, 2013) (applying "rigorous analysis" to the examination of factors under both Rules 23(a) and 23(b)(3)). Moreover, although not expressly required by Rule 23, some courts have recognized an implied requirement of ascertainability, which is met "if its members can be ascertained by reference to objective criteria." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323, 336-37 (S.D.N.Y. 2002); *see also Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 154 (S.D.N.Y. 2010). Notwithstanding the rigorous analysis to which plaintiff's motion is to be subjected, the preference in this Circuit is to give Rule 23 a "liberal rather than restrictive construction" and to "grant[] rather than deny[] class certification." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (internal quotation marks and citations omitted).

Although the merits of plaintiff's claim are not exhaustively evaluated at the class certification stage, it may nonetheless "be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). The analysis that is required of the trial court in making this determination may "overlap with the merits of the plaintiff's underlying claim" since the "'class determination generally involves considerations that are enmeshed in the factual and legal issues

12

comprising the plaintiff's cause of action.'" *Wal-Mart*, — U.S. —, 131 S.Ct. at 2551-52 (quoting *Falcon*, 457 U.S. at 160).

Allstate's primary basis for challenging class certification is the failure of the proposed class to satisfy the requirements of Rule 23(b)(3). Allstate also argues, however, that, in fact, Shady Grove has failed to satisfy *any* of the requirements necessary to warrant certification of the proposed class. As set forth below, I disagree.

### 1.    Ascertainability

Turning, first, to the implied requirement of ascertainability, the plaintiff "must demonstrate that there is an 'identifiable class.'" *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 207 (E.D.N.Y. 2005) (*quoting MTBE Products Liability Litigation*, 209 F.R.D. at 336). A class is identifiable when, as stated above, its membership may be ascertained by reference to objective criteria, or where "the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Casale v. Kelly*, 257 F.R.D. 396, 406 (S.D.N.Y. 2009) (*quoting* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1760 (3d ed. 2008)). This standard is not a demanding one, but "is designed only to prevent the certification of a class whose membership is truly indeterminable." *Gortat v. Capala Bros., Inc.*, 2010 WL 1423018, at *2 (E.D.N.Y. April 9, 2010).

Here, Allstate argues that the proposed class is not ascertainable because a determination as to membership "requires addressing the central issue of liability." (Hahn Letter, February 20, 2013, at 4.) Specifically, Allstate contends that a medical provider can be shown to be part of the class only if it is established that Allstate owes the provider interest payments, and the question of whether

13

such payments are in fact owed is the central issue of liability in this case. Thus, Allstate argues that mini-trials on the question of liability will be needed in order to determine class membership.

It may be that the ascertainability requirement is not satisfied where such mini-trials are required, but this is not such a case.[7] Under the revised class definition, a putative class member

---

[7]

The cases cited by Allstate in support of this point are easily distinguished. In *Wilson v. Toussie*, for example, plaintiffs asserting claims of racial discrimination sought to certify a class of homeowners who, "because of Defendants' standard deceptive conduct, purchased intentionally overpriced and over-appraised homes, homes with mortgages they could not afford, homes with property tax payments higher than represented, homes that were defectively built, homes lacking in promised amenities, and/or homes located in different towns and in worse neighborhoods than represented." *Wilson v. Toussie*, 2008 WL 905903, at *1 (E.D.N.Y. March 31, 2008). The court denied the motion to certify, concluding that this level of fact-intensive inquiry "would essentially require a mini-hearing on the merits of each class member's case, including their individual injury," and that reference to objective standards would not "eliminate the necessity for mini-trials to determine if the objective standard has been met." *Id.* at *5.

In the present case, however, membership in the proposed class can be measured by reference to objective criteria, e.g., the dates of submission of proof of claim and receipt of benefits payments, without the need for mini-hearings. It is also worth noting that, in denying the certification motion, the *Wilson* court expressly stated that, if the proposed class had been limited to "'All Blacks and Hispanics who purchased residential real estate from the Sellers and who because of their race and/or national origin, were pursuant to the Seller's blanket policies and standard practices, steered to areas Defendants had designated for Blacks and Hispanics purchasers [sic] (the Designated Areas)' the Court could easily conclude that the class is ascertainable." *Id.* Membership in such a class would still require an inquiry into certain individual characteristics of each putative member's situation and transaction, and yet the *Wilson* court would "easily" have concluded that the class was ascertainable. *Id.*

