UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x

SHADY GROVE ORTHOPEDIC
ASSOCIATES, P.A., on behalf of itself
and all others similarly situated,

                Plaintiffs,

        - against -

ALLSTATE INSURANCE COMPANY,

                Defendant.

------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ AUG 01 2014 ★

**BROOKLYN OFFICE**

ORDER OF FINAL APPROVAL -
<u>CLASS ACTION SETTLEMENT</u>

06-cv-1842 (NG) (JO)

GERSHON, United States District Judge:

     This action was commenced by plaintiff Shady Grove Orthopedic Associates, P.A. ("Shady Grove," or the "Named Plaintiff") for the purpose of collecting statutory interest penalty payments mandated by the New York State Insurance Law and accompanying regulations. A litigation class was certified by Order filed August 7, 2013 (the "Class Certification Order," ECF Doc. #87.[1]) Following certification, the parties negotiated a settlement agreement, which was preliminarily approved by Order dated April 11, 2014 (the "Preliminary Approval Order," ECF Doc. #120). Notice of the proposed settlement was provided to the class members by way of publication over the following two months. On July 29, 2014, the parties appeared for a hearing on the fairness of the class action settlement and final approval of same (the "Final Settlement Hearing"). Shady Grove now moves, without opposition, for an Order finally approving the proposed settlement.

---

[1] *Shady Grove Orthopedic Associates, P.A., v. Allstate Insurance Co.*, 293 F.R.D. 287 (E.D.N.Y. 2013) [hereinafter *Class Certification Order*].

1



Also by this unopposed motion, Class Counsel seeks an award of attorney's fees and expenses in connection with the prosecution and settlement of this matter, as contemplated by the parties' agreement.[2]

For the reasons set forth both in the Preliminary Approval Order and below, and in accordance with the proceedings of July 29, 2014, I conclude that the terms of the Stipulation of Settlement are fair, the Class Members were afforded adequate notice, and the proposed attorney's fee award is reasonable.  Shady Grove's unopposed motion for final approval of the class action settlement and attorney's fees is granted.

## I.   Background and Relevant Procedural History

The parties' knowledge of the factual background and extensive procedural history of this action is presumed and need not be reprinted here.  Nonetheless, I note the following, relevant events.

By order entered August 7, 2013, this court certified for litigation a class comprised of:

All health care providers who, since April 20, 2003, submitted claims for first-party no-fault benefits under New York auto policies issued by Allstate Insurance Company, where (i) those claims were never disputed by Allstate within 30 days of its receipt of the claims (accompanied by verification or proof of claim, as those terms are used in 11 NYCRR 65–3.5); (ii) though ultimately paid by Allstate, those claims were not paid within 30 days of its receipt of the claims; and (iii) Allstate made no payment of statutory interest against the claim; provided, however, that eligibility for class membership shall not derive from any claim for which Allstate requested verification or proof of claim additional to that which was submitted with the original claim.

---

[2] John S. Spadaro, Esq., of John Sheehan Spadaro, LLC, was designated as Settlement Class Counsel ("Class Counsel") by the Preliminary Approval Order.  Unless otherwise indicated, capitalized terms not defined in this Order are defined in accordance with the Preliminary Approval Order and the Stipulation of Settlement, which is annexed as Exhibit C to the present motion. (*See* ECF Doc. #122-3.)

*Class Certification Order*, 293 F.R.D. at 293. Further to class certification, I directed Shady Grove to submit to the court within 30 days a proposed form of notice in accordance with Fed. R. Civ. P. 23(c)(2)(B). *Id.* at 308. Prior to the notice being submitted, however, defendant Allstate Insurance Company ("Allstate") filed a petition for leave to take an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) and simultaneously initiated settlement negotiations. (*See* Letter of Andrew T. Hahn, Sr., Counsel to Allstate, filed August 23, 2013, ECF Doc. #89.[3]) Pursuant to the parties' request, I adjourned *sine die* the deadline for filing a proposed form of class notice and directed them to appear for a status conference. (*See* Order of August 27, 2013, ECF Doc. #90.)