*Eng-Hatcher v. Sprint-Nextel Corp.*, also cited by Allstate, is inapposite. In that case, the plaintiff, asserting violations of the Fair Labor Standards Act and New York Labor Law, sought to certify a class of hourly employees who had neither been "paid for all the hours that they worked in any given workweek," nor paid overtime. *Eng-Hatcher*, 2009 WL 7311383, at *5 (S.D.N.Y. November 13, 2009). The court concluded that the class was not ascertainable because the plaintiff had not identified "an illegal policy" used by the defendant, and that, "[w]ithout such an overarching policy, determinations of class membership would require an inquiry into the merits of each member's claims. *Id.* at *7. This type of inquiry is simply not necessary with respect to Shady Grove's proposed class.

would have to show only that it submitted proof of a claim to Allstate for first-party no-fault benefits within the statutory period; that the claim was not disputed, nor additional verification sought within 30 days of Allstate's receipt of the proof of claim; and that the claim was eventually paid after the 30-day period had expired, but that interest was not included in the amount paid. Membership may thus be determined by reference to objective criteria, and the class is ascertainable.

### 2.    Rule 23(a)

#### (a)    Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This prerequisite is satisfied by a class consisting of at least 40 members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *accord Madanat v. First Data Corp.*, 282 F.R.D. 304, 309 (E.D.N.Y. 2012). Based on the methodology discussed above,[8] Shady Grove estimates a class of about 65,000 providers. Allstate argues that Shady Grove has not provided any evidence as to the exact number and identities of the members of the proposed class, but there is no requirement to specify an exact class size in order to demonstrate numerosity. *See Cortigiano*, 227 F.R.D. at 204. Moreover, Shady Grove's estimate is based on its review of the randomly selected claims files, which review, along with Allstate's responses, revealed 73 instances of nonpayment of interest. While extrapolation of the 25% "hit rate" is reasonable, even without the extrapolation, Shady Grove has identified 73 prospective class members. As such, Shady Grove has shown by a preponderance of the evidence that joinder is impracticable, and the numerosity requirement is satisfied. *See, e.g., Johnson v. Geico Casualty Co.*,

---

[8]
*See* pp. 5-6, *supra.*

673 F.Supp.2d 255, 271-72 (D.Del. 2009) (where plaintiff conducted review of randomly selected files, identified over 50 potential members and then extrapolated those results out to the total number of files, the court concluded numerosity was satisfied, "even without extrapolating" the sample to the total pool).

### (b)   Commonality

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," [but t]his does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 131 S.Ct. at 2551. Rather, the claims of the putative class "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Thus, it is not "the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation" that renders a class certifiable on commonality grounds. *Id.* (emphasis in original) (internal quotation marks and citation omitted). Put another way, the key inquiry under *Wal-Mart* is "whether the disputed issue could be resolved through common *proof.*" *Morangelli v. Chemed Corp.*, 2013 WL 1212790, at *4 (E.D.N.Y. March 25, 2013) (emphasis in original).

Here, Shady Grove alleges that all putative class members have suffered the same injury: a delay in the receipt of the no-fault benefit payments to which they are entitled and to which the statutorily mandated interest accruals have not been added. As is clear from the above discussion of the Five-Dollar Rule, there are fundamental legal disputes common to the class. And, based on

16

my reading of § 5106 and Regulation 68, whether or not there is a standard policy or practice

pursuant to which Allstate delays the payment of no-fault benefits and declines to pay interest, Shady

Grove has produced evidence of the *fact* of a significant number of violations. It is indeed possible

for Shady Grove to prove, through common testimonial and documentary evidence, that these

violations occur on a large scale and amount to a widespread failure to comply with the applicable

laws and regulations.[9]  Moreover, it is clear that a determination of the truth or falsity of this

contention "will resolve an issue that is central to the validity of each of the claims in one stroke,"

and the commonality requirement is satisfied. *Wal-Mart*, 131 S.Ct. at 2551.