At the September 16, 2013 status conference, the parties informed me that they wished to continue their settlement discussions. I directed them to contact Magistrate Judge James Orenstein by October 31, 2013 if it appeared they would be unable to reach an agreement by November 16, 2013. (*See* ECF Minute Entry, Sept. 16, 2013.) On October 31, 2013, the parties contacted Judge Orenstein, in accordance with my directive. Rather than schedule a discovery conference, Judge Orenstein, with the parties' consent, scheduled a settlement conference. (ECF Minute Entry, Oct. 31, 2013.) On November 14, 2013, the parties appeared before Judge Orenstein, who assisted them in reaching a settlement agreement in principle. (ECF Minute Entry, Nov. 14, 2013.) On December 23, 2013, Shady Grove and Allstate filed a joint motion for preliminary approval of their settlement (the "Settlement"), which motion was granted on April 11, 2014, following several conferences before me.

---

[3] This letter is dated August 29, 2013, but this is a typographical error; the letter was filed on ECF on August 23, 2013.

## II.   The Settlement

In connection with the Settlement, the parties agreed to expand the class beyond that which was certified for litigation purposes.   This expanded class (the "Settlement Class") includes all persons who had submitted claims to certain of Allstate's affiliated and related companies – as opposed to claims submitted only to Allstate – during the class period.[4] (Preliminary Approval Order 2; *see also* Stipulation and Order Adding Parties Defendant (for Settlement Purposes Only), April 11, 2014, ECF Doc. #121.)  Concluding that the expansion of the class would neither adversely impact its ability to satisfy the requirements of Fed. R. Civ. P. 23(a) and (b)(3) nor result in prejudice to any class member, I certified the expanded class for settlement purposes only.   (Preliminary Approval Order 3.)   I also appointed Shady Grove as representative of the Settlement Class and designated Class Counsel.   (*Id.; see also* n.2, *supra*.)

---

[4] The expanded class is comprised of:

> All Persons who, during the period from April 20, 2003 to April 11, 2014, submitted claims for first-party no-fault benefits under New York auto policies issued by Allstate Insurance Company and any of its affiliated or related companies, which are Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, Glen Falls Insurance Company, National-Ben Franklin Insurance Company, Fireman's Insurance Company, Buckeye Union Insurance Company, Fidelity and Casualty Insurance Company, Continental Insurance Company, Kansas City Fire and Marine Insurance Company, Encompass Insurance Company of America, Encompass Indemnity Company, Encompass Property and Casualty Company, Encompass Independent Insurance Company and Encompass Home and Auto Insurance Company, where (i) those claims were never disputed by Allstate within 30 days of its receipt of the claims (accompanied by verification or proof of claim, as those terms are used in 11 NYCRR 65-3.5); (ii) though ultimately paid by Allstate, those claims were not paid within 30 days of its receipt of the claims; and (iii) Allstate made no payment of statutory interest against the claims; provided, however, that eligibility for class membership shall not derive from any claim for which Allstate requested verification or proof of claim additional to that which was submitted with the original claim.

(Preliminary Approval Order 2.)

4

Under the terms of the Settlement, Allstate agreed to "pay 100% of the allegedly owed interest to Class Members with a corresponding claim that falls within the scope of the Settlement Class." (Stipulation of Settlement 12.)  Furthermore, any dispute as to a claimant's membership in the Settlement Class would be presented to the court for resolution, but any dispute relating to amounts due to Class Members was to be resolved by a neutral evaluator selected by the parties and approved by the court (the "Neutral Evaluator").  (*Id.* at 12, 14-15.) In addition to paying 100% of the claims submitted by Class Members, Allstate agreed that it would, in the future, "timely and properly pay interest in accordance with the Five Dollar Rule, meaning that Allstate will pay interest on amounts under five dollars if a demand is made therefor within the then applicable statute of limitations."[5]  (*Id.* at 13.)

## III.    Discussion

Before approving a class action settlement, a district court must hold a hearing and make a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In order to make these required findings, the court considers the adequacy of the notice provided to prospective class members, the procedural fairness of the negotiation process leading to the settlement, and the substantive fairness of the settlement's terms.  *See, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-05 (2d Cir. 2009).