      **(c)**    **Typicality**

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are

typical of the claims or defenses of the class."  Like the commonality requirement, typicality

"serve[s] as [a] guidepost[] for determining whether under the particular circumstances maintenance

of a class action is economical and whether the named plaintiff's claim and the class claims are so

---

[9]

In his deposition testimony, Allstate's representative, Gil Leib, discusses the written manuals used in the training of claims adjusters and the computer systems used to track the progress and timing of a particular claim. (*See* February 20, 2013 Supplemental Declaration of Gil Leib in Support of Defendant's Opposition to Motion for Class Certification (the "Supp. Leib Decl.), at 100-15. A copy of the Supp. Leib Decl. is annexed to the Hahn Letter, February 20, 2013 (ECF Document #84).) While Allstate relies on this testimony to refute any assertion of a standard policy or practice encouraging the late payment of claims, this testimony may just as easily be read to support the conclusion that Allstate's practice of educating claims adjusters with respect to the 30-day statutory requirement is insufficient.  Specifically, Mr. Leib acknowledges the absence of any written materials relating to the handling of New York State no-fault claims. (*Id.* at 108-11.) He testifies that the only information as to the specifics of dealing with these claims is conveyed orally, from managers to trainees. (*Id.* at 111-15.) Since the allegation is that Allstate's violations of the Insurance Law are widespread, to the extent that evidence relating to the adequacy of the education given to Allstate's claims adjusters with respect to that law is relevant, it is relevant to the class as a whole.

interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157, n. 13. The "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Where the same conduct is alleged to have been "directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* (citing 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.13, at 167 (2d ed. 1985); and 7A Wright, Miller & Kane § 1764, at 243 (2d ed. 1986)). Class certification is inappropriate, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Allstate argues that Shady Grove is not a typical plaintiff, first, because it is a Maryland entity whose rights were assigned pursuant to Maryland, and not New York, law. Furthermore, Allstate argues it disputed one of the claims submitted by Shady Grove and paid the accrued interest on the other, and that Shady Grove therefore does not even fit into its proposed class definition, let alone have claims against Allstate that are typical of the proposed class.

I note, first, that Shady Grove's status as a Maryland entity is not relevant to the typicality of its claims against Allstate. There is no dispute that Ms. Galvez's claim to no-fault benefits arose from her coverage under a "New York Private Passenger Insurance Policy." (*See* Compl. ¶ 6.[10])

---

[10]

A copy of this policy was filed as Exhibit E to the August 13, 2010 Declaration of Andrew T. Hahn, in connection with defendant's motion to dismiss the complaint, ECF Document #52. A subsequent

And there likewise can be no dispute that Allstate is obliged, pursuant to that policy, to comply with the provisions of New York State law.[11]

Moreover, I reject Allstate's assertions that the Shady Grove claims are not typical of the class because they were initially disputed and then subsequently paid with interest. Allstate's efforts to make the interest payment was undertaken only as a result of this litigation. (Oral Arg. Tr. 28-31, Febraury 6, 2013.) The circumstances surrounding Allstate's initial failure to make timely payment are precisely what this action seeks to reveal, and it is the late payment of claims and nonpayment of interest to other providers that gives rise to the claims of the other prospective class members. Nothing in the prosecution of Shady Grove's claims would subject them to the assertion of unique defenses, and the typicality requirement has been satisfied.

### (d) Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to "demonstrate that the proposed action will fairly and adequately protect the interests of the class. To satisfy this requirement, plaintiffs must show 1) that there is an absence of conflict and antagonistic interests between them and the class members, and 2) that plaintiffs' counsel is qualified, experienced and capable." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371-72 (S.D.N.Y. 2007). There is no argument that there are antagonistic interests between Shady Grove and the putative class members, and there can be no

---

"Policy Endorsement" was filed as Exhibit K to plaintiff's Memorandum in Opposition to the motion to dismiss, ECF Document # 53.

[11]

In any event, insofar as Allstate has subsequently admitted that its failure to pay one of Shady Grove's claims within the 30-day period required by New York State law was a mistake and made efforts to pay the interest mandated by the regulatory scheme, Allstate has effectively conceded that New York law applies to these claims. (*See* Oral Arg. Tr. 28-29, February 6, 2013.)

dispute that Shady Grove's counsel has extensive experience with insurance-related class action litigation. (*See* Spadaro Aff., February 7, 2013, ECF Document #82.)

Allstate's challenge to the adequacy of representation is levied on the ground "that Shady Grove's alarming lack of knowledge and involvement in this case is consistent with the line of cases in the Second Circuit that have denied class certification based on inadequacy." (Mem. in Opp., at 18.) Allstate bases this contention on the deposition testimony of Shady Grove's Fed. R. Civ. P. 30(b)(6) representative, J. Bonita Nolan. A review of Ms. Nolan's deposition testimony, however, reveals that she possessed ample knowledge of the facts underlying Shady Grove's individual claims, even though she was not aware of their legal underpinnings, nor of the procedural or strategic background of this litigation. (*Compare, e.g.,* Nolan Dep., at 87, 89-92, 100-03, 107-17, 129-31, 135-37, discussing some of the factual details of Ms. Galvez's claim and the fact of Ms. Nolan's communications with plaintiff's counsel; *with, e.g.*, *id.* at 94-97, stating that Ms. Nolan is not familiar with the procedural history, and *id.* at 122-28, stating her lack of understanding of the legal basis underlying the class action claims.)