### A. Adequacy of Notice

For the reasons set forth in the Stipulation of Settlement and approved in the Preliminary Approval Order, the parties agreed to provide notice of the Settlement by publication only. Within 30 days of entry of the Preliminary Approval Order, Class Counsel was to "cause to be

---

[5] *See Class Certification Order*, 293 F.R.D. at 295-97, for a thorough discussion of the Five Dollar Rule.

published a summary version of the Class Notice (the 'Summary Notice'), which sets forth the procedure for individuals to request a copy of the Class Notice and a Claim Form." (Preliminary Approval Order 4.)   The Summary Notice, which was drafted by the parties working cooperatively and with substantial feedback from the court, provided information about the Settlement, how to obtain more information about the claims process or submit a claim, and the other options available to prospective claimants and their attendant consequences.   (*See* Stipulation of Settlement, Exhibit E, ECF Doc. #119.)   The Summary Notice also provided the date, time and place of the Final Settlement Hearing and instructions for objecting to or opting out of the settlement.   (*Id.*)   The deadline for filing an objection to or opting out of the Settlement was June 30, 2014.   (*Id.*; see also Preliminary Approval Order 6-7.)

The parties intended the Summary Notice to run in two separate, half-page ads over two consecutive weeks in *The New York Times*, as well as to be published in the trade journals of 21 medical organizations and trade associations.   (*See* Spadaro Letter, February 21, 2014, ECF Doc. #112.)   By letter dated April 7, 2014, however, Class Counsel advised the court that he had secured the agreement of only eight of the associations, but that he would follow up with the remaining organizations that day.   (*See* Spadaro Letter, April 7, 2014, ECF Doc. #118.) Nonetheless, he was "encouraged by the confirmed participation of the most important trade associations," including the Medical Society of the State of New York, which has the largest membership of any such organization.   (*Id.* at 2.)

The Preliminary Approval Order provided that Class Counsel was to "seek to have the trade associations publish the Summary Notice in their trade publications and that many [had] already agreed to do so," and that a declaration confirming that such publication had taken place was to be filed in advance of the Final Settlement Hearing.   (Preliminary Approval Order 4.)

6

Class Counsel now submits a Certification of Publication demonstrating that the Summary Notice was published in the April 22 and April 29, 2014 editions of *The New York Times*,[6] and the Affidavit of Heather R. Jones, who avers that she disseminated the Summary Notice to all 21 of the previously identified medical trade associations and "undertook to arrange for publication of the Summary Notice in each such organization's trade publication." (Jones Aff. ¶ 2.[7]) The result of Ms. Jones's efforts was the publication, in either the May 2014 or June 2014 edition of the publication of each of the following organizations: the New York State Dental Association, the New York Ophthalmological Society, the NYS Society of Otolaryngology, the New York County Medical Society, the New York Society of Orthopaedic Surgeons, the Greater New York Hospital Association, and the New York Physical Therapy Association.  The Summary Notice was also published in both the May 2014 and June 2014 issues of the trade publications of both the Medical Society of the State of New York and the New York State Academy of Family Physicians.  (*Id.* ¶ 3.)  At the Final Settlement Hearing, Class Counsel advised the court that publication by the remaining organizations was not achieved solely because they did not offer newsletters, journals, or any other relevant publication in which the Summary Notice might otherwise have appeared.

Although the Summary Notice was not published quite as widely as Class Counsel had anticipated, given the substantial membership bases of the organizations that did publish it, I am satisfied that Class Counsel "acted reasonably in choosing the means likely to inform potential

---

[6] The Certification of Publication is annexed to Shady Grove's motion papers at Exhibit I.  (ECF Doc. #122-9.)