This testimony does not warrant denial of class certification on adequacy grounds. First, "attacks on the adequacy of a class representative based on the representative's ignorance" are generally disfavored. *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 42 (2d Cir. 2009). Moreover, class representatives need only have personal knowledge of the facts of the case; "for the legal underpinnings of their claims, plaintiffs are entitled to rely on the expertise of their counsel." *Iglesias-Mendoza*, 239 F.R.D. at 372. The purpose behind requiring class representatives to possess extensive knowledge of the case is to allay the fear that those representatives may give "misleading and contradictory testimony with regard to basic issues in the

20

case that might make their claims subject to unique defenses." *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 61 (2d Cir. 2000). As such, the adequacy challenge is related to concerns surrounding the typicality requirement, which, as set forth above, has been satisfied. Furthermore, having reviewed Ms. Nolan's deposition testimony, I cannot conclude that the deficiencies in her knowledge are "central to the plaintiffs' case, or . . . so substantial that they threaten to undermine plaintiffs' case as a whole." *Scott v. New York City District Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004). The adequacy requirement has therefore been satisfied.[12]

### 3.   Rule 23(b)(3)

Under Fed. R. Civ. P. 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

---

[12] The plethora of cases cited by defendant are distinguishable and do not persuade me otherwise. Each of them involves a representative plaintiff with far less knowledge than that possessed by Ms. Nolan. In *Scott*, for example, the representative did not know whether the litigation was a class-action lawsuit or what a class representative was, nor did he know what the lawsuit concerned. 224 F.R.D. at 356. Similarly, in *Moskowitz v. La Suisse, Societe D'Assurances sur la Vie*, most of the named plaintiffs had been unaware of the litigation until immediately prior to their depositions, and they did not know who the attorneys were or who was making decisions with respect to the litigation. 282 F.R.D. 54, 73-74 (S.D.N.Y. 2012). Ms. Nolan, in contrast, testified as to her knowledge of the factual basis for the Shady Grove-specific allegations contained within the Complaint (*see, e.g.,* Nolan Dep., at 100, 110-12, 133-36), as well as her general knowledge of the claims asserted on behalf of the class (*see, e.g., id.* at 90-92). Although she testified that she was not aware of the duties of a class representative (*see id.* at 218-19), this deficiency is outweighed by her testimony as to the fact of her communications with plaintiff's counsel and as to her own experience – and that of Shady Grove as an entity – with insurers, including Allstate, that "have a history of failing to meet . . . applicable statutory payment deadlines." (*Id.* at 243.)

### (a)   Predominance

The predominance inquiry under this Rule "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Rule 23(b)(3) requires that common questions predominate, not that the action include only common questions." *Brown v. Kelly*, 609  F.3d 467, 484 (2d Cir. 2010). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Allstate argues that the individualized inquiries necessary to adjudicate the claims so far outnumber the issues that may be determined by proof relating to the class as a whole as to render the class action vehicle entirely inappropriate for this litigation.   Allstate contends that a determination as to liability with respect to each claimant would require a comprehensive review of each claim file, and moreover, that the need for individual damages calculations would overwhelm any issues that may be common to the class.

Allstate's position, however, ignores that there is a fundamental *legal* issue in dispute which clearly applies to the entire class, to wit: Allstate's liability for the violation of § 5106 through late payment of claims and non-payment of interest. Allstate has admitted its late payment of 73 claims. Whether or not such late payments, in and of themselves, and/or coupled with the failure to make the statutory interest payments, give rise to liability under § 5106 and Regulation 68 is a legal question relating to the entire class – and requiring judicial resolution.   Once this question is resolved, the factual inquiries that will be required will not necessitate mini-trials, as Allstate fears.