[7] Affidavit of Heather R. Jones, July 21, 2014.  A copy of this affidavit is annexed to Shady Grove's motion papers at Exhibit H.  (ECF Doc. #122-8.)  Included with the Jones Affidavit are supporting documents, such as email communications between Ms. Jones and representatives of the various trade associations, invoices, and copies of the Summary Notice as it appeared in some of the publications.

class members." *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008). This conclusion is buttressed by defense counsel's representation that, as of the date of the Final Settlement Hearing, the parties had received around one hundred claim forms and many more inquiries. Moreover, the content of the Summary Notice, discussed above, was sufficient to "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005) (internal quotation marks and citation omitted). Since the Summary Notice was "of such nature as to convey the required information," and, given that publication commenced around sixty days in advance of the June 30 opt-out/objection deadline and close to ninety days in advance of the Final Settlement Hearing, the Summary Notice also "provide[d] a reasonable time for those interested to make an appearance." *McReynolds*, 588 F.3d at 804. I am thus satisfied that both the content and the dissemination of the notice provided to the Settlement Class was reasonable and "the best notice practicable under the circumstances." *In re Merrill Lynch*, 249 F.R.D. at 133. I therefore find that publication in the journals of these trade associations, along with the two-time publication in *The New York Times* is reasonable notice within the meaning of Fed. R. Civ. P. 23(e).

### B. Procedural Fairness

As discussed above, the parties reached agreement as to the terms of this Settlement only after a protracted legal battle that included Shady Grove's successful appeal to the Supreme Court of the United States. My experience with this matter over the last several years enables me to confidently conclude that Shady Grove's counsel possessed the necessary experience and skill to effectively represent the interests of the class. *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d

78, 85 (2d Cir. 2001). That the Settlement was negotiated over a few months and was finally cemented only with the assistance of Magistrate Judge Orenstein further supports the conclusion that this Settlement is not the product of collusion but was, instead, the result of arms' length, good faith negotiations by capable counsel on both sides. *See id.* I therefore find that the Settlement is procedurally fair.

### C. Substantive Fairness

Turning, next, to the question of substantive fairness, I note, first, counsel's diligent efforts in revising the Settlement and its associated documents after several rounds of extensive court review. This Settlement was thoroughly scrutinized upon proposal, and the Preliminary Approval Order was signed only once I was satisfied that the Settlement accurately reflected the parties' intent and protected the interests of the Class. After sound notice proceedings that generated a rapid and robust response, there are no objections and no other events that would negatively impact that preliminary determination.

Moreover, analysis of the well-known factors first outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), further demonstrates that this Settlement is substantively fair.

First, the complexity, expense, and likely duration of this litigation is evidenced by the two years needed for the parties to complete the discovery related solely to Shady Grove's motion for class certification.[8] That limited discovery required the review of 300 claim files

---

[8] Following Shady Grove's successful appeal to the U.S. Supreme Court, this matter was remanded on June 9, 2010. (*See* Mandate, United States Court of Appeals for the Second Circuit, June 9, 2010, ECF Doc. #29.) The parties then appeared before Judge Orenstein for an initial discovery conference on June 17, 2010. (*See* ECF Doc. #31.) The motion for class

pursuant to the sampling protocol established by the parties.[9]  The discovery needed for a trial would require review of many thousands more files and would likely generate further motion practice and significant expense.

Second, the reaction of the class has been favorable – not a single Potential Class Member opted out or filed an objection.  And, as of the date of the Final Settlement Hearing, Allstate had already received and begun review of approximately one hundred Claim Forms.

Third, at this stage of the proceedings, the discovery and motion practice already completed has given the parties substantial information with which to gauge the relative strengths and weaknesses of their positions.

Next, the risks involved in establishing liability, proving damages, and maintaining the class action are not insignificant.  Although Class Counsel successfully certified a Litigation Class, defendant successfully obtained leave to appeal the Class Certification Order under Fed. R. Civ. P. 23(f).  (*See* Order of the United States Court of Appeals for the Second Circuit, dated October 30, 2013, ECF Doc. #95.)  It may be that defendant's "*reliance on the possibility of a reversal of the [district] court's [class status] decision is ordinarily not reasonable,*" *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 118 (2d Cir. 2013) (alteration in original) (emphasis added), but it cannot be denied that the parties' *recognition* of such a possibility inexorably impacts the landscape of the litigation; it raises the level of risk involved in establishing liability, proving damages, and of course, in maintaining the class action.  These three factors thus weigh in favor of a finding of fairness.