22

Rather, such determinations will be made by reference to mechanical calculations common to the class as a whole, as well as certain documentary or electronic evidence. The evidence submitted by Shady Grove, which includes the affidavit of Dawn Williamson, the paralegal who assisted in the evaluation of the initial sample claim files and conducted the re-review of the ten claims following the February 6, 2013 oral argument, makes clear that determination of liability will turn on proof of the following: the date the proof of claim was received by Allstate, the date the claim was paid by Allstate, and whether or not the statutory interest was paid. (*See* Williamson Aff. at 2-5.[13]) Although Allstate argues that this understanding is overly simplistic, and that there could be myriad reasons for the payment of claims beyond the 30-day period required by § 5106 and Regulation 68, the evidence submitted in support of this argument is not persuasive. Specifically, Allstate's representative, Mr. Leib, avers that a closer look through each of the ten claim files re-reviewed by Ms. Williamson reveals other factors that may have impacted the timing of payment of the claim. (*See* Supp. Leib Decl., at 9-10.) However, the other factors cited by Mr. Leib do not actually touch on whether the claim was paid and whether it was paid after the 30-day statutory period.

For example, with respect to Claim No. 2125389086, Ms. Williamson states that the bill was received on June 1, 2004 and was paid on July 8, 2004 – 37 days later – without any intervening request for additional information. (Williamson Aff. ¶ 6.) In response, Mr. Leib first refers to a bill received on April 29, 2004, which is not at issue. (*See* Leib Decl. ¶ 8(b).) Next, he states:

> Another bill (as identified by Shady Grove) was received on 6/1/2004 and was partially paid in the amount of $391.28 on 7/8/2004.

---

[13] February 12, 2013 Affidavit of Dawn A. Williamson (annexed to the Spadaro Letter, February 13, 2013, at Ex. B, ECF Document #83).

23

> A third bill was received on 7/1/2004 and was again partially paid in the same amount of $391.28 on 7/8/2004. Whether this is a double payment situation is another factual issue.
>
> This is an example where all bills in the claim file must be reviewed.

(*Id.*) (Citation omitted.) Nowhere in this response is there an assertion that the payment was timely made: whether there was a double payment has no bearing on the (apparently undisputed) fact that the payment was made 37 days after the claim was submitted, or seven days after the statutory deadline. Similarly, with respect to Claim No. 3634216281, which Ms. Williamson concludes was received by Allstate on June 9, 2003 but paid July 14, 2003, without any intervening requests for information, Mr. Leib responds that the "NF-2 was received on 6/10/03, and this delay may impact the timing of payment." (*Id.* ¶8(f).) Under the revised class definition, consideration of the date of receipt of the NF-2 may be appropriate,[14] but payment of this claim was, nonetheless, made 34 days after that date – a delay that would still give rise to the accrual of interest under the statute.[15]

---

[14]

Under the revised class definition, the 30-day clock starts running upon "receipt of the claims (accompanied by verification or proof of claim, as those terms are used in 11 NYCRR 65-3.5)." *See* pp. 1, 11, *supra.* This section of Regulation 68 gives the insurer "10 business days after the receipt of the completed application for motor vehicle no-fault benefits (NYS form NF-2) or other substantially equivalent written notice" to request additional information or verification from the claimant. 11 N.Y.C.R.R. § 65-3.5.

[15]

Allstate's responses with respect to the other re-reviewed claim files are equally unavailing and will not be rehashed at length here. By way of example, another claim identified by Ms. Williamson, No. 2125389532c, was received by Allstate on July 26, 2004 and paid on October 1, 2004. (Williamson Aff. ¶ 6.) She recognizes that an independent medical examination ("IME") was conducted, but notes that, "since the bill was paid eleven days before the IME was conducted, the IME did not impact [her] analysis." (*Id.*) In response, Mr. Leib avers that the "IMEs have to be analyzed as to determine whether they were relevant to the claim, and if so, whether they impacted the payment and/or timing of payment of the claim." (Supp. Leib Decl. ¶ 8(c).) However, the bill at issue here was already paid prior to the occurrence of the IME, which payment contradicts any contention that the IME's results may have factored into Allstate's decision to pay. This effort to inject complexity into Ms. Williamson's straightforward analysis appears throughout Mr. Leib's responses.