---

certification was not fully briefed until June 18, 2012.  (*See* ECF Docs. #76-81.)  Although the parties did engage in some related motion practice during this time period, discovery was not stayed.  *See Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 2010 WL 2629734 (E.D.N.Y., June 28, 2010).

[9] *See Class Certification Order*, 293 F.R.D. at 295.

The "court need not find that every factor militates in favor of a finding of fairness; rather, a court considers the totality of these factors in light of the particular circumstances." *Padro v. Astrue*, 2013 WL 5719076, at *4 (E.D.N.Y., October 18, 2013) (quoting *In re Merrill Lynch*, 249 F.R.D. at 134). In these particular circumstances, there can be no doubt that each of the relevant *Grinnell* factors weighs in favor of approval.[10]

### D. Attorney's Fees

The Settlement provides that Allstate would not contest an application by Class Counsel for an award of $700,000 in attorney's fees. Pursuant to the parties' agreement, Class Counsel will use this award to pay a class representative fee of $40,000 to Shady Grove, and to cover all costs associated with the parties' Notice plan and the administration of the claims process. (*See* Stipulation of Settlement 16-17.)

A district court calculating an appropriate attorney's fee award may rely on either the "lodestar" or the "percentage of the fund" method of computation. *See Goldberger*, 209 F.3d at 50. In this case, there is no settlement fund and the attorney's fee award will in no way reduce the sums paid to the plaintiffs. I therefore assess the reasonableness of the requested fee using

---

[10] The three remaining *Grinnell* factors relate to a settlement fund and the defendant's ability to withstand a judgment greater than the settlement amount. *See Grinnell*, 495 F.2d at 463. Since Allstate has agreed to pay 100% of the claims submitted, there is no "settlement fund," as such, and the total amount that Allstate will pay is unknown. The last three *Grinnell* factors are therefore not applicable here. Even if I were to consider them, however, "as part of a larger determination of whether the settlement is reasonable," I would find that they weigh in favor of a finding of fairness. *Padro*, 2013 WL 5719076, at *7. The Settlement guarantees to each Class Member not only 100% of any interest payments owed to them by Allstate, but moreover, its injunctive relief component guarantees the prompt payment of such interest in accordance with the New York State Insurance Law and accompanying regulations, by Allstate in the future. This constitutes the bulk of the relief sought by Shady Grove in connection with its Insurance Law claims, and a settlement providing such relief is reasonable.

the lodestar method, along with an examination of "traditional criteria," including "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (alteration in original) (citation omitted).

Class Counsel has submitted billing records showing that he has incurred fees and expenditures totaling $574,490.25, which amount includes $107,247 in expenses related to publication of the Summary Notice, along with 847 hours of attorney time (at $450/hour) and 389 hours of paralegal time (at $130/hour).  (Fee Application 4-5.[11])  I have reviewed the detailed records provided by counsel, and, given the eight-year history of this litigation and its extensive motion practice, including appearances before the Second Circuit and the Supreme Court, I am satisfied that this admittedly large number of hours in attorney and paralegal time is justified and reasonable.

The requested attorney and paralegal rates are both within the range of reasonableness within this District, although they are on the higher end.  *See, e.g.*, *Hugee v. Kimso Apartments, LLC*, 852 F.Supp.2d 281, 298-99 (E.D.N.Y. 2012) ("Recent opinions from the Eastern District of New York have determined that reasonable hourly rates in this district are approximately $300-$450 per hour for partners . . .") (internal quotation marks and citation omitted); *see also Stanczyk v. City of New York*, --- F.Supp.2d ---, 2013 WL 3208073, at *3 (E.D.N.Y., June 24, 2013), *aff'd* 752 F.3d 273 (2d Cir. 2014),[12] (awarding, *inter alia*, $475 per hour to partner and $125 per hour to paralegal); *cf. United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents*, 856 F.Supp.2d 484, 494 (E.D.N.Y. 2012) (recognizing that higher-than-prevailing

---

[11] Class Counsel's Fee Application, July 22, 2014.  (ECF Doc. #124.)
[12] The partner and paralegal rates cited here were not discussed on appeal.

rates are appropriate in certain circumstances, and awarding $600 per hour for a partner and $150 per hour for paralegal services.).