Thus, resolution of the legal question relating to Allstate's liability will provide an *answer* to the class-wide question of whether or not Allstate owes interest payments to claimants who were paid late. Resolution of the factual question relating to the identities of the claimants to whom such interest payments are owed will be made by way of a mechanical calculation taking into account the payment of a given claim after the expiration of the 30-day period, and the non-payment of interest. To the extent that Allstate argues that it may be able to assert individualized defenses (and none has been persuasively identified), I note that the existence of such defenses does not bar predominance where "a sufficient constellation of common issues binds class members together." *Brown*, 609 F.3d at 483; *cf. In re Vitamin C Antitrust Litigation*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) ("This class is united by common issues of law and fact that are determinative of liability and causation; this is more than sufficient to satisfy predominance.")[16]

Next, Allstate argues that the need for individualized damages inquiries also weighs against certification of this putative class. Allstate relies on the Supreme Court's recent decision in *Comcast* to support this contention. That case, however, is inapposite. In *Comcast*, the Supreme Court reversed a decision certifying a class in an antitrust action, in which the district court had held that Rule 23(b)(3) was satisfied if the injury from the alleged antitrust violation was capable of proof at

---

[16] I recognize that Shady Grove's allegation that Allstate "routinely and falsely claims to have never received the insured's proof of loss in the first instance, all as a means of avoiding the consequences of its violation of the thirty-day standard" (Compl. ¶ 20), may cut against predominance. Shady Grove has made no effort to demonstrate that it can prove by reference to common evidence or in a mechanical way, that any given late payment was the result of Allstate's intentional mishandling of or misrepresentation as to its receipt of submitted claim forms. Indeed, Shady Grove's arguments with respect to class certification barely touch on this allegation. While Allstate is correct that Shady Grove has not yet demonstrated that this alleged conduct occurred on a class-wide basis, at this stage of the proceedings, I cannot conclude that this one issue acts to defeat predominance, given the other legal and factual issues that are, indeed, common to the class.

trial through evidence that was common to the class rather than individual to its members, and that the resulting damages were measurable on a class-wide basis through a common methodology. *See Comcast,* 2013 WL 1222646, at *3. In certifying the class, the district court concluded that the violation based on one theory of liability was capable of proof through common evidence, and that the resulting damages were measurable through the use of a common methodology. *Id.* That methodology, however, was used to measure the damages that would have resulted from any of *four* different theories of liability, although only one theory was set forth as the basis for liability of the certified class. *Id.* Affirming the decision certifying the class, the Court of Appeals for the Third Circuit rejected the argument that this rendered the damages model unfit and held that, for the purposes of class certification, it was unnecessary to determine "on the merits whether the methodology is a just and reasonable inference or speculative;" rather, the court need only be satisfied that if the antitrust impact is proven, then "the resulting damages are capable of measurement and will not require labyrinthine individual calculations." *Id.*

In reversing the decision to certify the class, the Supreme Court concluded that Rule 23(b)(3) was not satisfied because, "[w]ithout presenting another methodology, respondents cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* at *5. Although Allstate seizes upon this conclusion as support for its contention that the level of individual determinations necessary to calculate damages in the present case would similarly overwhelm questions common to the class, this argument ignores much of the *Comcast* decision. The error of the Third Circuit, as identified by the Supreme Court in *Comcast,* was its refusal to tie the calculation of damages to the *only* theory of liability that had been certified for class litigation, first, because to do so would require an inquiry into the merits that "had

26

no place in the class certification inquiry," and further, because plaintiffs needed only to show that the damages are capable of measurement. *Id.* at *5-6 (*quoting* 655 F.3d 182, 206-07 (3d Cir. 2011)). Since some examination of the merits is necessary in order to determine whether Rule 23 has been satisfied, and since the methodology proposed did not adequately connect the damages to the alleged injury, the Supreme Court concluded that class certification had been improper. *Comcast*, therefore, does not create a heightened standard for satisfaction of Rule 23(b)(3) predominance, but rather "turns on the straightforward application of class-certification principles." *Id.* at *5.[17]

Here, it bears repeating that Allstate has not challenged Shady Grove's methodology for calculating damages, which, Shady Grove asserts, convincingly, will be "single, uniform and purely mechanical – a matter of determining when the no-fault expense was received by Allstate, and (in the absence of intervening requests for verification) when Allstate paid the expense." (Spadaro Letter, April 22, 2013, at 2.) Nor does either party assert that a class-wide damages calculation is necessary. Rather, Allstate's challenge is mounted solely on the ground that the necessity of making individual damages calculations acts to defeat predominance. However, although "[c]ourts have denied class certification where the individual damages issues are especially complex or

---

[17]