Upon review of the billing records and the statements made on the record during the Final Settlement Hearing, and taking into account my own experience with counsel throughout this litigation, I am satisfied that Class Counsel has demonstrated the reasonableness of the rates sought for both himself and his paralegal, Ms. Jones. Mr. Spadaro is a highly experienced attorney whose complex litigation practice spans nearly thirty years. He has served as court-appointed class counsel in many class action lawsuits very similar to this one, as well as in other insurance-related class actions. (Spadaro Aff. ¶¶ 2-3.[13]) Although there is no affidavit detailing Ms. Jones's background, Mr. Spadaro spoke eloquently and enthusiastically during the Final Settlement Hearing about her high level of experience and substantive knowledge. According to Mr. Spadaro, Ms. Jones has been a licensed paralegal for twenty years and has provided him with unparalleled assistance and support on complex class action lawsuits for the past twelve. Her knowledge base enables her to manage the claims administration process in a way that far exceeds a ministerial role and, in fact, also serves to free up attorney time. Defense counsel, Mr. Hahn, also attested at the Final Settlement Hearing to Ms. Jones's competence.

In light of counsel's experience and the quality with which both Mr. Spadaro and Ms. Jones have represented the Class, and in recognition of the magnitude and risks of this eight-year litigation, as well as the positive result achieved by way of the Settlement, I find that the rates sought, and the award sought, are reasonable. The $700,000 fee award is approved.

---

[13] Affidavit of John S. Spadaro, February 7, 2013. (ECF Doc. # 82-1.)

Finally, the incentive fee award of $40,000 to the Named Plaintiff, which is included within the $700,000 award to counsel, is approved. This award is supported by the efforts of the Named Plaintiff throughout this litigation.

## E. Additional Provisions

By this Order, the terms of the Stipulation of Settlement are finally approved, and all of its provisions are expressly incorporated herein.

In addition to the terms set forth in the Stipulation of Settlement, the parties' agreement as to the following provisions is also hereby expressly approved:

(1) After performance of all terms of the Stipulation of Settlement is completed, any and all confidential documentation (exclusive of non-confidential documents filed with the court), if any, provided by Allstate to the Named Plaintiff, Class Counsel, Class Counsel's experts, or anyone else employed by Class Counsel, and all copies thereof, shall be promptly returned to Allstate. Class Counsel shall submit an affidavit to Allstate, at the time of the return of the documentation, confirming that any such documentation has been returned, and that, in all events, documents and information obtained through the course of this litigation will not be used in any subsequent action.

(2) Class Counsel, the Named Plaintiff, Allstate and Allstate's counsel shall not make any statements to the media or in any public forum, orally or in writing, about the Action, or the Stipulation of Settlement, other than statements that are fully consistent with the Class Notice.

(3) David A. White, of McCarter & English in Wilmington, Delaware, is appointed as the Neutral Evaluator to carry out the duties and responsibilities as set forth in the Stipulation of Settlement.  Neither the Named Plaintiff, nor Allstate, nor counsel to either of these parties, shall be liable for any act, or failure to act, of the Neutral Evaluator.

**IV.      Conclusion**

For the reasons set forth above, I find that the Settlement of this class action is fair, reasonable, and adequate.   Shady Grove's Unopposed Motion for Final Approval of the Proposed Class Action Settlement is GRANTED.

Class Counsel's unopposed Application for Attorney's Fees is also GRANTED, and it is hereby ORDERED that Class Counsel shall receive fees and costs totaling $700,000, to be paid in accordance with the terms of the Stipulation of Settlement.  The $40,000 incentive fee shall be paid to the Named Plaintiff out of this amount.

The Clerk of Court is directed to enter final judgment in accordance with this Order.

Without affecting the finality of the judgment which will enter as a result of this Order, this court shall retain jurisdiction of this action for the purpose of enforcing the terms of the Stipulation of Settlement; moreover, this action shall remain open on the court's docket, and the parties are directed to file a status report on or before October 15, 2014.

SO ORDERED.

Date:   August 1, 2014

/s/ USDJ NINA GERSHON

NINA GERSHON
United States District Judge

15