Indeed, in her dissent, Justice Ginsberg expressly urges that the Majority's decision "not be read to require, as a prerequisite to certification, that damages attributable to a classwide injury be measurable on a class-wide basis." (*Id.* at *9) (Ginsburg, J., dissenting) (internal quotation marks omitted). Rather, citing the goal of the predominance inquiry to test whether the proposed class is "sufficiently cohesive as to warrant adjudication by representation," *id.* (*quoting Amchem*, 521 U.S. at 623), Justice Ginsburg reminds the reader that, "when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." *Id.* at *9 (Ginsburg, J., dissenting) (*citing* Advisory Committee's 196 Notes on Fed. R. Civ. P. 23, 28 U.S.C.App., p. 141).

burdensome," *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003), such is not the case presented here. "Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria, thus rendering unnecessary an evidentiary hearing on each claim." *Id.* Here, the individual factual determinations that must be made, including the amount of interest to which each claimant is entitled, can be made by reference to records and objective criteria, and the predominance requirement is satisfied.

### (b) Superiority

The final hurdle standing in the way of class certification is the superiority requirement. In making the determination as to whether this requirement is satisfied, courts balance, "in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication." *Anwar v. Fairfield Greenwich Ltd.*, 289 F.R.D. 105, 114 (S.D.N.Y. 2013). Rule 23(b)(3) provides a list of factors to be considered in this assessment:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, it is clear that the superiority standard is met. Allstate argues that the adjudication of "hundreds of thousands of mini-trials to ascertain the chronology of events involving the notice of the accident, proof of claim, verification requests – and whether all were submitted within the time frame set forth in Regulation 68" would make management of this proposed class action exceedingly

28

difficult. (Hahn Letter, February 20, 2013, at 5.) However, as set forth above, I am not persuaded that these determinations are necessary, given the narrow scope of the class, nor am I persuaded that any information needed cannot be obtained through a review of the claim files. Furthermore, there is an extensive array "of management tools available to a district court to address any individualized damages issues that might arise in a class action." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 141 (2d Cir. 2001), *overruled on other grounds by In re Initial Public Offerings Securities Litigation*, 471 F.3d 24 (2d Cir. 2006).

The other factors weigh in favor of certification as well. The putative class members' interest in controlling the litigation is minimal since the relatively small amounts each claimant may expect to collect in damages would make providers unlikely to sue for damages individually. *See, e.g., Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) (superiority prong satisfied where "the district court correctly determined that proceeding individually would be prohibitive for class members with small claims"). Allstate does not contend that any other litigation concerning the payment of statutory interest has been asserted by or against it; and this forum is appropriate, given Allstate's presence in New York State, as well as the likelihood that many of Allstate's insureds are also present here. Rule 23(b)(3) superiority is satisfied.

## III.    The § 349 Claim

Finally, I turn to the plaintiff's claim under Section 349 of the New York General Business Law (the "§ 349 Claim"). This section makes unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in" New York State. N.Y. Gen. Bus. L. § 349. Allstate argues that, even if Shady Grove has stated a claim for violation of this Section, such a claim is not the proper subject of a class action lawsuit.

Although defendant's prior motion to dismiss the § 349 Claim was denied (*see* Oral Arg. Tr. 29, January 24, 2012), I expressed my doubts as to its viability at the parties' last appearance, having reviewed it for the purposes of the class certification motion. (*See* Oral Arg. Tr. 3-13, February 6, 2013.) At this stage of the proceedings, however, no application to dismiss is before me, and my analysis is limited to the availability of class certification with regard to this claim. Even so, since the Rule 23(b)(3) predominance inquiry compels me to determine whether each element of the claim could be established by reference to evidence that is common or identical across the class, a brief exploration of the merits of the claim is necessary. *See, e.g., Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *5 (S.D.N.Y. August 5, 2010) (In assessing whether the issues presented by the § 349 Claim "that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those that are subject to individualized proof . . . a court considers whether the putative class members could establish each of the . . . required elements of [their] claim[s] . . . using common evidence.") (alteration in original) (internal quotation and citations omitted).

In order to demonstrate liability under § 349, Shady Grove must make a prima facie showing that Allstate "'is engaging in an act or practice that is deceptive or misleading in a material way, . . . that plaintiff has been injured by reason thereof,'" and that the acts or practices are "consumer-oriented in the sense that they potentially affect similarly situated consumers." *State Farm Mutual Auto Ins. Co. v. Mallela*, 175 F.Supp.2d 401, 420 (E.D.N.Y. 2001) (*quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (N.Y. 2005)). In order to be considered "misleading" under § 349, "the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Cohen v. J.P. Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (citation and internal quotation marks omitted). While it is not required to

show that Allstate commits the acts or practices repeatedly, Shady Grove "must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214*, 85 N.Y.2d at 25.

The basis for Shady Grove's claim under § 349 is that Allstate "engaged in practices that are deceptive in a material way," and which "have been consumer-oriented, affecting the public at large."[18] (Complaint ¶ 61.) The only such practice which gives life to this conclusory allegation, however, is the issuance of automobile insurance policies containing an "implied representation of fact" that Allstate will "address claims for first-party no-fault benefits in a manner consistent with the requirements of N.Y. Ins. Law § 5106 and 11 NYCRR 65.15" and that "no-fault claims will be paid within the thirty-day period under section 5106(a)." (*Id.* ¶ 60.) Shady Grove alleges that Allstate's failure to pay claims within the 30-day timeframe and its failure to pay interest amounts to a betrayal of these representations "on a massive scale." (*Id.*)

Leaving aside the conclusory assertions of "consumer-oriented" conduct, "affecting the public at large," there is no allegation as to the way in which health care providers, or other

---

[18]

There are actually two components to the allegations which Shady Grove asserts comprise its § 349 Claim. The first, although not the primary basis for this claim, is Shady Grove's allegation that Allstate has represented, falsely, that one or more of Shady Grove's no-fault claims was not timely received, for the purpose of avoiding the consequence of failure to pay the benefits within 30 days. (*See* Complaint ¶¶ 20, 27.) However, this allegation is not expressly included within Count V of the Complaint. (*See id.* ¶¶ 58-64.) Moreover, at oral argument on this motion, counsel to plaintiff relied on the "implied promise" component of the § 349 Claim. (*See* Oral Arg. Tr. 11-13, February 6, 2013.) Furthermore, this allegation applies only to Shady Grove, a Maryland entity and does not point to any deceptive conduct in New York. It therefore is not a sufficient basis for the § 349 claim. *See Goshen v. Mutual Life Insurance Co. of New York*, 98 N.Y.2d 314, 324-25 (N.Y. 2002) (although § 349 does not function as a "per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state," the "deception of a consumer must occur in New York"); *accord Kaufman v. Sirius XM Radio, Inc.*, 751 F.Supp.2d 681, 686-87 (S.D.N.Y. 2010).

31

consumers, are materially deceived or injured by Allstate's alleged failure to comply with this implied representation, and, even if there were, there is no way that Shady Grove could prove such material deception or injury using common evidence or by reference to mechanical calculations. In other words, Shady Grove may be able to show, through documentary evidence and witness testimony applicable to the class, that Allstate failed to make timely claims payments or to pay interest on those payments that were late, as required by the Insurance Law; but there is no proof available to Shady Grove that would demonstrate, on a class-wide basis, that *each individual* claimant specifically relied on Allstate's implied promise to comply with the applicable laws and regulations when submitting its claim, and that it was deceived by Allstate's subsequent failure to do so. Since the question of deception would require individualized proof with respect to each claimant, the § 349 Claim does not satisfy the Rule 23(b)(3) predominance requirement, and class certification is improper for this claim.

In light of this conclusion, Shady Grove may wish to reconsider whether to proceed with this claim on an individual basis and shall notify the court as to its intention within 14 days of the date of this Opinion and Order.[19]

## CONCLUSION

Since Shady Grove has shown by a preponderance of the evidence that the requirements of Rules 23(a) and 23(b)(3) are satisfied with respect to the claim that Allstate has violated N.Y. Ins. Law § 5106 and 11 N.Y.C.R.R. § 65-3.9 by failing to pay no-fault claims within the statutory time period and failing to pay the interest accrued as a result to Shady Grove and other class members,

---

[19]

Shady Grove is also directed to review the discussion of this claim during the February 6, 2013 proceeding. (*See* Oral Arg. Tr. 3-13, February 6, 2013.)

the motion to certify the class is GRANTED with respect to this claim and it is DENIED as to the claim under N.Y. Gen. Bus. Law § 349.

Plaintiff is directed to submit, within 30 days of the date of this Order, a proposed form of notice in accordance with Fed. R. Civ. P. 23(c)(2)(B).

SO ORDERED.

s/Nina Gershon

_____
NINA GERSHON
United States District Judge.

Date:   August 6, 2013
        Brooklyn, NY

33